IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - x
                          :
In re:                    :    Chapter 11
                          :
HAYES LEMMERZ INTERNATIONAL, :   Case No. 09-11655 (MFW)
INC., et al.,[1]          :
                          :
        Debtors.          :    Jointly Administered
                          :
- - - - - - - - - - - - - x    Related to Docket Nos. 539 and ___

**REVISED ORDER APPROVING (I) THE DISCLOSURE STATEMENT,
(II) CURE PROCEDURES FOR EXECUTORY CONTRACTS OR UNEXPIRED
LEASES TO BE ASSUMED PURSUANT TO THE PLAN, (III) THE RECORD
DATE, VOTING DEADLINE, AND CERTAIN OTHER PROCEDURES,
(IV) THE FORM AND MANNER OF NOTICE OF THE CONFIRMATION HEARING
AND PROCEDURES FOR FILING OBJECTIONS TO THE PLAN, AND
(V) SOLICITATION PROCEDURES FOR CONFIRMATION**

---

[1]   The following of HLI's U.S. subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with HLI (2578) and have obtained joint administration therewith: Hayes Lemmerz Finance LLC (7731), Hayes Lemmerz International Import, Inc. (1655), Hayes Lemmerz International - California, Inc. (2337), Hayes Lemmerz International - Commercial Highway, Inc. (7674), Hayes Lemmerz International - Georgia, Inc. (6122), Hayes Lemmerz International - Howell, Inc. (9246), Hayes Lemmerz International - Huntington, Inc. (0825), Hayes Lemmerz International - Kentucky, Inc. (8246), Hayes Lemmerz International - Laredo, Inc. (8656), Hayes Lemmerz International - New York, Inc. (9278), Hayes Lemmerz International - Sedalia, Inc. (7670), Hayes Lemmerz International - Technical Center, Inc. (7519), Hayes Lemmerz International - Wabash, Inc. (0301), HLI Brakes Holding Company, Inc. (2575), HLI Commercial Highway Holding Company, Inc. (2828), HLI Netherlands Holdings, Inc. (0015), HLI Operating Company, Inc. (7742), HLI Parent Company, Inc. (7832), HLI Powertrain Holding Company, Inc. (8269), HLI Realty, Inc. (1885), HLI Services Holding Company, Inc. (7840), HLI Suspension Holding Company, Inc. (0061), and HLI Wheels Holding Company, Inc. (7882) (collectively with Hayes, the "U.S. Debtors"). With the exception of Hayes Lemmerz Finance LLC - Luxembourg S.C.A. (Luxembourg: 0646; USA: 7731) (the "Non-U.S. Debtor"), none of the foreign affiliates or subsidiaries of HLI are Debtors in these chapter 11 cases. The mailing address for each of the U.S. Debtors is 15300 Centennial Drive, Northville, Michigan 48168.

("<u>Solicitation Procedures Order</u>")

This matter having come before the Court upon the motion (the "<u>Solicitation Procedures Motion</u>")[2] of Hayes Lemmerz International, Inc. ("<u>HLI</u>") and certain of its affiliates, debtors and debtors-in-possession (collectively with HLI, the "<u>Debtors</u>") seeking an order (the "<u>Order</u>"), pursuant to 11 U.S.C §§ 105(a), 1125(b) and 1126(b); Bankruptcy Rules 2002, 3003, 3017, 3018, 3020; and Local Rule 3017-1, approving (I) the Disclosure Statement, (II) cure procedures for executory contracts or unexpired leases to be assumed pursuant to the Plan, (III) the record date, the voting deadline, and certain other procedures, (IV) the form and manner of notice of the confirmation hearing and the procedures for filing objections to the Plan, and (V) the procedures for soliciting votes on the Plan; a hearing having been held (the "<u>Disclosure Statement Hearing</u>"), at which time all interested parties were offered an opportunity to be heard with respect to the Disclosure Statement and the Solicitation Procedures Motion; and the Court having reviewed (i) the Disclosure Statement, all modifications thereto, and the objections thereto, if any, (ii) the Solicitation Procedures Motion, and objections thereto, if any, (iii) arguments that counsel made, and the evidence proffered or

---

[2]   Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Solicitation Procedures Motion.

2

adduced at the Disclosure Statement Hearing; and it appearing to the Court that it has jurisdiction over the matters raised in the Solicitation Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334; this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); the relief requested in the Solicitation Procedures Motion is in the best interests of the Debtors, their estates, and their creditors; the notice of the Solicitation Procedures Motion and the Disclosure Statement Hearing was good and sufficient and that no other or further notice is necessary; and upon the record herein after due deliberation thereon, that the relief should be granted as set forth below,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

I. **Approval of Disclosure Statement**

1. Pursuant to Bankruptcy Rule 3017(b), (a) the Disclosure Statement (together with the appendices filed by the Debtors leading up to the Disclosure Statement Hearing) is approved as containing adequate information regarding the Plan within the meaning of Bankruptcy Code section 1125(a), and (b) to the extent not withdrawn, settled, or otherwise resolved, all objections to the Disclosure Statement are overruled.

2. The Debtors are authorized to (i) make non-material changes to the Disclosure Statement, Plan, and related documents (including the exhibits thereto) and (ii) revise the Disclosure Statement and related documents (including the

appendices and exhibits thereto) to add further disclosure concerning events occurring at or after the Disclosure Statement Hearing, before distributing it in accordance with the terms of this Order. The Debtors shall file copies with the Court of any changed pages blacklined to show the changes.

**II. Establishment of Cure Procedures for Executory Contracts or Unexpired Leases to Be Assumed and Reinstated Pursuant to the Plan**

3. The cure notice in substantially the form attached hereto as Exhibit A (the "Cure Notice") is hereby approved.

(a) No later than September 4, 2009, the Debtors shall serve on each party to an executory contract or unexpired lease that may be assumed under the Plan (the "Assumed Contracts") a notice (in the form attached hereto as Exhibit A, the "Cure Notice") setting forth the amount necessary to cure any defaults of any of the Debtors under such Assumed Contract according to the Debtors' books and records (the "Cure Amount"). The Cure Notice shall notify each Assumed Contract counterparty that the Assumed Contract shall be assumed by the Debtors as of the Plan Effective Date subject to payment of the Cure Amount, if any.

(b) The Cure Notice shall state that any objection to assumption of the Assumed Contract and the Cure Amount (a "Cure Amount Objection") must be filed on or before the Confirmation Objection Deadline (defined below). The Cure Notice shall also state that any Cure Amount Objection must state with specificity what Cure Amount the Assumed Contract counterparty believes is required and include invoices and other appropriate documentation in support thereof.

4

(c) Disputes regarding Cure Amounts or the assumption and reinstatement of an executory contract or unexpired lease under the Plan shall be resolved either consensually by the parties or by the Bankruptcy Court at the Confirmation Hearing (or at such later hearing as the Debtors schedule). A Cure Amount Objection shall not be treated by the Court as an objection to confirmation of the Plan.

(d) If no Cure Amount Objection is timely received, the counterparty to the Assumed Contract shall be deemed to have consented to the Cure Amount and the assumption of the Assumed Contract (subject to the occurrence of the Plan Effective Date), and the Cure Amount set forth in the Cure Notice shall be controlling, and the counterparty party to such Assumed Contract shall be forever barred from objecting to the assumption of the contract or lease and from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or Reorganized Debtors. Any Cure Amounts to which no Cure Amount Objection is timely received, and disputed Cure Amounts which are resolved by agreement or by the Bankruptcy Court at the Confirmation Hearing (or at any later hearing), shall be paid in accordance with the Plan.

(e) The Debtors may designate any Assumed Contract for rejection at any time prior to the payment of the Cure Amount.

4. The Debtors have identified certain executory contracts or unexpired leases that will be rejected as of the Plan Effective Date (the "Rejected Contracts"). The counterparties to such Rejected Contracts shall receive notice to such effect and shall be provided with an opportunity to assert a rejection damage claim against the Debtors. The form of rejection notice is attached hereto as Exhibit B (the

5

"Contract Rejection Notice"). Such Contract Rejection Notices shall be served upon the counterparties to Rejected Contracts on or before the Mailing Deadline (as defined herein). Parties to Rejected Contracts shall be provided with 30 days following the entry of the Confirmation Order to assert a rejection damage claim.

5. The Debtors may, with the consent of the Requisite DIP Lenders (as defined in the Plan), remove from or add to Exhibit J of the Plan any contract or lease prior to the Plan Effective Date by filing notice of such removal or addition with the Bankruptcy Court prior to the Plan Effective Date.

## III. Establishment of the Record Date, the Voting Deadline, and Certain Other Procedures

### A. Record Date

6. Notwithstanding anything to the contrary in Bankruptcy Rule 3018(a), the Record Date for determining (a) creditors and interestholders entitled to receive Solicitation Packages (as defined herein) and other notices and (b) creditors entitled to vote to accept or reject the Plan shall be August 27, 2009, subject to the special procedures outlined below with respect to Class 7 Noteholder Claims.

### B. Voting Deadline

7. The last date and time by which ballots for accepting or rejecting the Plan must be received by the Voting Agent (defined below) in order to be counted shall be October 5,

6

2009, at 5:00 p.m. (prevailing Eastern time) (the "Voting Deadline"). In order to be counted, ballots must be returned to the Voting Agent on or prior to the Voting Deadline by (a) mail in the return envelope provided with each ballot or (b) overnight delivery at the claimholder's expense. Ballots submitted by facsimile or electronic mail transmission shall not be counted, except as outlined below with respect to Class 7 Noteholder Claims.

C.   **Procedures for Temporary Allowance of Claims Pursuant to Rule 3018 For Voting Purposes**

8.   The last date and time for filing and serving motions pursuant to Bankruptcy Rule 3018(a) ("Rule 3018(a) Motions") seeking temporary allowance of claims for the purpose of voting to accept or reject the Plan shall be September 25, 2009, at 4:00 p.m. (prevailing Eastern time) (the "Rule 3018(a) Motion Deadline"). Rule 3018(a) Motions must (a) be made in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) set forth the name of the party asserting the Rule 3018(a) Motion, (d) state with particularity the legal and factual bases for the Rule 3018(a) Motion, and (e) be filed with the Bankruptcy Court and served so as to be RECEIVED by the Notice Parties (defined below) no later than the Rule 3018(a) Motion Deadline.

9. Any party timely filing and serving a Rule 3018(a) Motion shall be provided a ballot and be permitted to cast a provisional vote to accept or reject the Plan. If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion prior to the Voting Deadline, then at the Confirmation Hearing, the Voting Agent shall inform the Court whether including the relevant provisional ballot would affect the outcome of the voting to accept or reject the respective Plan in the relevant class in which the provisional ballot was cast. The Court may then determine whether the provisional ballot should be counted as a vote on the Plan.

**IV. Approval of the Confirmation Hearing Date and Time, Deadline and Procedures for Filing Objections and Replies Thereto and the Form and Manner of Notice of the Confirmation Hearing**

**A. Confirmation Hearing Date and Time**

10. The Confirmation Hearing shall be October 15, 2009, at 2:00 p.m. (prevailing Eastern time). The Debtors may continue the Confirmation Hearing by announcing such continuance in open court, in an agenda for such hearing, or by filing notice of the continuance.

**B. Deadline and Procedures for Filing Confirmation Objections**

11. Pursuant to Bankruptcy Rule 3020(b)(1), Confirmation Objections shall be filed and served by 4:00 p.m. (prevailing Eastern time) on October 6, 2009 (the "Confirmation

Objection Deadline"). Confirmation Objections not timely filed and served in accordance with this Order shall not be considered.

12. Confirmation Objections, if any, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting or responding party, and the nature and amount of any claim or interest asserted by such party against or in the Debtors, their estates, or their property; (d) state with particularity the basis and nature of any objection or response and the legal and factual bases therefor; (e) reference with specificity the provisions of the Plan to which objection or response is made, including proposed language to be added to the Plan or existing language in the Plan to be modified or deleted to resolve such objection or response; (f) be filed, together with proof of service, with the Bankruptcy Court; and (g) be served by the Confirmation Objection Deadline on the following parties (collectively, the "Notice Parties"): (i) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Suite 2700, Chicago, Illinois  60606-1720 (Attn: J. Eric Ivester, Esq., and Stephen D. Williamson, Esq.), and Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19899-0636 (Attn: Anthony W. Clark, Esq., and Kimberly A. LaMaina, Esq.); (ii) the U.S. Trustee, the

Office of the United States Trustee, J. Caleb Boggs Federal Bldg., 844 North King Street, Room 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Joseph J. McMahon, Jr., Esq.); (iii) counsel for the Creditors' Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068 (Attn: Kenneth A. Rosen, Esq.), and Bifferato Gentilotti LLC, 800 N. King Street, Plaza Level, Wilmington, DE 19801 (Attn: Garvan F. McDaniel, Esq.); (iv) counsel for the DIP Administrative Agent, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Abhilash M. Raval, Esq., Tyson Lomazow, Esq., and Brian Kinney), and Morris, Nichols, Arsht & Tunnell LLP, Chase Manhattan Centre, 18th Floor, 1201 North Market Street, Wilmington, DE 19899 (Attn: Robert J. Dehney, Esq.); (v) Counsel for the Prepetition Administrative Agent, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Lori Fife, Esq.); and (vi) counsel for the Official Committee of Retirees, Schnader Harrison Segal & Lewis LLP, 824 N. Market Street, Suite 1001, Wilmington, DE 19801 (Attn: Richard A. Barkasy, Esq.) and Stahl Cowen Crowley Addis LLC, 55 West Monroe Street, Ste 1200, Chicago, IL 60603 (Attn: Jon D. Cohen, Esq. and Trent P. Cornell, Esq.). Confirmation Objections not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.

## C.    Replies to Confirmation Objections

13.    Parties-in-interest shall be allowed to file a reply or omnibus reply on or before October 13, 2009, at 4:00 p.m. (prevailing Eastern Time) to any confirmation objections that may be filed.

## D.    Form of Confirmation Hearing Notice

14.    The notice of the Confirmation Hearing and related matters, substantially in the form attached hereto as Exhibit C (the "Confirmation Hearing Notice"), is hereby approved.

## E.    Manner of Notice by Publication

15.    In addition to including the Confirmation Hearing Notice in the Solicitation Packages, the Debtors shall supplement such notice by causing the Confirmation Hearing Notice to be published in The Wall Street Journal and such other publications the Debtors decide (in their sole judgment) on or before September 10, 2009 (the "Publication Deadline").  The version of the Confirmation Hearing Notice published pursuant to this paragraph may be modified to conserve space and minimize cost to the estate.  At a minimum, it must contain the information set forth in paragraph 28 of the Solicitation Procedures Motion.  The publication of the Confirmation Hearing Notice shall provide sufficient notice to persons who do not otherwise receive the Confirmation Hearing Notice by mail.

11

**V.    Approval of the Solicitation Procedures**

16.    The solicitation procedures set forth below are good and sufficient and satisfy the requirements of the Bankruptcy Code and Bankruptcy Rules.

**A.    Duties of the Voting Agent**

17.    In connection with the solicitation of votes with respect to the Plan, The Garden City Group, Inc. shall serve as the voting agent for all creditors entitled to vote on the Plan (the "Voting Agent")[3].    The Voting Agent is authorized and directed to assist the Debtors in (a) serving the Solicitation Packages and other notices, (b) receiving and tabulating ballots cast on the Plan, (c) certifying to the Court the results of the balloting, and (d) responding to inquiries from creditors relating to the Plan, the Disclosure Statement, the ballots, and matters related thereto.

**B.    Mailing Deadline**

18.    The Debtors shall cause the Voting Agent to mail the Solicitation Packages to the parties described herein, each of which will include the Confirmation Hearing Notice, by September 4, 2009 (the "Mailing Deadline").

---

[3]    The term "Voting Agent" shall also apply to Financial Balloting Group LLC, only in connection with Class 7 Noteholder Claims.

12

## C.   Summary of Solicitation Packages

19.   Creditors, interestholders, and parties-in-interest in these chapter 11 cases shall receive different notices and other documents (the "Solicitation Packages") depending on their relationships to the Debtors and whether they are entitled to vote on the Plan.   For ease of reference, a table indicating the different documents which will constitute the different Solicitation Packages and the parties that shall receive each Solicitation Package follows:

| | Classes 1-5[4] | Classes 6-9 | Classes 10-11 | Contingent, unliquidated or disputed claims | Core Notice Parties[5] | Counter-parties to assumed executory contracts | Counter-parties to rejected executory contracts |
|---|---|---|---|---|---|---|---|
| Confirmation Hearing Notice (Unimpaired – Non-Voting) ("Unimpaired Creditor Notice") | x | | | | | | |
| Confirmation Hearing Notice (Generic) | | x | | | x | x | |
| Confirmation Hearing Notice (Impaired – Non-Voting) ("Rejecting Creditor Notice") | | | x | | | | |

---

[4]   Includes creditors holding allowed claims that are not classified and unimpaired under the Plan (e.g., Administrative Claims and Priority Tax Claims).

[5]   In the above table, "Core Notice Parties" refers to the following parties: Parties on the Master Service List; United States Trustee; District Director of the Internal Revenue Service; Securities and Exchange Commission; counsel to the Prepetition Administrative Agent; counsel to the DIP Administrative Agent; counsel to the Creditors' Committee; counsel to the Official Committee of Retirees; and Notes Indenture Trustee and counsel.

| | Classes 1-5[4] | Classes 6-9 | Classes 10-11 | Contingent, unliquidated or disputed claims | Core Notice Parties[5] | Counter-parties to assumed executory contracts | Counter-parties to rejected executory contracts |
|---|---|---|---|---|---|---|---|
| Confirmation Hearing Notice (CUD – Non-Voting) ("CUD Notice") | | | | x | | | |
| Contract Rejection Notice | | | | | | | x |
| Ballot for the appropriate class | | x | | | | | |
| Solicitation letters, if any, from the Debtors and any official Committee | | x | | | x | | |
| CD-ROM containing Disclosure Statement, the Plan, and the materials appended thereto, and Solicitation Procedures Order | | x | | | x | | |
| Such other information as the Court may direct or approve | x | x | x | x | x | | |
| Customized Cure Notice | | | | | | x | |

**D.    Solicitation Packages for Voting Creditors**

20.    Holders of claims in Class 6 Prepetition Secured Obligations, Class 7 Noteholder Claims, Class 8 PBGC Termination Liability Claim, and Class 9 Other Unsecured Claims are entitled to vote on the Plan.  Such holders shall receive in their Solicitation Package the following:

        (a)  the Confirmation Hearing Notice;

        (b)  a CD-Rom containing the Disclosure Statement, Plan, and the Solicitation Procedures Order approving this Motion;

14

(c) a solicitation letter prepared by the Creditors' Committee, if any;[6] and

(d) the appropriate ballot for their class.[7]

21. **Ballots**. The following ballots, in substantially the forms attached hereto as **Exhibits D-1**, **D-2**, **D-3**, and **D-4**, are approved and shall be used in connection with the solicitation of votes on the Plan by holders of claims against the Debtors in Classes 6, 7, 8, and 9 of each Debtor:

| Exhibit | |
|---|---|
| **Exhibit D-1** | Ballot for Holders of Prepetition Secured Obligations (Class 6) |
| **Exhibit D-2** | Ballot for Holders of Noteholder Claims (Class 7) |
| **Exhibit D-3** | Ballot for Holders of PBGC Termination Liability Claim (Class 8) |
| **Exhibit D-4** | Ballot for Holders of Other Unsecured Claims (Class 9) |

22. Class 6, Class 8, and Class 9 Ballots will be accompanied by first-class, postage prepaid, return envelopes pre-addressed to the Voting Agent at The Garden City Group, Inc., Attn: Hayes Lemmerz International, Inc., P.O. Box 9000 #6531, Merrick, NY 11566-9000. Special handling procedures with respect to the Ballots of publicly held securities are set forth in Section F and G, below.

---

[6] The form of solicitation letter from the Creditors' Committee is annexed hereto as **Exhibit H**.

[7] The Debtors shall have the right to serve printed versions of the Disclosure Statement, Plan, and/or Solicitation Procedures Order in the event they determine such service is more cost-effective.

23.    The Plan contains certain third-party releases, exculpation provisions, and injunction language (collectively, the "Releases").    In the Ballots, voting creditors shall be advised that their acceptance of the Plan constitutes an acceptance of the Releases. Creditors not accepting the Releases should vote to reject the Plan.    In Class 7, rejecting Noteholders will have the option to opt-in or opt-out of the Releases on the Ballot.

**E.    Transmittal of Solicitation Packages to Certain Claim and Interestholders**

24.    The distribution of Solicitation Packages shall be subject to the following procedures as described below:

25.    Unimpaired Accepting Claims.    Pursuant to Bankruptcy Code sections 1124 and 1126(f), Class 1 Secured Tax Claims, Class 2 Other Secured Claims, Class 3 Other Priority Claims, Class 4 Intercompany Claims, and Class 5 Subsidiary Interests of each Debtor are deemed unimpaired (collectively, the "Unimpaired Creditors") and therefore are conclusively presumed to accept the Plan; hence solicitation of votes with respect to such classes of claims is not required.    Therefore such classes of claims shall receive only a Confirmation Hearing Notice modified to include notice of such Unimpaired Creditors'

non-voting status, substantially in the form attached hereto as Exhibit E.[8]

26. Impaired Rejecting Claims. Pursuant to Bankruptcy Code section 1126(g), Class 10a Subordinated Debt Securities Claims, Class 10b Subordinated Equity Securities Claims, Class 11a Interests in Hayes, and Class 11b Old Preferred Stock and Old Preferred Stock Options (collectively, the "Rejecting Creditors") of each Debtor shall be deemed to have rejected the Plan. The Debtors shall mail or deliver, no later than the Mailing Deadline, to the Rejecting Creditors of each Debtor only a Confirmation Hearing Notice modified to include notice of such Rejecting Creditors' non-voting status, substantially in the form attached hereto as Exhibit F.

27. Contingent, Unliquidated, or Disputed Claims. The Debtors need not solicit the votes of creditors whose claims are (a) listed on the Schedules as having a claim or a portion of a claim which is disputed, unliquidated, or contingent; (b) listed on the Schedules in a zero dollar amount or unknown in amount; (c) docketed by the Voting Agent as disputed, unliquidated, or contingent; or (d) subject to an objection by the Debtors on or prior to the Record Date. Consistent with this treatment, such holders of claims shall receive only a

---

[8] Such notice shall also be served upon creditors in unclassified, unimpaired creditors under the Plan.

Confirmation Hearing Notice modified to include notice of such creditors' non-voting status, substantially in the form attached hereto as Exhibit G (the "CUD Notice"). The CUD Notice, in addition to the information contained in the Confirmation Hearing Notice, shall inform such claimholders (a) that their claim is being treated as contingent, unliquidated, or disputed or interest has been identified as disputed, contingent, or unliquidated and (b) that they are not entitled to vote on the Plan in connection with such contingent, unliquidated, or disputed claim. Such claimholders shall be advised that they may file a Rule 3018(a) Motion in accordance with the above procedures if they desire to vote on the Plan.

28. Intercompany Claims. Pursuant to Bankruptcy Code section 105(a), each Debtor is deemed to have received all notices required under the Solicitation Procedures Order without actually delivering such notices.

F. Special Notice Procedures for Holders of Notes Claims

29. Transmittal to Holders of Notes Claims. Notwithstanding any other provision of this Order, transmittal of Solicitation Packages to holders of the Debtors' Notes (as defined in the Plan) shall be deemed good, adequate, and sufficient notice if it is delivered by electronic mail on or before the Mailing Deadline on Euroclear Bank ("Euroclear") and Clearstream Bank ("Clearstream").

30.   Dissemination to Accountholders and Beneficial Owners.   Euroclear and Clearstream shall be required to transmit the Solicitation Package or notice thereof to the banks, brokers, and other entities holding Class 7 Noteholder Claims (the "Accountholders") in accordance with their customary procedures.   The Solicitation Package shall include a beneficial owner ballot (the "Beneficial Owner Ballot") in the form as attached to this order as Exhibit D-2.

31.   Voting By Accountholders and Beneficial Owners. Euroclear and Clearstream Accountholders are hereby authorized and directed to use their customary procedures for obtaining the votes of beneficial owners (the "Beneficial Owners") who may be holding Class 7 Noteholder Claims through the Accountholder.

32.   In order to properly link Plan treatment to the votes cast by holders of Class 7 Noteholder Claims, the following additional procedures shall apply:   (1) the Record Date shall not apply to Class 7 Noteholder Claims, and holders of Class 7 Noteholder Claims throughout the solicitation period may cast votes on the Plan; (2) as a requirement to voting and treatment, the underlying Notes of any voting party (or actively abstaining party) shall be "blocked" from trading in accordance with the customary procedures of Euroclear and Clearstream (and the submission of a Beneficial Owner Ballot to the Accountholder shall be deemed to authorize the Accountholder to block such

holder's Notes); and (3) votes (and the corresponding blocked positions) shall be categorized into different groups for voting and treatment purposes, as follows: (a) voting to accept the Plan and granting the releases to the Released Parties; (b) voting to reject the Plan and granting the releases to the Released Parties; (c) voting to reject the Plan and electing to withhold the releases from the Released Parties; and (d) active abstainers, who are deemed to have released the Released Parties.

33. Upon receipt of the Beneficial Owner Ballots, the Accountholder shall summarize the individual votes of their Beneficial Owners from the Beneficial Owner Ballots on a master ballot in substantially the form attached as part of Exhibit D-2 (a "Master Ballot").

34. In addition, the Accountholders shall block the underlying Notes of any voting party or active abstainer in accordance with the procedures established by Euroclear or Clearstream, as appropriate, and the relevant blocking number(s) shall be included on the Master Ballot. As part of the blocking process, Beneficial Owners and Accountholders shall be deemed to have authorized Euroclear and/or Clearstream, as appropriate, to provide confirmation to the Voting Agent of the Accountholder's blocked position(s).

35.   The Accountholders shall then return the Master Ballot to the Voting Agent, with copies of the voted Beneficial Owner Ballots attached thereto.   The Accountholders are permitted to submit their Master Ballot and any attachments thereto to the Voting Agent in Adobe portable document format (a "pdf file") via electronic mail by the Voting Deadline, in accordance with the instructions set forth on the Master Ballot, with the original of such Master Ballot and any attachments thereto to be actually received by the Voting Agent within three business days of the Voting Deadline.

36.   The Voting Agent shall seek the cooperation of Euroclear and Clearstream, as appropriate, to confirm the blocked position(s) being voted on each particular Accountholder's Master Ballot.

37.   To the extent the Notes Indenture Trustee (as defined in the Plan) has filed Claims against multiple Debtors, any votes cast in Class 7 will be counted with respect to each such Debtor.

G.   **Special Notice Procedures for Holders of Interests in HLI**

38.   Transmittal to Holders of Interests in HLI. Transmittal of Solicitation Packages to holders of Interests in HLI (as defined in the Plan) shall be made as follows: a Solicitation Package shall be mailed no later than the Mailing Deadline to (i) each registered holder of Interests in HLI as of

21

the Record Date (the "Record Holders") and (ii) each bank or brokerage firm, or the agent therefore identified by the Debtors or the Voting Agent as an entity through which beneficial owners hold the Interests in HLI (collectively, the "Intermediary Record Holders").

39. Lists of Record Holders. Each of the indenture trustees and transfer agents shall provide the Voting Agent by the date of entry of the Solicitation Procedures Order with an electronic file, in a form acceptable to the Voting Agent, containing the names, addresses, and holdings of the respective Record Holders and Intermediary Record Holders of the Interests in HLI as of the Record Date or, if unable to provide an electronic file acceptable to the Voting Agent, two sets of pressure sensitive labels and a list containing the same information.

40. Dissemination to Beneficial Owners. Each Intermediary Record Holder (or their agents) through which beneficial owners hold Interests in HLI as of the Record Date are hereby ordered to distribute Solicitation Packages or other materials to the beneficial owners for which they hold Interests in HLI within five (5) business days of receipt of such Solicitation Packages.

41. The Debtors shall reimburse the Notes Indenture Trustee, Euroclear, Clearstream, Accountholders, transfer

22

agents, and Intermediary Record Holders for the reasonable, actual, and necessary out-of-pocket expenses incurred in performing the tasks above upon written request (subject to the Bankruptcy Court's jurisdiction to resolve any disputes over any request for such reimbursement).

**H.   When No Notice or Transmittal Necessary**

42.   No Solicitation Packages or other notices need be transmitted to (a) holders of claims that have already been paid in full or that are authorized to be paid in full in the ordinary course of business pursuant to orders entered by this Court or (b) any person to whom the Debtors mailed a notice of the meeting of creditors under Bankruptcy Code section 341 or notice of the Bar Date and such notice was returned marked "undeliverable" or "moved - no forwarding address" or for a similar reason, unless the Debtors have been informed in writing by such person of that person's new address.

**VI.   Procedures for Vote Tabulation**

**A.   Voting Amounts**

43.   Each claim within a class of claims entitled to vote to accept or reject a respective Plan shall be temporarily allowed in an amount equal to the amount of such claim as set forth by the Debtors on the applicable Ballot delivered by the Debtors to such party, but only for purposes of voting to accept or reject the Plan and not for purposes of the allowance of, or

23

distribution on account of, a claim, and without prejudice to the rights of the Debtors in any other context, including the right to object to the amount of any claim set forth for voting purposes on a ballot.

44. For purposes of voting, the amount that will be used to tabulate acceptance or rejection of the Plan for Class 6 Prepetition Secured Obligations and Class 7 Noteholder Claims shall be the principal amount held as of the Record Date.

45. A Ballot for Class 6 Prepetition Secured Obligations shall constitute a vote to accept or reject the Plan, to be counted in (i) Class 6 Prepetition Secured Obligations and (ii) Class 9 Other Unsecured Claim in the amount of each such Holder's total Deficiency Claim (as defined in the Plan). For voting and tabulation purposes, the total Deficiency Claim for all Holders of Prepetition Secured Obligations will be calculated by the Voting Agent by subtracting from the allowed amount of the Prepetition Secured Obligations the value of the distributions to be received by the Holders of the Prepetition Secured Obligations based on the mid-point valuation set forth in Appendix F to the Disclosure Statement.

B. Votes Counted

46. Any ballot that is timely received from a party entitled to vote and contains sufficient information to permit identification of the claimant and is cast as an acceptance or

rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

**C.   Votes Not Counted**

47.   Except as specifically set forth in section V.F herein, the following ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a) any ballot received after the Voting Deadline, if the Debtors have not provided an extension of the time to file such ballot;

(b) any ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c) any ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

(d) any ballot cast for a claim that is subject to a pending claim objection filed with the Court or classified as unliquidated, contingent, or disputed and for which no Rule 3018(a) Motion has been filed by the 3018(a) Motion Deadline and either agreed to by the Debtors or determined in favor of the movant by the Court at the Confirmation Hearing;

(e) any unsigned ballot;

(f) any ballot timely received that is cast in a manner that neither indicates an acceptance or rejection of the Plan or which indicates both an acceptance and rejection of the Plan; or

(g) any ballot submitted by facsimile transmission.

25

## D.    Changing Votes

48.    Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots are cast voting the same claim prior to the Voting Deadline, the last ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior Ballots, without prejudice to the Debtors' right to object to the validity of the second Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first ballot for all purposes.

## E.    No Vote Splitting; Effect

49.    Claim splitting is not permitted (except as it may relate to the procedures with respect to Master Ballots). Creditors and interestholders who vote must vote all of their claims or interests within a particular class for each Debtor to either accept or reject the Plan.

## F.    Withdrawal of Ballots

50.    Parties who have delivered a valid ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline.  To be valid, a notice of withdrawal must (i) contain the description of the Claims to which it relates and the aggregate principal amount represented by such Claims, (ii) be signed by the

26

withdrawing party in the same manner as the ballot being withdrawn, and (iii) contain a certification that the withdrawing party owns or is the proper agent for the Claims and possesses the right to withdraw the vote sought to be withdrawn. The Debtors and the Creditors' Committee have the right to contest the validity of any such withdrawals of ballots. Unless otherwise directed by the Court, a purported notice of withdrawal of ballots which is not received in a timely manner by the Voting Agent will not be effective to withdraw a previously cast ballot.

**G.   Counting Ballots from Beneficial Holders**

51.   The following procedures shall be used by the Debtors and the Voting Agent for tabulating votes cast by holders of Notes:

> (a) Accountholders required to use the Master Ballot voting process shall be required to retain for inspection by the Court the Beneficial Owner Ballots cast by Beneficial Owners for one year following the Voting Deadline.

> (b) Votes cast by Beneficial Owners holding Notes through Accountholders and transmitted by means of a Master Ballot shall be applied against the positions held by the Accountholders with respect to the Notes. Votes submitted by Accountholders on a Master Ballot must not be counted to the extent they are in excess of the position maintained by the respective Accountholders in the Notes on the Record Date.

(c) To the extent that conflicting votes or overvotes are submitted on a timely received Master Ballot, the Voting Agent shall attempt to resolve the conflict or overvote before the preparation of the vote certification.

(d) To the extent that overvotes on a timely received Master Ballot are not reconcilable before the preparation of the vote certification, the Voting Agent shall count votes in respect of the Master Ballot in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the applicable Accountholders' position on the Record Date in the applicable Notes.

(e) Accountholders shall be authorized to complete multiple Master Ballots, and the votes reflected by the multiple Master Ballots shall be counted except to the extent that they are duplicative of other Master Ballots. If two or more duplicative Master Ballots submitted are inconsistent in whole or in part, the latest Master Ballot received before the Voting Deadline, to the extent of such inconsistency, shall supersede and revoke any prior Master Ballot, subject to the Debtors' right to object to the validity of the second Master Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a).

**H.    Reservation of Rights Regarding Ballot Acceptance**

52.    The Debtors reserve their rights to accept any Ballots even if not in compliance with the procedures set forth herein, in their sole discretion. The ballot tabulation report shall note any such acceptation of a ballot that is not in compliance with the procedures set forth herein. The ballot

28

tabulation report shall be filed with this Court and served by October 8, 2009.

**VII. Copies of Review of Documents**

53.    Imaged copies of the complete Plan and the Disclosure Statement, including after the Exhibit Filing Date any omitted exhibits to the Plan, are publicly available on the Internet at the Bankruptcy Court's website, http://www.deb.uscourts.gov, for a nominal charge (registration is required) or at the Voting Agent's website, http://www.hayeslemmerzreorg.com (free of charge).  Copies of the Plan and the Disclosure Statement, (including all exhibits and/or appendices thereto) also may be obtained by first-class mail from the Voting Agent at The Garden City Group, Inc., Attn: Hayes Lemmerz International, Inc., P.O. Box 9000 #6531, Merrick, New York 11566-9000, telephone (800) 327-3664.  Copies of the Plan and the Disclosure Statement (including all exhibits and/or appendices thereto) may also be reviewed during regular business hours (8:00 a.m. to 4:00 p.m. weekdays, except legal holidays) at the Office of the Clerk, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

54. The Debtors shall use best efforts to file all Exhibits to the Plan that are not otherwise already attached to the Plan with the Court on or before September 25, 2009 (the "Exhibit Filing Date").

Dated:     Wilmington, DE
           September 2, 2009

                    _____
                    Honorable Mary F. Walrath
                    UNITED STATES BANKRUPTCY JUDGE

30