IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - x
:   Chapter 11
In re: :
:   Case No. 09-11655 (MFW)
HAYES LEMMERZ INTERNATIONAL, :
INC., <u>et al.</u>,[1] :   Jointly Administered
:
       Debtors. :   **Proposed Bidding Procedures Hrg. Date: 9/22/09 at 10:30 a.m.**
:  **Proposed Bidding Procedures Obj. Due: 9/18/09 at 10:00 a.m.**
- - - - - - - - - - - - - x   **Proposed Sale Hrg. Date: 10/22/09 at 2:00 p.m.**
  **Proposed Sale Obj. Date: 10/15/09 at 4:00 p.m.**

**DEBTORS' MOTION FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF HAYES LEMMERZ INTERNATIONAL – LAREDO, INC.; (B) APPROVING EXPENSE REIMBURSEMENT CLAIM; (C) SCHEDULING AN AUCTION AND SALE HEARING; (D) PERMITTING CREDIT BIDDING PURSUANT TO BANKRUPTCY CODE SECTION 363(k); (E) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (F) APPROVING FORM AND MANNER OF NOTICE OF ALL PROCEDURES, PROTECTIONS, SCHEDULES AND AGREEMENTS; AND (G) GRANTING CERTAIN RELATED RELIEF; AND**

---

[1] The following of Hayes' U.S. subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Hayes (2578) and have obtained joint administration therewith: Hayes Lemmerz Finance LLC (7731), Hayes Lemmerz International Import, Inc. (1655), Hayes Lemmerz International - California, Inc. (2337), Hayes Lemmerz International - Commercial Highway, Inc. (7674), Hayes Lemmerz International - Georgia, Inc. (6122), Hayes Lemmerz International - Howell, Inc. (9246), Hayes Lemmerz International - Huntington, Inc. (0825), Hayes Lemmerz International - Kentucky, Inc. (8246), Hayes Lemmerz International - Laredo, Inc. (8656), Hayes Lemmerz International - New York, Inc. (9278), Hayes Lemmerz International - Sedalia, Inc. (7670), Hayes Lemmerz International - Technical Center, Inc. (7519), Hayes Lemmerz International - Wabash, Inc. (0301), HLI Brakes Holding Company, Inc. (2575), HLI Commercial Highway Holding Company, Inc. (2828), HLI Netherlands Holdings, Inc. (0015), HLI Operating Company, Inc. (7742), HLI Parent Company, Inc. (7832), HLI Powertrain Holding Company, Inc. (8269), HLI Realty, Inc. (1885), HLI Services Holding Company, Inc. (7840), HLI Suspension Holding Company, Inc. (0061), and HLI Wheels Holding Company, Inc. (7882) (collectively with Hayes, the "<u>U.S. Debtors</u>"). With the exception of Hayes Lemmerz Finance LLC - Luxembourg S.C.A. (Luxembourg: 0646; USA: 7731) (the "<u>Non-U.S. Debtor</u>"), none of the foreign affiliates or subsidiaries of Hayes are Debtors in these chapter 11 cases. The mailing address for each of the U.S. Debtors is 15300 Centennial Drive, Northville, Michigan 48168.

**(II) ENTRY OF AN ORDER (A) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING CERTAIN RELATED RELIEF**

Hayes Lemmerz International, Inc. ("HLI") and certain of its affiliates, debtors and debtors-in-possession (collectively, the "Debtors" or "Hayes") hereby submit this motion (the "Motion") for entry of an order (the "Bidding Procedures Order") (A) establishing bidding and auction procedures (the "Bidding Procedures") in connection with the potential sale (the "Sale") of substantially all the tangible and intangible assets (the "Assets") of Hayes Lemmerz International – Laredo, Inc. ("HLI – Laredo"), free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code) and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "Interests"); (B) approving the proposed expense reimbursement claim for Harvey Holdings, LLC ("Harvey" or the "Stalking Horse Bidder"); (C) scheduling an auction (the "Auction") and setting a date and time for a sale hearing (the "Sale Hearing") for the Sale of the Assets; (D) permitting credit bidding pursuant to Bankruptcy Code 363(k); (E) establishing procedures for noticing the assumption and assignment of executory contracts and unexpired leases (the "Assignment Procedures"); (F) approving the form and

manner of notice of all procedures, protections, schedules and
agreements; and (G) granting certain related relief.  The
Debtors further request that at the Sale Hearing, subject to the
results of the Auction, this Court enter one or more orders
(each a "Sale Order") (A) approving and authorizing the Sale;
and (B) authorizing the assumption and assignment of certain
specified executory contracts and unexpired leases related to
the Assets.  In support of the Motion, the Debtors, by and
through their undersigned counsel, respectfully represent:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider this
Motion under 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding under 28 U.S.C. § 157(b).  Venue of these cases and
this Motion in this District is proper under 28 U.S.C. §§ 1408
and 1409.

2.   The statutory predicates for the relief requested
herein are sections 105, 363 and 365 of the Bankruptcy Code
(defined below) and sections 2002, 6004 and 6006 of the Federal
Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

### A.    The Chapter 11 Filing

3.   On May 11, 2009 (the "Petition Date"), the
Debtors each filed a voluntary petition in this Court for

reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.    No trustee or examiner has been appointed in the Debtors' chapter 11 cases.  On May 21, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these cases.  On July 7, 2009, the United States Trustee appointed an Official Committee of Retirees (the "Retiree Committee") in these cases.

5.    On September 2, 2009, the Bankruptcy Court approved the adequacy of the Debtors Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Hayes Lemmerz International Inc. And Its Affiliated Debtors And Debtors-in-Possession (the "Disclosure Statement").  The Debtors' proposed reorganization plan (the "Plan") is attached as an appendix to the Disclosure Statement.  On September 4, 2009, the Debtors commenced the solicitation of votes to accept or reject the Plan.  A hearing to consider confirmation of the Plan is currently scheduled for October 15, 2009.

**B. Factual Background and Current Business Operations**

6. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of Mark Brebberman in Support of Chapter 11 Petitions and First Day Pleadings (Docket No. 6), fully incorporated herein by reference.

7. The Debtors' operations in Nuevo Laredo, Mexico relate to the their powertrain components manufacturing operations (the "Powertrain Business"). This business is operated through the legal entity HLI – Laredo and its subsidiary, Industrias Fronterizas HLI, S.A. de C.V. ("Industrias" or "HLI – Mexico"). The principal assets of HLI – Laredo include facilities, personal property, contracts, and the equity interests of Industrias. Industrias is not a Debtor in these Chapter 11 cases. The Debtors conduct engineering, research and development for the Powertrain Business at their Northville, Michigan headquarters.

8. Industrias is the Mexican company which holds "maquiladora" status. Maquiladoras are manufacturing facilities operating in Mexico under special customs treatment, which may provide a company with significant advantages. For a business

to qualify for such "maquiladora status," it must maintain a corporate presence in Mexico. Industrias satisfies the requirement for maquiladora status. The Debtors take advantage of various incentives and lower labor costs by manufacturing various powertrain components at a facility located in Nuevo Laredo, Mexico and operated by Industrias. HLI – Laredo then imports finished components across the Mexican border and into the United States.

C.    **The Debtors' Marketing and Sale Efforts Of HLI - Laredo**

     9.   The Debtors have decided to divest themselves of the Powertrain Business as part of their restructuring efforts to focus on their core wheel business. The Sale terms set forth herein are similar to the terms the Debtors negotiated prior to the commencement of these chapter 11 cases with Harvey, including but not limited to the consideration offered by Harvey. The prepetition proposed transaction with Harvey was not consummated because Harvey was unable to secure the necessary financing to operate the Powertrain Business.

     10.  On August 14, 2009, the Debtors received a letter of intent from Harvey (as amended and attached hereto as <u>Exhibit A</u>, the "<u>Harvey LOI</u>").[2] The Harvey LOI outlines the proposed

---

[2]   The following description of the Harvey LOI is a summary of the terms set forth in <u>Exhibit A</u> attached hereto. To the extent that this summary differs in any way from terms set forth in the Harvey LOI, the terms of

    *(cont'd)*

terms for Harvey's purchase of substantially all of HLI –
Laredo's assets, including but not limited to all of the shares
of Industrias (which are held solely by HLI – Laredo), and
assumption of certain liabilities.

11.   As set forth in the Harvey LOI, the aggregate
consideration for the Acquired Assets would be the sum of $1.00
and the amount of cash in all of Industrias' bank accounts at
the Closing of the transaction, and the assumption of certain
liabilities of HLI - Laredo.  There will also be future
consideration based on achieving certain revenues on specific
programs.

12.   The Sale also provides for the sale, settlement
or transfer by Industrias to HLI – Laredo (and/or affiliates of
HLI – Laredo) of all intercompany receivables and payables
between Industrias, HLI – Laredo, and any of their affiliates.
HLI and its affiliates will provide Industrias with a release of
any and all claims that they have against Industrias, except
with respect to amounts that may become payable with respect to
certain customer programs.

---

*(cont'd from previous page)*
   the Harvey LOI, or alternatively, an asset purchase agreement being
   negotiated among the parties, shall control. Terms used but not otherwise
   defined in this section of this Motion shall have the meanings ascribed to
   them in the Harvey LOI attached hereto.

13.   The parties are working toward documenting an asset purchase agreement on terms consistent with those outlined in the Harvey LOI.   Subject to Bankruptcy Court approval, the parties anticipate the Closing Date will occur on or about October 31, 2009.

**D.**   **Bidding Procedures**

14.   The Debtors believe that additional parties may be interested in the purchase of the assets of HLI – Laredo and Industrias.   Accordingly, the Debtors intend to conduct an auction and market HLI – Laredo's assets to ensure that the Stalking Horse Bidder's offer is the highest and best offer for the Assets.

15.   Harvey has agreed to remain a stalking horse buyer while the Debtors conduct their marketing process provided they receive the expense reimbursement claim.   The Debtors believe that the protections Harvey have requested are reasonable and justified under the circumstances.

16.   The Debtors have proposed the following timeline with respect to the sale of HLI – Laredo's assets:[3]

- September 22, 2009 (10:30 a.m.) – Bidding Procedures Hearing

---

[3]   The Debtors, in the exercise of their business judgment, reserve their right to change these sale-related dates in order to achieve the maximum value for the Assets.

- October 19, 2009 (5:00 p.m.) – Bid Submission
  Deadline for Qualified Bids (defined below)

- October 21, 2009 (Time TBD) – Auction

- October 22, 2009 (2:00 p.m.) – Proposed Sale Hearing

**RELIEF REQUESTED**

17.   The Debtors have determined that a prompt Sale of
its Assets is the best way to maximize the value of the Assets
and minimize any liabilities related to the Powertrain Business
for the reorganized Debtors.

18.   Accordingly, by this Motion, the Debtors seek
entry of the Bidding Procedures Order (A) approving procedures
for (i) submitting bids for the Debtor's Assets, and (ii)
conducting an Auction with respect to the Assets in the event
that the Debtors receive more than one Bid; (B) approving the
expense reimbursement claim for the Stalking Horse Bidder;
(C) scheduling the Auction and a Sale Hearing with respect to
the Successful Bid(s) (defined below) accepted by the Debtors;
(D) permitting credit bidding; (E) establishing Notice and
Assumption and Assignment Procedures; and (F) approving form and
manner of notice of all procedures, protections, schedules and
agreements.

19.   The Debtors also request the Court set a Sale
Hearing on October 22, 2009 at 2:00 p.m. (prevailing Eastern

Time), but reserve the right to extend the Sale process, including, but not limited to, the applicable bid deadline and Auction date. At the Sale Hearing, pending the outcome of the Auction, the Debtors intend to seek entry of one or more orders (each a "Sale Order"), approving the Sale of the Assets free and clear of all Interests and authorizing the assumption and assignment of certain executory contracts and unexpired leases. A proposed form of Sale Order will be filed by the Debtors no later than ten (10) calendar days before the Sale Hearing. The Debtors will also file definitive documentation related to the Sale, including an asset purchase agreement, by such time.

**BASIS FOR RELIEF**

**A. The Bidding Procedures[4]**

20. To maximize the value of the Assets and minimize the need for the reorganized Debtors to maintain the Powertrain Business following their reorganization, the Debtors seek to implement a competitive bidding process that is designed to generate the highest and best offer for the Assets. As described more fully in the Bidding Procedures, attached hereto as Exhibit B, the Debtors may sell the Assets to any bidder that makes the highest or otherwise best offer for the Assets.

---

[4] Terms used but not otherwise defined in this section of this Motion shall have the meanings ascribed to them in the Bidding Procedures attached hereto.

**B.** __Stalking Horse Expense Reimbursement Claim__

21. In order to provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence necessary to submit a bid with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to reimburse the Stalking Horse Bidder for certain costs and expenses in the event the Debtors consummate a Sale transaction with a third-party ("__Expense Reimbursement Claim__").

22. The Expense Reimbursement Claim is intended to reimburse the Stalking Horse Bidder for its reasonable and documented costs and expenses of the Stalking Horse Bidder incurred from and after the date of the Harvey LOI and relating to the negotiation of an asset purchase agreement and conducting due diligence review. The maximum Expense Reimbursement Claim will be $100,000. Furthermore, the Expense Reimbursement Claim shall only be paid upon consummation of a Sale of the acquired Assets to another party. The Debtors request that the Bidding Procedures Order provide the Expense Reimbursement Claim with super priority administrative expense status under Bankruptcy Code section 503(b)(1).

## C.   __Credit Bidding__

23.   The Debtors seek the Court's allowance of credit bidding in connection with any Sale to the full extent of Bankruptcy Code section 363(k).

24.   In connection with the Sale of all or any of the Assets, the Debtors' pre- and post-petition secured lenders (collectively, the "__Secured Lenders__") may seek to credit bid some or all of their claims for their respective collateral (a "__Credit Bid__").

25.   Additionally, to the extent any competing bids are received for the Assets and the Expense Reimbursement Claim is approved for the Stalking Horse Bidder, then the Stalking Horse Bidder should have the option to credit bid its Expense Reimbursement Claim at any Auction.

26.   In order to be considered a "Qualified Credit Bid" any Credit Bid submitted must provide for the assumption and/or payment of administrative expense claims of the Debtor estate holding their respective collateral, and satisfy any Bid Protections provided for in the Bidding Procedures.

## D.   __Notice of Bid Procedures and Sale__

27.   __Notice of Sale Hearing__.  Within three (3) business days after the entry of the Bidding Procedures Order

(the "Service Date") or as soon thereafter as practicable, the Debtors (or their agents) shall serve this Motion (including all exhibits), the approved Bidding Procedures and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to any of the Assets, individually or as part of a package, during the year; (ii) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Assets; (iii) all parties to executory contracts and unexpired leases to be assumed upon the consummation of the Sale; (iv) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (vii) the United States Attorney's office; (v) all entities on the 2002 Service List and (vi) counsel to any official committee established in these chapter 11 cases (the "Sale Notice Parties").

28. Sale Notice. On the Service Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first class mail, postage prepaid, a sale notice (the "Sale Notice"), substantially in the form attached hereto as Exhibit C, upon all known creditors of HLI – Laredo and HLI – Mexico. Such limited notice is appropriate under the circumstances.

29.　__Notice of Successful Bidder__.　As soon as possible after the conclusion of the auction the Debtors shall file, but not serve, a notice identifying any Successful Bidder (the "__Post Auction Notice__").

**E.　__Assumption and Assignment Procedures__**

30.　The Sale provides for the assumption and assignment of certain executory contracts and unexpired leases to the Stalking Horse Bidder.　The Debtors propose the following procedures for notifying counterparties to certain executory contracts and unexpired leases and related cure amounts (the "__Assignment Procedures__").

31.　Within three (3) business days after entry of the Bidding Procedures Order or as soon thereafter as practicable, the Debtors will file a notice of cure amount (the "__Cure Notice__"), substantially in the form attached hereto as __Exhibit D__, with the Court and serve the Cure Notice on all non-debtor parties to any executory contracts and unexpired leases (the "__Contract Counterparties__") that the Stalking Horse Bidder is seeking to assume.

32.　The Cure Notice shall state the cure amounts that the Debtors believe are necessary to assume such executory contracts and unexpired leases pursuant to Bankruptcy Code section 365 (the "__Cure Amount__") and notify the non-debtor party

that such party's unexpired executory contract or lease may be assumed and assigned to the Stalking Horse Bidder (or Successful Bidder). The Cure Notice shall set a deadline by which the non-debtor party shall file an objection to the Cure Amount. The Debtors request that the Court set the deadline to object to any Cure Amount fifteen (15) days after service of the Cure Notice. The Cure Notice shall also provide that objections to any Cure Amount will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors.

33. In addition, at the Sale Hearing, the Debtors intend to (i) present evidence necessary to demonstrate adequate assurance of future performance by any Successful Bidder and (ii) request entry of an order requesting approval of the assumption and assignment of any Assigned Contracts to any Successful Bidder.

## APPLICABLE AUTHORITY

34. "Under Delaware law, the business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" Continuing Creditors' Committee of Star Telecomms., Inc. v. Edgecomb, 385 F.Supp.2d 449, 462 (D. Del. 2004); see also, Ad Hoc Committee of Equity

Holders of Tectonic Network, Inc. v. Wolford, 554 F.Supp.2d 538, 555 n.111 (D. Del. 2008).  For the reasons set forth herein, this Court should grant the relief requested in this Motion because the Debtors can demonstrate a sound business justification for selling the Assets.  See In re Delaware & Hudson Ry. Co., 124 B.R. 169 , 179 (D. Del. 1991).

35.  The Debtors have sound business justifications for selling the Assets at this time.  As discussed earlier, the businesses of HLI – Laredo and HLI – Mexico do not fit into the reorganized Debtors' business plan and reorganization strategy. The Debtors, by way of this sale, are divesting themselves of the sole business line that is not part of its core business of manufacturing and selling wheels.  Furthermore, over the past five years these operations have been a financial drain on the Debtors.  Moreover, the Debtors are preserving the ability to realize additional proceeds on their pre-sale efforts with respect to certain customer programs.  Also, absent a divestiture, Hayes may be forced into a costly plant rationalization.  The proposal submitted by the Stalking Horse Bidder is the only option presented to date for the Assets and represents the best option for shedding the liabilities associated with this business line.  For these reasons, the sale should be approved.

## A. The Bidding Procedures are Fair and Are Designed to Maximize the Value Received for the Assets

36.  The Bidding Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids.  The Bidding Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid.  At the same time, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers, to select the highest and best offer for the Assets, and to close the Sale of the Assets within a reasonable time frame.

37.  The Debtors request this Court's approval of the Bidding Procedures, including the dates established thereby for an Auction and a Sale Hearing.  Accordingly, the Debtors and all parties in interest can be assured that the consideration for the Assets will be fair and reasonable.  Moreover, there are sound business reasons to approve the Bidding Procedures.

## B. The Expense Reimbursement Claim Is Necessary To Preserve the Value of the Debtor's Estate

38.  Pursuant to Bankruptcy Rule 6004(f)(1), a sale of property outside the ordinary course of business may be by private sale or by public auction.  The Debtors believe that

offering the Expense Reimbursement Claim to the Stalking Horse
Bidder was necessary to obtain an offer for the Assets from the
Stalking Horse Bidder.  The Stalking Horse Bidder retains the
right to rescind its offer to purchase the Assets if the Expense
Reimbursement Claim is not approved.

39.   The Third Circuit has identified at least two
instances in which bidding incentives may benefit the estate.
First, expense reimbursement may be necessary to preserve the
value of the estate if assurance of the reimbursement
"promote[s] more competitive bidding, such as by inducing a bid
that otherwise would not have been made and without which
bidding would have been limited."  <u>Calpine Corp. v. O'Brien
Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)</u>, 181
F.3d 527, 537 (3d Cir. 1999) (hereinafter, "<u>O'Brien</u>").  Second,
if the availability of expense reimbursements induces a bidder
to research the value of the debtor and convert that value to a
dollar figure on which other bidders can rely, the bidder may
have provided a benefit to the estate by increasing the
likelihood that the price at which the debtor's assets are sold
will reflect their true worth. <u>Id.</u>

40.   The Expense Reimbursement Claim set forth in the
Bidding Procedures has enabled the Debtors to secure at least
one potential buyer of the Assets.  The Debtors hope that the

interest in the Assets demonstrated by the Stalking Horse Bidder will lead other potential bidders to submit competing bids that are materially higher or otherwise better than the Stalking Horse Bid, a clear benefit to the Debtors' estates. Moreover, the Stalking Horse Bidder would not agree to act as a stalking horse bidder without allowance of the Expense Reimbursement Claim.

41. Moreover, payment of the Expense Reimbursement Claim will not diminish the Debtors' assets. As set forth in the Bidding Procedures, the Expense Reimbursement is only payable if the Debtors consummate a Sale of the Assets to be acquired by the Stalking Horse Bidder to a purchaser other than the Stalking Horse Bidder. Also, the Expense Reimbursement Claim will be funded from the increased proceeds of the Sale realized by the Debtors.

## C.    Credit Bidding Should be Authorized

42. A secured creditor is allowed to "credit bid" the amount of its claim in a sale. Bankruptcy Code Section 363(k) provides, in relevant part, that in a sale under Bankruptcy Code section 363, unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim

against the purchase price of such property." 11 U.S.C. §
363(k). Even if a secured creditor is undersecured, as
determined in accordance with Bankruptcy Code section 506(a),
Bankruptcy Code section 363(k) allows such secured creditor to
bid the total face value of its claim and does not limit the
credit bid to the claim's economic value. <u>See</u> <u>Cohen v. KB</u>
<u>Mezzanine Fund II, LP (In re Submicron Sys. Corp.)</u>, 432 F.3d
448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well
settled among district and bankruptcy courts that creditors can
bid the full face value of the their secured claims under §
363(k)").

43. Pursuant to the Bidding Procedures, the Debtors'
Secured Lenders are entitled to credit bid some or all of their
claims for their respective collateral pursuant to section
363(k) of the Bankruptcy Code. Because the Secured Lenders hold
claims that are secured by the Assets, such Secured Lenders
should be allowed to credit bid the face value of their secured
claims in order to purchase the Assets, if any Secured Lenders
are interested in the Assets. In addition, the Stalking Horse
Bidder should be permitted to credit bid its Expense
Reimbursement Claim at any Auction to the extent the Stalking
Horse Bidder has an allowable Expense Reimbursement Claim.

**D.** **Approval of the Sale is Warranted Under Bankruptcy Code 363(b)**

44.     Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b)(1).  Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  A debtor's sale or use of assets outside the ordinary course of business should be approved by the Bankruptcy Court if the debtor can demonstrate a sound business justification for the proposed transaction.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986); In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991).  Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  In re S.N.A. Nut Co., 186 B.R. 98 (Bankr. N.D. Ill. 1995); see also In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re

Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

45. The Debtors have a sound business justification for selling the Assets at this time. The Debtors' management and financial advisors have concluded that a Sale of HLI – Laredo's Powertrain Businesses is the best option available to the Debtors for divesting themselves of these Assets. Whether any superior offers exist for the Assets will be determined by the Auction process.

46. The Sale of the Assets will be subject to competing bids, enhancing the Debtors' ability to receive the highest or otherwise best value for the Assets. Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.[5]

47. In addition, all creditors and parties in interest will receive adequate notice of the Bidding Procedures

---

[5] The Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors for approval to the Bankruptcy Court.

and Sale Hearing as set forth above.  Such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these Chapter 11 cases, those parties potentially interested in bidding on the Assets and others whose interests are potentially implicated by a proposed Sale.  Accordingly, consummating the Sale as soon as possible is in the best interests of the Debtors and its creditors and parties in interest.

**E.  The Proposed Sale Satisfes the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Interests**

48.  Bankruptcy Code section 363(f) permits the Debtors to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets) provided certain factors can be satisfied.  The Debtors will demonstrate that they can satisfy at least one or more of these conditions such that the Assets can be transferred free and clear of any Interests in the property.

49.  The Debtors believe that the Secured Lenders will consent to the sale of the Assets free and clear under Bankruptcy Code section 363(f)(2).  The Debtors are not aware

that any party, other than the Secured Lenders, have an Interest in the Assets.  The Secured Lenders will be provided with notice of the proposed Sale and ample time to object to the Sale. Moreover, the Debtors have consulted with the agent for their post-petition secured financing regarding the Sale in advance of filing this Motion.

50.  Alternatively, in the face of any objection by the Secured Lenders, the Sale can proceed pursuant to Bankruptcy Code section 363(f)(5) because the Secured Lenders' liens will attach to the proceeds of the sale.  The Debtors acknowledge that any bona fide interests in the sold Assets will attach to the sale proceeds with the same force, validity, effect, priority and enforceability as such interests had in the Assets prior to such Sale.   The Debtors will also establish at the Sale Hearing that any Secured Lender with an Interest in the Assets (to the extent any object) can be compelled to accept a monetary satisfaction of their claims.

**F.   A Successful Bidder Should be Entitled to the Protections of Bankruptcy Code Section 363(m)**

51.  Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *Willemain v. Kivitz* (*In re Willemain*), 764 F.2d 1019, 1023 (4th

Cir. 1985); <u>In re Congoleum Corp.</u>, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); <u>Abbotts Dairies of Pa.</u>, 788 F.2d at 147.

52.   The Debtors and the Stalking Horse Bidder negotiated the proposed terms of the Sale at arm's-length. Additionally, the Debtors will adduce facts at the Sale Hearing on any objection demonstrating that any bidder who is deemed a Successful Bidder for all or any portion of the Assets has negotiated at arm's-length, with all parties represented by their own counsel.

53.   Accordingly, the Sale Order will include a provision that the Successful Bidder for the Assets (including the Stalking Horse Bidder), is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.   The Debtors believe that providing any Successful Bidder with such protection will ensure that the maximum consideration will be received by the Debtors for the Assets and closing of the same will occur promptly.

## G.   The Assumption and Assignment of Executory Contracts and Unexpired Leases

54.   Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. See, e.g., In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. See Group of Institutional Investors v. Chicago, M., St. P. & P.R. Co., 318 U.S. 523 (1943); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the executory contract will benefit the estate." Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting In re Stable Mews Assoc., 41 B.R. 594, 596 (Bankr. S.D.N.Y 1984)). Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. See Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

Moreover, pursuant to Bankruptcy Code section 365(b)(1), for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the [debtor] will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default.  11 U.S.C. § 365(b)(1).

55.  Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  See In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994)  (noting purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets).

56.  Bankruptcy Code section 365(f) provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance . . . is provided."  11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R.

524, 538 (Bankr. D.N.J. 1989); see also In re Natco Indus.,
Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate
assurance of future performance does not mean absolute assurance
that debtor will thrive and pay rent).  Among other things,
adequate assurance may be given by demonstrating the assignee's
financial health and experience in managing the type of
enterprise or property assigned.  Accord In re Bygaph, Inc., 56
B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of
future performance is present when prospective assignee of lease
from debtors has financial resources and has expressed
willingness to devote sufficient funding to business in order to
give it strong likelihood of succeeding).

     57.  The Stalking Horse Bidder or any Successful
Bidder will demonstrate, if questioned, that it has financial
resources that are sufficient to perform under any executory
contracts or unexpired leases it seeks to have assumed by the
Debtors (the "Assumed Contracts") at the Sale Hearing.  The Sale
Hearing therefore will provide the Court and other interested
parties ample opportunity to evaluate and, if necessary,
challenge the ability of the Stalking Horse Bidder or,
alternatively any Successful Bidder, to provide adequate
assurance of future performance under the Assumed Contracts.

58.   The Debtors respectfully submit that the proposed Assignment Procedures are appropriate and reasonably tailored to provide Contract Counterparties with adequate notice in the form of the Notice of Assumption of the proposed assumption and assignment of their contracts.   Such Contract Counterparties will then be given an opportunity to object to such notice.   If an objection is filed, such objection will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors.

59.   Furthermore, to the extent that any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned in connection with the Sale of any of the Assets, the Debtors will cure any such default prior to such assumption and assignment.

60.   Accordingly, the Debtors submit that implementation of the proposed Assumption Procedures is appropriate in these cases.   The Court therefore should have a sufficient basis to authorize the Debtors to assume and assign contracts acquired through the Sale.

## H.   Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

61.   Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless

the court orders otherwise."  Additionally, Bankruptcy Rule
6006(d) provides that an "order authorizing the trustee to
assign an executory contract or unexpired lease . . . is stayed
until the expiration of 10 days after the entry of the order,
unless the court orders otherwise."  The Debtors request that
any Sale Order be effective immediately by providing that the
10-day stays under Bankruptcy Rules 6004(h) and 6006(d) are
waived.

## NO PRIOR REQUEST

62.  No previous request for the relief sought herein
has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) enter the Bidding Procedures Order substantially in the form attached hereto; (ii) scheduling an Auction and a Sale Hearing to approve such sale or sales, and approving the form and manner of notice thereof; (iii) permitting credit bidding; and (iv) granting such other and further relief as is just. Additionally, the Debtors request that at the Sale Hearing the Court enter one or more Sale Orders subject to the result of the Auction and to the Bidding Procedures (i) approving and authorizing the Sale; and (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases.

Dated:  Wilmington, Delaware
        September 11, 2009

                        SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                        By:  *Kimberly A. LaMaina*
                             Anthony W. Clark (I.D. No. 2051)
                             Kimberly A. LaMaina (I.D. No. 4568)
                             One Rodney Square
                             P.O. Box 636
                             Wilmington, DE 19899
                             (302) 651-3000

                             - and -

                             J. Eric Ivester
                             Stephen D. Williamson
                             Bennett S. Silverberg (New York Office)
                             155 North Wacker Drive, Suite 2700
                             Chicago, Illinois 60606
                             (312) 407-0700

                        Counsel for Debtors and
                           Debtors-in-Possession