**EXHIBIT B**

**BIDDING PROCEDURES**

## Bidding Procedures For Assets of Hayes Lemmerz International – Laredo, Inc.

Set forth below are the bidding procedures (the "Bidding Procedures") to be followed with respect to the proposed sale (the "Sale") of substantially all the tangible and intangible assets (the "Assets") of Hayes Lemmerz International – Laredo, Inc. ("HLI - Laredo") in the jointly administered chapter 11 cases of Hayes Lemmerz International, Inc. and certain of its affiliates, debtors and debtors-in-possession (collectively, the "Debtors"), pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On September [●], 2009 the Bankruptcy Court entered an order approving the Bidding Procedures set forth herein (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, the Bankruptcy Court approved Harvey Holdings, LLC as the stalking horse bidder (the "Stalking Horse Bidder" or the "Buyer") for substantially all of the assets of HLI – Laredo. The proposed Sale is subject to the competitive bidding procedures set forth herein and final approval of the Bankruptcy Court.

The Bidding Procedures Order scheduled **October 22, 2009 at 2:00 p.m. (prevailing Eastern Time)** as the date the Bankruptcy Court will conduct a sale hearing (the "Sale Hearing") with respect to the assets of HLI - Laredo. At the Sale Hearing, the Debtors may seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Assets to the Stalking Horse Bidder or another Qualified Bidder (defined below) that the Debtors determine to have made the highest or best offer for the Assets at an auction scheduled and conducted in accordance with the Bidding Procedures (an "Auction").

## Transaction Structure[1]

**Acquired Assets:**

Under the proposed Sale, the Debtors are proposing to sell substantially all of the Assets of HLI – Laredo, including the outstanding capital stock in Industrias Fronterizas HLI, S.A. de C.V. ("Industrias") it holds to the Buyer (collectively, the "Acquired Assets").[2]

The Acquired Assets will not include (i) accounts receivable identified by HLI – Laredo in an aggregate amount not to exceed accounts payable owed by HLI – Laredo upon closing, including any cure amounts with respect to Assigned Contracts (the "Retained Receivables"), and (ii)

---

[1] The following is a summary of the material terms of the proposed Sale set forth in the letter of intent between the Stalking Horse Bidder and HLI – Laredo (the "Harvey LOI"). The material terms of the proposed Sale will be further detailed in an asset purchase agreement to be documented between the parties (the "Asset Purchase Agreement"). To the extent there is are any inconsistencies between the summary set forth herein and the Letter of Intent or Asset Purchase Agreement, the Harvey LOI or Asset Purchase Agreement will control.

[2] Acquisition of HLI – Laredo's Assets must include the outstanding capital stock of HLI – Mexico in order for the entity to maintain its *maquiladora* status in Mexico. *Maquiladoras* are assembly facilities operating in Mexico under special customs treatment, which may provide a company with substantial competitive advantages. For a company to qualify for such "maquiladora status," it must maintain a corporate presence in Mexico.

1

intercompany accounts receivable with any and all related parties and entities of HLI – Laredo (together with the Retained Receivables, the "Excluded Assets").

The Acquired Assets include certain personal property used in the businesses of HLI – Laredo and Industrias and located at the Debtors' Northville, Michigan headquarters.

The Acquired Assets further include all contracts and leases of HLI – Laredo (the "Assigned Contracts"). Such Assigned Contracts will be assumed by the Debtors and assigned to the Buyer in accordance with Bankruptcy Code section 365.

**Assumed Liabilities:**

The Buyer will assume only those liabilities and obligations arising from the Assigned Contracts on or after closing; provided that the Buyer will not assume and does not agree to pay, discharge, or perform any liabilities arising out of any breach by HLI – Laredo prior to closing under any Assigned Contract.

The Buyer is not assuming intercompany accounts payables with any and all related parties and entities of HLI – Laredo.

**Retained Assets and Liabilities/Release of Claims:**

Prior to closing and at no cost to the Buyer, Industrias will sell, settle or transfer to HLI – Laredo (and/or affiliates of HLI – Laredo) all intercompany receivables and payables between Industrias, HLI – Laredo, and any of their affiliates. Hayes Lemmerz International, Inc. and its affiliates will provide Industrias with a release of any and all claims that it or its affiliates may have against Industrias, except with respect to amounts which may become payable with respect to certain customer programs.

Industrias will provide Hayes Lemmerz International, Inc. and its affiliates with a release of any and all claims that it may have against Hayes Lemmerz International, Inc. and its affiliates.

**Limited Representations and Warranties of Seller:**

HLI – Laredo will provide limited representations and warranties to the Buyer. HLI – Laredo and the Debtors will provide no indemnification to the Buyer.

**Consideration:**

The total consideration for the Acquired Assets will be the sum of (x) One Dollar ($1.00) plus (y) a sum equal to the amount of cash in all of Industrias's bank accounts at the closing of the transaction, plus assumption of certain liabilities.

**Payments On Certain Business:**

In the event that Buyer Entities make any sales after January 1, 2011, under the General Motors High Feature V6 SIDI program (the "GM SIDI Program"), the Buyer Entities will pay to HLI –

Laredo (or an affiliate designated by HLI – Laredo) two and a half percent (2.5%) of the selling price of each part and/or assembly shipped under such GM SIDI Program.

## The Bidding Process

The Debtors and their advisors, after consultation with the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Debtors' prepetition secured lenders (the "Prepetition Lenders"), and their secured post-petition lenders (the "DIP Lenders," and together with the Prepetition Lenders, the "Secured Lenders") shall (i) determine whether any person is a Qualified Bidder (defined below), (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence reviews, (iii) receive offers from Qualified Bidders, (iv) notice all parties with respect to the Bidding Procedures, and (v) evaluate and negotiate any offers made to purchase the Assets (collectively, the "Bidding Process"). The Debtors shall have the right to amend the Bidding Procedures in writing, which in no event shall be inconsistent with any Bankruptcy Court order, including the Bidding Procedures Order; *provided, however,* the Debtors will not modify the Minimum Bid Amount (as defined below) or Expense Reimbursement Claim (as defined below).

## Participation Requirements

Any person that wishes to participate in the Bidding Process (a "Potential Bidder") must become a qualified bidder (a "Qualified Bidder"). As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver (unless previously delivered) to the Debtors, no later than **October 5, 2009**:

> i. An executed confidentiality agreement in form and substance acceptable to the Debtors; and
>
> ii. Sufficient information, as may be requested by the Debtors, to allow the Debtors to determine that the bidder has the financial wherewithal to close the sale transaction, including but not limited to, current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtors) of the Potential Bidder or of those entities that will guarantee the obligations of the Potential Bidder.

A Qualified Bidder is a Potential Bidder that delivers the documents described in subparagraphs (i) and (ii) above, and that the Debtors determine is reasonably likely (based on financial information submitted by the Potential Bidder, the availability of financing, experience and other consideration deemed relevant by the Debtors), to submit a bona fide offer and be able to consummate a sale if selected as the Successful Bidder (defined below). No later than three (3) business days after a Potential Bidder delivers all of the materials required by subparagraph (i) and (ii) above, the Debtors shall determine, and shall notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder.

## Due Diligence

Any person that wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Qualified Bidder. The Debtors will afford any Qualified Bidder the time and opportunity to conduct reasonable due diligence; provided, however, that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. Each Qualified Bidder shall agree that it will not use any confidential information for any purpose other than submitting a bid.

## Bid Requirements

All parties interested in submitting competing bids for the Acquired Assets must satisfy (unless such requirement is waived by the Debtors) the following Bidding Procedures:

(i.) A bid equal to or greater than $110,000 (the "Minimum Bid Amount"). Any subsequent bids must be in increments of $25,000.

(ii.) A good-faith deposit (a "Good Faith Deposit") in the amount of $100,000 (equal to the maximum amount of the expense reimbursement obligations of HLI – Laredo to the Stalking Horse Bidder (the "Expense Reimbursement Claim")).

(iii.) A letter stating that the bidder's offer is irrevocable until (a) 45 days after the Sale Hearing or (b) the date HLI – Laredo closes the Sale of its Assets.

(iv.) An executed letter of intent (with material transaction terms) or a copy of the purchase agreement pursuant to which the Qualified Bidder proposes to acquire the Assets, which purchase agreement shall include a commitment to close by a date not later than October 31, 2009.

(v.) Written evidence of a commitment for financing or other evidence of proposed purchaser's ability to consummate the proposed transaction (with appropriate contact information for such financing sources) and which the Debtors believe to be sufficient to satisfy the standards to provide adequate assurance of future performance under Bankruptcy Code section 365.

(vi.) The identity of each entity that will be participating in such bid, including any proposed designee(s).

(vii.) A list of the Debtor's executory supplier contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors.

(viii.) In the event an Asset Purchase Agreement between the Stalking Horse Bidder and the Debtors is filed with the Bankruptcy Court on or prior to

October 9, 2009, all bids submitted thereafter must be on a marked version of such Asset Purchase Agreement.

A bid received from a Qualified Bidder that includes all of the detail set forth above shall be a "Qualified Bid." The Debtors reserve the right to determine the value of any Qualified Bid, and which Qualified Bid constitutes the highest or best offer. Notwithstanding the bid requirements detailed above, the Stalking Horse Bidder's bid (the "Stalking Horse Bid") shall be deemed a Qualified Bid.

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to the following parties no later than 4:00 p.m. (prevailing Eastern time) on **October 19, 2009** (the "Bid Deadline"):

| | | |
|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, Illinois 60606-1720<br>(Attn: J. Eric Ivester, Esq. and Stephen D. Williamson, Esq.)<br><br>Counsel for the Debtors | Skadden, Arps, Slate, Meagher & Flom LLP<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, DE 19899-0636<br>(Attn: Anthony W. Clark, Esq. and Kimberly A. LaMaina, Esq.)<br><br>Counsel for the Debtors | Office of the United States Trustee, J. Caleb Boggs Federal Bldg.<br>844 North King Street<br>Room 2207<br>Lockbox 35<br>Wilmington, DE 19801<br>(Attn: Joseph J. McMahon, Jr., Esq.) |
| Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>(Attn: Kenneth A. Rosen, Esq.)<br><br>Counsel for the Creditors' Committee | Bifferato Gentilotti LLC<br>800 N. King Street<br>Plaza Level<br>Wilmington, DE 19801<br>(Attn: Garvan F. McDaniel, Esq.)<br><br>Counsel for the Creditors' Committee | Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY 10005<br>(Attn: Abhilash M. Raval, Esq., Tyson Lomazow, Esq., and Brian Kinney, Esq.)<br><br>Counsel for the DIP Administrative Agent |
| Morris, Nichols, Arsht & Tunnell LLP<br>Chase Manhattan Centre<br>18th Floor<br>1201 North Market Street,<br>Wilmington, DE 19899<br>(Attn: Robert J. Dehney, Esq.)<br><br>Counsel for the DIP Administrative Agent | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(Attn: Lori Fife, Esq.)<br><br>Counsel for the Prepetition Administrative Agent | Schnader Harrison Segal & Lewis LLP<br>824 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>(Attn. Richard A. Barkasy, Esq.)<br><br>Counsel to the Official Committee of Retirees |

Stahl Cowen Crowley Addis LLC
55 West Monroe Street, Ste 1200
Chicago, IL 60603
(Attn: Jon D. Cohen, Esq. and Trent P. Cornell, Esq.)

Counsel to the Official Committee of Retirees

### Credit Bidding

The Secured Lenders may make one or more credit bids for some or all of the collateral securing their claims to the full extent permitted by Bankruptcy Code section 363(k). The Secured Lenders shall be permitted to credit bid for all or a portion of their collateral at the Auction, subject to Bankruptcy Code section 363(k), and shall not be required to post a cash deposit. In order to be a Qualified Bid, a credit bid must provide for payment of the Expense Reimbursement Claim. In the event a Secured Lender submits a credit bid for all or a portion of their collateral pursuant to these Bidding Procedures at the Auction, the Debtors reserve their rights to not consult with such Secured Lender as to whether a Potential Bidder is a Qualified Bidder with respect to such Assets. Subject to Bankruptcy Code section 363(k), the Prepetition Secured Lenders may credit bid notwithstanding that a final order allowing the Prepetition Secured Lenders' claims against the Debtors may not be entered prior to the commencement of the Auction.

In the event of an Auction, the Stalking Horse Bidder will be permitted to credit bid the full amount of its Expense Reimbursement Claim.

### "As Is, Where Is"

Except as may be expressly provided in any definitive documentation, the sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates. By submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction (defined below), except as expressly stated in these Bidding Procedures or as set forth in the purchase agreement of any other Successful Bidder (defined below).

### Free of Any and All Interests

Except as otherwise provided in a purchase agreement for the Acquired Assets, all of Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free

6

and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against in accordance with Bankruptcy Code section 363.

## The Auction and Auction Procedures

If the Debtors receive more than one Qualified Bid, the Debtors shall conduct an auction (the "Auction") with respect to all or some of the Assets. The Auction shall be conducted at the offices of Debtors' counsel located at One Rodney Square, Wilmington, Delaware 19899 (the "Auction Site"). The Auction will commence on **October 21, 2009** (the "Auction Date") at a time to be announced. The Auction may occur at such other place and/or time as the Debtors will notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above.

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. During the Auction, bidding shall begin initially with the highest or otherwise best Qualified Bid and subsequently continue in minimum increments of at least $50,000. The Stalking Horse Bidder shall be entitled to bid at the Auction. Except as otherwise expressly set forth herein, the Debtors may conduct the Auction in the manner it determines will result in the highest or otherwise best offer(s) for the Assets.

Upon conclusion of the bidding, the Auction shall be closed and the Debtors shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed Sale, and (ii) identify the highest or otherwise best offer(s) for the Assets (each a "Successful Bid" and the entity or entities submitting such bid, the "Successful Bidder"). At the Sale Hearing, the Debtors may present any Successful Bids to the Bankruptcy Court for approval. The Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors for approval to the Bankruptcy Court. The Debtors acknowledge that the Stalking Horse Bid is a qualified and acceptable bid. Except as otherwise provided herein, the Debtors, in the exercise of their fiduciary duties, may adopt rules for bidding at the Auction that, in their business judgment, will better promote the goals of the bidding process, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

## Acceptance of Qualified Bids

The Debtors shall sell the Assets to any Successful Bidder only upon the approval of a Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Debtors' selection of any Successful Bidder

## Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of the Sale transaction at closing. Good Faith Deposits of all other Qualified Bidders shall be held in a non-interest-bearing escrow account until five (5) days after closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders,

together with the accrued interest thereon. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on **October 22, 2009 at 2:00 p.m.** (prevailing Eastern time). Following the approval of the Sale of substantially all or a portion of the Assets to any Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale within a reasonable time period following the Sale Hearing, the Debtors shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such bid without further order of the Bankruptcy Court. The Debtors, in the exercise of their business judgment, reserve their right to change the date of the Sale Hearing in order to achieve the maximum value for the Assets.

### Modifications

The Debtors may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors. At or before the Sale Hearing, the Debtors may impose such other terms and conditions as the Debtors may determine to be in the best interests of the Debtors, their respective estates and creditors, and other parties in interest.
8

678562-Chicago Server 1A - MSW