**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                        :
In re:                                                                  :   Chapter 11
                                                                        :
HAYES LEMMERZ INTERNATIONAL, INC., <u>et al.</u>,[1] :   Case No. 09-11655 (MFW)
                                                                        :
                            Debtors.                                    :
                                                                        :   Jointly Administered
                                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF JANE SULLIVAN OF FINANCIAL BALLOTING GROUP LLC
WITH RESPECT TO THE TABULATION OF VOTES ON THE FIRST AMENDED
JOINT PLAN OF REORGANIZATION OF HAYES LEMMERZ INTERNATIONAL,
INC. AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION**

Jane Sullivan, being duly sworn, deposes and says, under the penalty of perjury:

1.      I am the Executive Director of Financial Balloting Group LLC ("<u>FBG</u>"), located

at 757 Third Avenue, New York, New York 10017.

2.      FBG is the securities voting agent retained by Garden City Group, Inc.[2] and

approved by the Bankruptcy Court, to assist with the dissemination of certain notices and

---

[1] The following of HLI's U.S. subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Hayes (2578) and have obtained joint administration therewith: Hayes Lemmerz Finance LLC (7731), Hayes Lemmerz International Import, Inc. (1655), Hayes Lemmerz International - California, Inc. (2337), Hayes Lemmerz International - Commercial Highway, Inc. (7674), Hayes Lemmerz International - Georgia, Inc. (6122), Hayes Lemmerz International - Howell, Inc. (9246), Hayes Lemmerz International - Huntington, Inc. (0825), Hayes Lemmerz International - Kentucky, Inc. (8246), Hayes Lemmerz International - Laredo, Inc. (8656), Hayes Lemmerz International - New York, Inc. (9278), Hayes Lemmerz International - Sedalia, Inc. (7670), Hayes Lemmerz International - Technical Center, Inc. (7519), Hayes Lemmerz International - Wabash, Inc. (0301), HLI Brakes Holding Company, Inc. (2575), HLI Commercial Highway Holding Company, Inc. (2828), HLI Netherlands Holdings, Inc. (0015), HLI Operating Company, Inc. (7742), HLI Parent Company, Inc. (7832), HLI Powertrain Holding Company, Inc. (8269), HLI Realty, Inc. (1885), HLI Services Holding Company, Inc. (7840), HLI Suspension Holding Company, Inc. (0061), and HLI Wheels Holding Company, Inc. (7882) (collectively with Hayes, the "<u>U.S. Debtors</u>").  With the exception of Hayes Lemmerz Finance LLC - Luxembourg S.C.A. (Luxembourg: 0646; USA: 7731) (the "<u>Non-U.S. Debtor</u>"), none of the foreign affiliates or subsidiaries of HLI are Debtors in these chapter 11 cases.  The mailing address for each of the U.S. Debtors is 15300 Centennial Drive, Northville, Michigan 48168.

solicitation materials and the solicitation of votes to accept or reject the First Amended Joint Plan of Reorganization of Hayes Lemmerz International, Inc. and Its Affiliated Debtors and Debtors in Possession (the "Plan") from holders of the the €130 million of 8.25% senior unsecured notes due in 2015, dated May 30, 2007 issued by Hayes Lemmerz Finance LLC - Luxembourg S.C.A (the "Class 7 Noteholder Claims"), and to assist with the tabulation of votes in connection therewith.

3.      I am authorized to submit this certification on behalf of FBG.

4.      Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

5.      Capitalized terms used but not otherwise defined in this declaration have the meanings ascribed to them in the Revised Order Approving (I) the Disclosure Statement, (II) Cure Procedures for Executory Contracts or Unexpired Leases to be Assumed Pursuant to the Plan, (III) the Record Date, Voting Deadline, and Certain Other Procedures, (IV) the Form and Manner of Notice of the Confirmation Hearing and Procedures for Filing Objections to the Plan, and (V) Solicitation Procedures for Confirmation (the "Solicitation Procedures Order") (Docket No. 546).

6.      As more fully set forth in the affidavit of service filed with this Court (the "Affidavit of Service") (Docket No. 575), on September 4, 2009, FBG caused Solicitation Packages to be served on holders of Class 7 Noteholder Claims in accordance with the Solicitation Procedures Order.

---

[2] The Garden City Group, Inc. is the Debtors' court appointed voting and solicitation agent pursuant to that certain Order Under 28 U.S.C. § 156(c) and Local Rule 2002-1(f) Authorizing Employment and Retention of the Garden City Group, Inc. as Claims and Noticing Agent to the Debtors *Nunc Pro Tunc* to the Petition Date (Docket No. 60).

7.      As voting agent, FBG was designated to review, determine the validity of, and tabulate the ballots submitted to vote for the acceptance or rejection of the Plan by claimants entitled to vote as holders of the Class 7 Noteholder Claims.  I supervised the tabulation procedures performed by FBG's personnel.

8.      FBG's professional staff has considerable experience in tabulating the ballots of creditors and security holders with respect to plans of reorganization.

9.      FBG was instructed to tabulate the ballots submitted by holders of the Class 7 Noteholder Claims in accordance with the Solicitation Procedures Order.

10.     As specified in the Solicitation Procedures Order, a record date did not apply to Class 7 Noteholder Claims. Holders of Class 7 Noteholder Claims throughout the solicitation period were entitled to cast votes on the Plan, and the underlying Notes of each voting party (or actively abstaining party) were "blocked" from trading in accordance with the customary procedures of Euroclear and Clearstream. The submission of Beneficial Owner Ballots to the banks, brokers, and other entities holding Class 7 Noteholder Claims (the "Accountholders") by holders of Class 7 Noteholder Claims authorized the Accountholders to block such holder's Notes.[3]

11.     Ballots returned by mail, electronic mail, hand delivery, or overnight courier were received by personnel of FBG at the offices of FBG in New York City.  All original ballots received were date- and time-stamped upon receipt.  All ballots received were processed in

---

[3] Blocking was done in accordance with the four voting options, which were as follows: (1)  ACCEPTS (votes FOR) the Plan and consents to the releases specified in Article X of the Plan; (2) REJECTS (votes AGAINST) the Plan and consents to the releases specified in Article X of the Plan; (3) REJECTS (votes AGAINST) the Plan and elects NOT to consent to the releases specified in Article X of the Plan; or (4)  ABSTAINS (does not vote for or against the Plan) and consents to the releases specified in Article X of the Plan.

3

accordance with the procedures outlined in the Solicitation Procedures Order, except as outlined below.

12.    As specified in the Solicitation Procedures Order, for a ballot to be counted as valid, the ballot must have been properly completed and executed by the holder of a Class 7 Noteholder Claim, or such holder's authorized representative, and received by the deadline of 5:00 p.m. Eastern Time on October 5, 2009 (the "Voting Deadline").

13.    As specified in the Solicitation Procedures Order, for a Master Ballot first submitted by electronic mail to be counted as valid, the Master Ballot must have been properly completed and executed by the holder of a Class 7 Noteholder Claim, or such holder's authorized representative, submitted to FBG in Adobe portable document format by the Voting Deadline, and received in its original form within three (3) business days of the Voting Deadline (the "Original Master Ballot Deadline").  In addition, the underlying Class 7 Notes had to have been confirmed by Euroclear or Clearstream as having been blocked by the Voting Deadline.

14.    Ballots not validly executed in accordance with the Solicitation Procedures Order and/or not received by the Voting Deadline or, where applicable, the Original Master Ballot Deadline were not counted.  Issues with respect to the validity of ballots were resolved by FBG's supervisory personnel in accordance with the Solicitation Procedures Order.

15.    All validly executed ballots cast by holders of Class 7 Noteholder Claims and received by FBG on or before the Voting Deadline were tabulated as outlined in the Solicitation Procedures Order.

16.    Several positions that had been "blocked" by Euroclear prior to the Voting Deadline did not have a Master Ballot submitted in connection therewith by the Voting Deadline. Two corresponding Master Ballots were received after the Voting Deadline.  One corresponding

4

Master Ballot has not yet been received, but FBG has been advised that it will be provided on October 9, 2009.

17.     Notwithstanding the issues noted in paragraph 16 above, the Debtors requested that FBG include (a) the late Master Ballot in its tabulation and (b) the timely instructions with respect to "blocked" positions for which no Master Ballot had been received.

18.     I hereby certify that the results of the voting by holders of Class 7 Noteholder Claims are as set forth in **Exhibit A** hereto, which is a true and correct copy of the final tabulation of votes cast by timely and properly completed ballots received by FBG.

19.     FBG did not receive any ballots that were not included in the tabulation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Jane Sullivan

**TABULATION OF VOTES OF
CLASS 7 NOTEHOLDER CLAIMS**

|  | Amount Accepting[1] (% of Amount Voted) | Amount Rejecting[2] (% of Amount Voted) | Number Accepting (% of Amount Voted) | Number Rejecting (% of Amount Voted) |
|---|---|---|---|---|
| CLASS 7[3] (NOTEHOLDER CLAIMS) | €100,089,000 (99.64%) | €360,000 (0.36%) | 20 (95.24%) | 1 (4.76%) |

---

[1] Two positions in the aggregate amount of €3,075,000 were blocked with the instruction: ACCEPTS (votes FOR) the Plan and consents to the releases specified in Article X of the Plan. The corresponding Master Ballot has not yet been received by FBG. These instructions are included in the tabulation.

[2] The single rejecting vote selected the option: REJECTS (votes AGAINST) the Plan and elects NOT to consent to the releases specified in Article X of the Plan. The corresponding Master Ballot has not yet been received by FBG. This instruction is included in the tabulation.

[3] A single position was blocked with the instruction to actively abstain from voting in the amount of €13,500,000. The corresponding Master Ballot has not yet been received by FBG. Because it is not a vote on the Plan, this instruction is not included in the tabulation.