IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - -  x
                              :
In re:                        :    Chapter 11
                              :
HAYES LEMMERZ INTERNATIONAL,  :    Case No. 09-11655 (MFW)
INC., et al.,¹                :
                              :
            Debtors.          :    Jointly Administered
                              :
                              :    Related to Docket Nos. 586, 644,
- - - - - - - - - - - - - -  x     667, 668, 700, 703, 768, 782, 794
```

~~PROPOSED~~ **ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL
OF THE ASSETS OF HAYES LEMMERZ INTERNATIONAL – LAREDO, INC.
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS;
(B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND (C) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "Motion") of

Hayes Lemmerz International, Inc. ("Hayes") and certain of its

---

[1]  The following of Hayes' U.S. subsidiaries and affiliates (including the
last four digits of their respective taxpayer identification numbers) have
filed petitions for relief under chapter 11 concurrently with Hayes (2578)
and have obtained joint administration therewith: Hayes Lemmerz Finance
LLC (7731), Hayes Lemmerz International Import, Inc. (1655), Hayes Lemmerz
International – California, Inc. (2337), Hayes Lemmerz International –
Commercial Highway, Inc. (7674), Hayes Lemmerz International – Georgia,
Inc. (6122), Hayes Lemmerz International – Howell, Inc. (9246), Hayes
Lemmerz International – Huntington, Inc. (0825), Hayes Lemmerz
International – Kentucky, Inc. (8246), Hayes Lemmerz International –
Laredo, Inc. (8656), Hayes Lemmerz International – New York, Inc. (9278),
Hayes Lemmerz International – Sedalia, Inc. (7670), Hayes Lemmerz
International – Technical Center, Inc. (7519), Hayes Lemmerz International
– Wabash, Inc. (0301), HLI Brakes Holding Company, Inc. (2575), HLI
Commercial Highway Holding Company, Inc. (2828), HLI Netherlands Holdings,
Inc. (0015), HLI Operating Company, Inc. (7742), HLI Parent Company, Inc.
(7832), HLI Powertrain Holding Company, Inc. (8269), HLI Realty, Inc.
(1885), HLI Services Holding Company, Inc. (7840), HLI Suspension Holding
Company, Inc. (0061), and HLI Wheels Holding Company, Inc. (7882)
(collectively with Hayes, the "U.S. Debtors"). With the exception of
Hayes Lemmerz Finance LLC – Luxembourg S.C.A. (Luxembourg: 0646; USA:
7731) (the "Non-U.S. Debtor"), none of the foreign affiliates or
subsidiaries of Hayes are Debtors in these chapter 11 cases. The mailing
address for each of the U.S. Debtors is 15300 Centennial Drive,
Northville, Michigan 48168.

affiliates, debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (the "Sale Order") (A) approving the sale (the "Sale") of substantially all the tangible and intangible assets of Hayes Lemmerz International – Laredo, Inc. ("HLI – Laredo") and certain assets of HLI Operating Company, Inc. and Hayes Lemmerz International – Technical Center, Inc. (the "Affiliates") (collectively, the "Acquired Assets"), free and clear of all Claims[2] and Liens[3] (collectively, the "Interests"), except to the extent set forth in the Asset Purchase Agreement[4] (as defined herein), pursuant to section 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (B) authorizing and

---

[2]  "Claim," as defined in the Asset Purchase Agreement, shall mean a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, in each case, whether known or unknown, accrued, absolute or contingent, liquidated or unliquidated, choate or inchoate, matured or unmatured, or otherwise.

[3]  "Liens," as defined in the Asset Purchase Agreement, shall mean any Claim or any charge against or interest in property to secure payment of a debt or performance of an obligation including but not limited to any lien (statutory or otherwise), hypothecation, security interests, mortgages, pledges or liens for Taxes, in each case, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or un-known.

[4]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement.

approving the assumption and assignment of certain executory contracts and unexpired leases in connection therewith; and (C) granting certain related relief; and the Court having entered an order (the "Bidding Procedures Order") on September 22, 2009, (A) establishing bidding and auction procedures (the "Bidding Procedures") in connection with the Sale of the Acquired Assets of HLI – Laredo, free and clear of all Interests, (B) approving the proposed expense reimbursement claim for Harvey Holdings, LLC ("Harvey" or the "Stalking Horse Bidder"), (C) scheduling an auction (the "Auction") and setting a date and time for a sale hearing for the Sale of the Acquired Assets, (D) permitting credit bidding pursuant to Bankruptcy Code section 363(k), (E) establishing procedures for noticing the assumption and assignment of executory contracts and unexpired leases (the "Assignment Procedures"), (F) approving the form and manner of notice of all procedures, protections, schedules and agreements; and (G) granting certain related relief; and no Potential Bidders (as defined in the Bidding Procedures) having submitted an acceptable bid in accordance with the Bidding Procedures and prior to the deadline for becoming a Qualified Bidder (as defined in the Bidding Procedures);[5] and the Court having held a

---

[5] The Debtors determined that the highest and best offer for the Sale of the Assets was made by Harvey Holdings LLC and Harvey Industries, LLC (the "Purchaser") in the form of the Asset Purchase Agreement dated as of [•], 2009 by and between the Debtors and the Purchaser (the "Asset Purchase Agreement").

3

hearing on October 29, 2009 (the "Sale Hearing") to approve the Sale of the Acquired Assets pursuant to the terms of the Asset Purchase Agreement; and the Court having reviewed and considered (i) the Motion; (ii) the proposed Sale by the Debtors to the Purchaser pursuant to the Asset Purchase Agreement, a copy of which is attached hereto as Exhibit A; and (iii) the arguments of counsel made, and the evidence submitted, proffered or adduced, at the Sale Hearing; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other interested parties; and upon the record of the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, and 365[6] and Fed. R. Bankr. P. 2002, 6004, and 6006.

C.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have widely marketed the Acquired Assets and conducted the sale process in accordance with the Bidding Procedures Order, and the Bidding Procedures and Auction were duly noticed and conducted in a non-collusive, fair and good faith manner.    The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to make higher and better offers.

D.    Proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Assignment Procedures (including the objection deadline with respect to the cure amounts that the Debtors believe are necessary to assume such executory contracts and unexpired leases pursuant to Bankruptcy Code section 365 (the "Cure Amount")), the assumption and assignment of the Assumed Contracts and the Cure Amounts has been provided in accordance with Bankruptcy Code sections 102(1), 363 and 365 and Bankruptcy

---

[6]    All section references herein shall be to title 11 of the United States Code, unless otherwise indicated.

Rules 2002, 6004 and 6006 and in compliance with the Bidding
Procedures Order; such notice was good and sufficient, and
appropriate under the particular circumstances; and no other or
further notice of the Motion, the Auction, the Sale Hearing, the
Sale, the assumption and assignment of the Assumed Contracts or
the Cure Amounts is or shall be required.

      E.    The Debtors have properly complied with the
Bidding Procedures and the Assignment Procedures set forth
therein.

      F.    The Debtors (i) have full corporate power and
authority to execute the Asset Purchase Agreement and all other
documents contemplated thereby, and the Sale of the Acquired
Assets by the Debtors has been duly and validly authorized by
all necessary corporate action of the Debtors, and (ii) have
full corporate power and authority necessary to consummate the
transactions contemplated by the Asset Purchase Agreement (the
"Transactions"). No consents or approvals, other than those
expressly provided in the Asset Purchase Agreement, are required
for the Debtors to close the Sale.

      G.    The Sale of the Acquired Assets pursuant to the
Asset Purchase Agreement and as may be authorized at the Sale
Hearing shall not close prior to consummation of the Debtors'
plan of reorganization (the "Plan") (e.g., occurrence of the
effective date of the Plan) without the prior consent of the

6

Creditors' Committee; provided however, the Debtors may seek the authority of the Court, after further notice of not less than ten (10) days and a hearing, to close the Sale prior to consummation of the Plan.

H.    The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale, including, but not limited to: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going concern basis and avoid decline and devaluation of the Acquired Assets; and (iii) any other presently available restructuring alternative would not have likely yielded as favorable an economic result.

I.    The Asset Purchase Agreement and the Transactions were negotiated and have been and are entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

J.    The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded

under Bankruptcy Code section 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.

K. The total consideration provided by the Purchaser for the Acquired Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

L. The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Transactions if the Sale of the Acquired Assets to the Purchaser was not free and clear of all Interests pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any such Interests. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale. Therefore, the Sale contemplated by the Asset Purchase Agreement is in the best interests of the

Debtors, their estates and creditors, and all other parties in interest.

M. The Debtors may sell the Acquired Assets free and clear of all Interests because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Interests who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).

N. The Debtors have demonstrated that they have sound business justifications to assume and assign the Assumed Contracts to the Purchaser in connection with the consummation of the Sale. The assumption and assignment of the Assumed Contracts is in the best interests of the Debtors, their estates and their creditors. The Assumed Contracts being assigned to the Purchaser are an integral part of the Acquired Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Assumed Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination. In accordance with the Assignment Procedures, the Court finds that the Cure Amounts, as are set forth in the

attached Exhibit B, are the amounts required to be paid by the Debtors to the parties to the applicable Assumed Contracts (the "Contract Counterparties") pursuant to Bankruptcy Code section 365(b) and are hereby determined to be the entire cure obligation due and owing under the Assumed Contracts pursuant to Bankruptcy Code section 365.[7] Upon payment of the Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed Contracts.

O. The Purchaser has demonstrated adequate assurance of future performance under the Assumed Contracts within the meaning of Bankruptcy Code section 365. Upon the assignment and Sale to the Purchaser, the Assumed Contracts shall be deemed valid, binding and in full force and effect in accordance with their terms, subject to the provisions of this Order.

P. The Sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale, and the Debtors and the Purchaser intend to close the Sale as soon as practicable following consummation of the Plan. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d).

---

[7] Pursuant to the Asset Purchase Agreement, Purchaser has until entry of the Sale Order to modify the Assumed Contract schedule to the Asset Purchase Agreement. The Exhibit B hereto is the amount that must be paid to the Contract Counterparties for contracts that become Assumed Contracts.

Q.     The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

R.     Immediately prior to the Closing Date, Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Purchaser and the Debtors.

S.     Purchaser is not a successor to HLI-Laredo or its affiliates upon consummation of the Sale and shall not incur any successor liability claims as a consequence of the Sale. Pursuant to the Asset Purchase Agreement, Purchaser is not purchasing all of HLI - Laredo's or the Affiliates' assets in that Purchaser is not purchasing any of the Excluded Assets (as defined in the Asset Purchase Agreement), and Purchaser is not holding itself out to the public as a continuation of HLI - Laredo. The Sale does not amount to a consolidation, merger or de facto merger of Purchaser and HLI - Laredo and/or HLI - Laredo's estates. Further, there is no substantial continuity between Purchaser and HLI - Laredo, there is no continuity of enterprise between the Debtors and Purchaser, Purchaser is not a mere continuation of HLI - Laredo or HLI - Laredo's estates, and

Purchaser does not constitute a successor to HLI - Laredo or HLI
- Laredo's estate.

T.    The transfer of the Acquired Assets to Purchaser
will be a legal, valid, and effective transfer of the Acquired
Assets, and will vest Purchaser with all right, title, and
interest of the Debtors to the Acquired Assets free and clear of
all Interests, except as expressly set forth in the Asset
Purchase Agreement.

U.    The terms of the Asset Purchase Agreement,
including any amendments, supplements, and modifications
thereto, are fair and reasonable in all respects and the terms
of the Order shall not modify the terms of the Asset Purchase
Agreement.

V.    The Sale does not constitute a *sub rosa* chapter
11 plan for which approval has been sought without the
protections that a disclosure statement would afford.   The Sale
neither impermissibly restructures the rights of the Debtors'
creditors, nor impermissibly dictates a liquidating plan of
reorganization for the Debtors.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED and APPROVED as set forth
below.

2.    All objections to the Motion or the relief
requested therein that have not been withdrawn, waived or

12

settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

### Approval of the Sale of the Acquired Assets

3. The Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein, is hereby approved.

4. Pursuant to Bankruptcy Code section 105 and 363(b), the Sale of the Acquired Assets to the Purchaser free and clear of all Interests (except those, if any, specifically permitted by the Asset Purchase Agreement), and the Transactions contemplated thereby, are hereby approved and authorized in all respects.

5. Except for the Assumed Liabilities, the Purchaser or any of its affiliates shall not be liable for any claims against HLI - Laredo or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to HLI - Laredo or any obligations of HLI - Laredo or Affiliates arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out

of, in connection with, or in any way relating to the Acquired
Assets prior to the Closing Date.[8]

6. The consideration provided by the Purchaser for
the Acquired Assets under the Asset Purchase Agreement is fair
and reasonable under the circumstances and shall be deemed to
constitute reasonably equivalent value and fair consideration
under the Bankruptcy Code and under the laws of the United
States, any state, territory, possession, or the District of
Columbia.

7. The Transactions contemplated by the Asset
Purchase Agreement are undertaken by the Purchaser in good
faith, as that term is used in Bankruptcy Code section 363(m),
and accordingly, the reversal or modification on appeal of the
authorization provided herein by this Order to consummate the
Sale shall not affect the validity of the Sale to the Purchaser.
The Purchaser is a purchaser in good faith of the Acquired
Assets, and is entitled to all of the protections afforded by
Bankruptcy Code section 363(m).

## Sale and Transfer of the Acquired Assets

8. Pursuant to Bankruptcy Code section 363(b), the
Debtors are hereby authorized and directed to sell the Acquired

---

[8] The Sale of the Acquired Assets to Purchaser includes HLI-Laredo's
outstanding capital stock in Industrias Fronterizas HLI, S.A. de C.V.
("Industrias" or "HLI - Mexico"). Nothing in this Sale Order is intending
to allocate any obligation of Industrias to any other party.

14

Assets to Purchaser and consummate the Sale in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement. The Debtors are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including without limitation the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to Purchaser or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the Debtors obligations as contemplated by the Asset Purchase Agreement.

9.   Upon the Closing: (i) the Debtors shall be deemed for all purposes to have consummated the sale, transfer and assignment of the Acquired Assets to the Purchaser free and clear of all Interests, pursuant to Bankruptcy Code section 363 and all debts, liabilities and obligations, whether accrued or

15

fixed, direct or indirect, liquidated or unliquidated, absolute
or contingent, matured or unmatured, determined or
undeterminable, known or unknown, including those arising under
any law or action and those arising under any contract or
otherwise, including any tax liability (other than the Assumed
Liabilities and except as otherwise expressly provided in the
Asset Purchase Agreement) (collectively, the "Liabilities") with
such Interests and Liabilities to attach to the sale proceeds
with the same validity, extent and priority as existed
immediately prior to the consummation of the Sale at Closing,
subject to any rights, claims and defenses of the Debtors and
other parties in interest; and (ii) except as otherwise
expressly provided in the Asset Purchase Agreement, all such
Interests and Liabilities (other than Assumed Liabilities) shall
be and hereby are released, terminated and discharged as to the
Purchaser and Acquired Assets.

10. On the Closing Date, this Sale Order will be
construed and constitute for any and all purposes a full and
complete general assignment, conveyance and transfer of the
Acquired Assets or a bill of sale transferring good and
marketable title in such Acquired Assets to the Purchaser. On
the Closing Date, this Order also shall be construed and
constitute for any and all purposes a complete and general

16

assignment of all right, title and interest of the Debtors and each bankruptcy estate to the Purchaser in Assumed Contracts.

11. All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

12. Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in HLI - Laredo or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, HLI - Laredo, the Acquired Assets, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successor or assign, its property, or the Acquired Assets, such persons' or entities' Interest.

13. On the Closing Date of the Sale, each of HLI - Laredo's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to

17

release its Interests in the Acquired Assets, if any, as such Interests may have been recorded or otherwise exist.

14. Except as otherwise expressly provided in the Asset Purchase Agreement, upon Closing, Purchaser shall not be liable for any claims against, and Liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the generality of the foregoing, and except as specifically provided in the Asset Purchase Agreement for the U.S. Continuing Employees and Mexican Continuing Employees, (i) Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (ii) Purchaser shall have no liability or obligation in respect of any collective bargaining agreement, employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (iii) Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (iv) all parties to any such employee

benefit, agreement, plan or program are enjoined from asserting against the Purchaser any claims arising from or relating to such employee benefit, agreement, plan or program.

15. Subject to the terms and conditions of this Order, the transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever (except for Taxes that will be prorated as of the Closing Date as set forth in Section 2.6(a) of the Asset Purchase Agreement).

**Assumption and Assignment of Assumed and Assigned Contracts**

16. Pursuant to Bankruptcy Code section 365, and subject to and conditioned upon the closing of the Sale, HLI – Laredo's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Assumed Contracts is hereby approved, and the requirements of Bankruptcy Code section 365(b)(1) with respect thereto are hereby deemed satisfied.

17. The Debtors are hereby authorized and directed in accordance with Bankruptcy Code sections 105(a), 363 and 365 to (i) assume and assign to the Purchaser, effective upon the Closing Date of the Sale, the Assumed Contracts free and clear

19

of all Interests of any kind or nature whatsoever (except for the Assumed Liabilities as set forth in Section 2.3 of the Asset Purchase Agreement), (ii) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser, and (iii) pay the Cure Costs (as set forth in the Asset Purchase Agreement) at Closing, or as soon thereafter as is practicable.

18.   The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in Bankruptcy Code section 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer, pursuant to Bankruptcy Code section 365(k). The Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser, except to the extent provided in the Asset Purchase Agreement.

19.   On October 5, 2009, the Debtors properly filed and served a notice of Cure Amounts (the "Original Cure Notice") (Docket No. 668) which had an Exhibit A attached thereto (the "Original Cure Schedule"). Other than with respect to Robert Bosch LLC, addressed in paragraph 22 hereof, there were no objections to the Original Cure Notice. The Assumed Contracts

20

set forth on Exhibit B attached hereto (the "Exhibit B Assumed Contracts List") were each on the Original Cure Schedule with no changes having been made with respect to the Cure Amounts listed thereon. Consequently, the provisions of this Sale Order with respect to the Exhibit B Assumed Contracts List are final and the assumption and assignment to the Purchaser in accordance with this Sale Order will be effective upon the Closing Date of the Sale.

20. On October 24, 2009, the Debtors filed and served a supplemental notice of the Debtors' list of Assumed Contracts (the "Supplemental Cure Notice") (Docket No. 782) which contained additional proposed Assumed Contracts, had revised cure amounts for certain contracts that were on the Original Cure Schedule, and removed certain executory contracts as no longer being included as Assumed Contracts. The Supplemental Cure Notice was served upon the Contract Counterparties whose status had changed with respect to the Original Cure Schedule. Attached as Exhibit C hereto is the list of executory contracts and Cure Amounts that were contained in the Supplemental Cure Notice and which are proposed Assumed Contracts (the "Supplemental Assumed Contracts List"). If the Contract Counterparties, as are set forth on Exhibit C attached hereto, do not file an objection within twenty (20) days of service of the Supplemental Cure Notice, and the Debtors file a certificate

21

of no objection, the respective executory contracts of the
Contract Counterparties set forth on Exhibit C will receive the
treatment provided for under the Supplemental Cure Notice and
Asset Purchase Agreement, and shall be Assumed Contracts bound
to the terms of this Sale Order without further notice or
hearing. If a Contract Counterparty on the Supplemental Assumed
Contracts List files an objection within twenty (20) days of
service of the Supplemental Cure Notice, a hearing on the
objection(s) will be held before this Court on November 19,
2009, at 9:30 a.m. (prevailing Eastern time), and no assumption
and assignment will be effectuated unless (i) mutually agreed
upon by the Contract Counterparty, Debtors and Purchaser, or
(ii) upon further order of this Court.

21. To the extent that an objection by a Contract
Counterparty subject to the Supplemental Cure Notice is not
resolved prior to the Closing Date, the Debtors, in consultation
with the Purchaser, may elect to (i) not assume such Assumed
Contract, (ii) postpone the assumption of such Assumed Contract
until the resolution of such objection, or (iii) if the dispute
relates to the amount of the Cure Amount, at the time of the
assumption, Debtors may pay to the Contract Counterparty any
undisputed portion of the proposed Cure Amount and place any
disputed portion into a segregated interest-bearing account such
that, upon resolution by the Court of the Cure Amount dispute,

or other agreement between the Debtors and the Contract
Counterparty, the Contract Counterparty will be entitled to
payment from the segregated account of any disputed portion and
interest earned thereon to which the Court finds, or the Debtors
and the Contract Counterparty agree, it is entitled.

22. Notwithstanding anything to the contrary in this
Order, the assumption and assignment of the Debtors' contracts
with Robert Bosch LLC ("Bosch") shall remain subject to either
(i) an agreement with Bosch, the Purchaser and the Debtors that
resolves the adequate assurance objection raised by Bosch (the
"Bosch Objection"), or (ii) a determination by the Court
overruling the Bosch Objection. The hearing on the Bosch
Objection shall be continued to November 19, 2009 at 9:30 a.m.
(prevailing Eastern time). No provisions of this Sale Order,
including the findings by the court of adequate assurance of
future performance, shall be impacted or altered in anyway
regardless of the Court's findings or rulings with respect to
the Bosch Objection.

23. As of the Closing Date, subject to the provisions
of this Order, the Purchaser shall succeed to the entirety of
the Debtors' rights and obligations under the Assumed Contracts
first arising and attributable to the time period occurring on
or after the Closing Date.

23

24. Upon entry of this Sale Order, (i) all defaults (monetary and non-monetary) under the Assumed Contracts through the Closing Date shall be deemed cured through the payment of the Cure Amounts, (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before the Closing Date with respect to the Assumed Contracts, (iii) each Contract Counterparty to an Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting a claim against the Debtors or the Purchaser, or the property of either of them, that any additional amounts are due or defaults exist under the Assumed Contracts as of the Closing Date. Notwithstanding any language in this paragraph to the contrary, the Purchaser and HLI – Laredo shall be responsible for all taxes and tax payments to the extent provided in the Asset Purchase Agreement.

## Additional Provisions

25. This Order (i) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Debtors or the Acquired Assets prior to the Closing Date have been unconditionally released, discharged and terminated (except for the Assumed Liabilities and the Taxes that will be prorated as of the Closing Date as set forth in Section 2.6(a) of the Asset

Purchase Agreement), and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

26.  Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Asset Purchase Agreement. The Purchaser and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the Transactions contemplated in this paragraph. All Interests of record as of the date of this Order shall be forthwith removed and stricken as against the Acquired Assets. All entities

described in this paragraph are authorized and specifically directed to strike all such Interests against the Acquired Assets from their records, official and otherwise.

27.  Except only to the extent otherwise agreed to by the Debtors and Purchaser in the Asset Purchase Agreement, no governmental unit or regulatory authority may revoke or suspend any right, license, trademark or other permission relating to the use of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

28.  The Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors, to ensure that the Transactions contemplated in the Asset Purchase Agreement are consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement.

29.  The Purchaser shall have no liability or responsibility for any liability or other obligation of HLI - Laredo arising under or related to the Acquired Assets other than for the Assumed Liabilities.

30.  The terms and provisions of this Order and the Asset Purchase Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their

respective affiliates, successors and assigns, their estates, and their creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected parties including, but not limited to, all persons asserting Interests in the Acquired Assets to be sold to the Purchaser and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Asset Purchase Agreement shall not be subject to rejection or avoidance actions under any circumstances.

31. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

32. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

33. Purchaser is directed to abide by the Debtors' existing privacy policies with respect to personally

27

identifiable information as that term is used in Bankruptcy Code
section 363(b)(1), and this Court shall retain jurisdiction over
Purchaser's further compliance with the requirements of section
363(b)(1).

34. Any amounts that become payable by the Debtors to
the Purchaser pursuant to the Asset Purchase Agreement or any of
the documents delivered by the Debtors pursuant to or in
connection therewith or any of the other Transactions
contemplated thereby shall: (i) constitute administrative
expenses of the Debtors' estates within the meaning of
Bankruptcy Code section 503(b); and (ii) be paid by the Debtors
in the time and manner as provided in the Asset Purchase
Agreement without further order of this Court being necessary.

35. Nothing contained in any order entered in these
chapter 11 cases subsequent to entry of this Order, nor in any
chapter 11 plans confirmed in these chapter 11 cases, shall
conflict with or derogate from the provisions of the Asset
Purchase Agreement or the terms of this Order.

36. Nothing in this Order shall alter or amend the
Asset Purchase Agreement and the obligations of the Debtors and
Purchaser thereunder.

37. The provisions of this Order are nonseverable and
mutually dependent.

28

38. The Sale shall not be subject to any bulk sale law or any similar law of any state or other jurisdiction.

39. The Debtors and each other person having duties or responsibilities under the Asset Purchase Agreement or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Order and the Transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Order and the Transactions contemplated thereby and hereby.

40. This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof. Any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

41. This Court shall retain jurisdiction to interpret, implement and enforce the terms and provisions of this Order and the terms of the Asset Purchase Agreement, any amendments thereto and any waivers and consents thereunder, and resolve any disputes arising under or related to the Asset Purchase Agreement (except as otherwise provided therein), the Sale or the Transactions.

Dated:    Wilmington, DE
                 , 2009

Honorable Mary F. Walrath
UNITED STATES BANKRUPTCY JUDGE