IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - x
                                :  Chapter 11
In re:                          :  Case No. 09-11655 (MFW)
                                :  Jointly Administered
HAYES LEMMERZ INTERNATIONAL,    :
INC., et al.,[1]                :  Related Docket Nos. 296, 313, 496, 539,
                                :  546, 596, 583, 652, 654, 669, 670, 671,
                                :  673, 674, 679, 687, 688, 702, 718, 722,
            Debtors.            :  742, 744, 779, 780, 791, 809, 810, 811,
                                :  813, 814, 823, 826, and 829
- - - - - - - - - - - - - - - - x

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
CONFIRMING THE MODIFIED FIRST AMENDED JOINT PLAN OF
REORGANIZATION OF HAYES LEMMERZ INTERNATIONAL, INC.
AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION**

---

[1]     The following of Hayes' U.S. subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Hayes (2578) and have obtained joint administration therewith: Hayes Lemmerz Finance LLC (7731), Hayes Lemmerz International Import, Inc. (1655), Hayes Lemmerz International - California, Inc. (2337), Hayes Lemmerz International - Commercial Highway, Inc. (7674), Hayes Lemmerz International - Georgia, Inc. (6122), Hayes Lemmerz International - Howell, Inc. (9246), Hayes Lemmerz International - Huntington, Inc. (0825), Hayes Lemmerz International - Kentucky, Inc. (8246), Hayes Lemmerz International - Laredo, Inc. (8656), Hayes Lemmerz International - New York, Inc. (9278), Hayes Lemmerz International - Sedalia, Inc. (7670), Hayes Lemmerz International - Technical Center, Inc. (7519), Hayes Lemmerz International - Wabash, Inc. (0301), HLI Brakes Holding Company, Inc. (2575), HLI Commercial Highway Holding Company, Inc. (2828), HLI Netherlands Holdings, Inc. (0015), HLI Operating Company, Inc. (7742), HLI Parent Company, Inc. (7832), HLI Powertrain Holding Company, Inc. (8269), HLI Realty, Inc. (1885), HLI Services Holding Company, Inc. (7840), HLI Suspension Holding Company, Inc. (0061), and HLI Wheels Holding Company, Inc. (7882) (collectively with Hayes, the "U.S. Debtors"). With the exception of Hayes Lemmerz Finance LLC - Luxembourg S.C.A. (Luxembourg: 0646; USA: 7731) (the "Non-U.S. Debtor"), none of the foreign affiliates or subsidiaries of Hayes are Debtors in these chapter 11 cases. The mailing address for each of the U.S. Debtors is 15300 Centennial Drive, Northville, Michigan 48168.

WHEREAS, on September 2, 2009, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors")[2] filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") the Disclosure Statement With Respect to First Amended Joint Plan of Reorganization of Hayes Lemmerz International, Inc. and its Affiliated Debtors and Debtors-in-Possession (the "Disclosure Statement") (Docket No. 539). The Debtors' First Amended Joint Plan of Reorganization of Hayes Lemmerz International, Inc. and its Affiliated Debtors and Debtors-in-Possession (the "Proposed Plan") is attached as Appendix A to the Disclosure Statement; and

WHEREAS, on September 2, 2009, the Bankruptcy Court entered the Revised Order Approving (I) The Disclosure Statement, (II) Cure Procedures For Executory Contracts Or Unexpired Leases To Be Assumed Pursuant To The Plan, (III) The Record Date, Voting Deadline, And Certain Other Procedures, (IV) The Form And Manner Of Notice Of The Confirmation Hearing And Procedures For Filing Objections To The Plan, And (V) Solicitation Procedures For Confirmation (Docket No. 546) (the "Solicitation Procedures Order"); and

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan or the Solicitation Procedures Order (each as defined herein), as applicable.

2

WHEREAS, solicitation packages containing different notices and other documents based on a claimholder or interestholder's relationship to the Debtors and voting status, including:  the "Notice of (1) Approval of Disclosure Statement; (2) Hearing on Confirmation of Plan; (3) Deadline and Procedures for Filing Objections to Confirmation of Plan; (4) Record Date; and (5) Voting Deadline for Receipt of Ballots" (the "Confirmation Hearing Notice"), certain notices of unimpaired or non-voting status, the Disclosure Statement, the Plan, the Solicitation Procedures Order, the Official Committee of Unsecured Creditors' Solicitation Letter (the "Creditors' Committee Letter"), the appropriate Ballots and/or, notice of assumption or rejection with respect to executory contracts or unexpired leases (the "Solicitation Packages") were transmitted to creditors, interestholders, and parties-in-interest in accordance with the Solicitation Procedures Order, as set forth in the Certificate of Service signed by Jeffrey S. Stein, Vice President with the Garden City Group and filed with the Bankruptcy Court on September 8, 2009 (Docket No. 569) (the "Certificate of Service"); and

WHEREAS, the Confirmation Hearing Notice was published on September 10, 2009 in The Wall Street Journal, the Akron Beacon Journal, the Sedalia Democrat, and the Detroit News/Free Press as set forth in the affidavit of publication sworn by

3

Kathryn A. Pamenter, Senior Bankruptcy Consultant with the Garden City Group, filed with the Bankruptcy Court on October 7, 2009, (Docket No. 679) (together, the "Affidavit of Publication"); and

WHEREAS, on September 26, 2009, the Debtors filed with the Court certain Proposed Plan exhibits, including proposed amendments to previously filed Proposed Plan exhibits (Docket No. 654) (the "First Plan Supplement").

WHEREAS, on October 29, 2009, the Debtors filed with the Court certain additional Proposed Plan exhibits, including modifications to previously filed Proposed Plan exhibits (Docket No. 811) (the "Second Plan Supplement").

WHEREAS, on November 2, 2009, the Debtors filed with the Court certain further modifications to the previously filed Proposed Plan exhibits (Docket No. 823) (the "Third Plan Supplement" and collectively with the First Plan Supplement and Second Plan Supplement, and as the same may be amended or modified, the "Plan Supplements").

WHEREAS, on October 8, 2009, the Garden City Group Inc., the solicitation and tabulation agent appointed by the Debtors in the Chapter 11 cases, filed the Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation Of Votes on and Results of Voting with Respect to the First Amended Joint Plan of Reorganization

4

of Hayes Lemmerz International, Inc. and its Affiliated Debtors and Debtors-In-Possession (Docket No. 688) (the "Initial GCG Declaration") certifying the results of the ballot tabulation for Class 6 Prepetition Secured Obligations, the Class 8 PBGC Termination Liability Claim, and Class 9 Other Unsecured Claims voting to accept or reject the Proposed Plan; and

WHEREAS, on October 23, 2009, the Garden City Group Inc., the solicitation and tabulation agent appointed by the Debtors in the Chapter 11 cases, filed the Amended Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation Of Votes on and Results of Voting with Respect to the First Amended Joint Plan of Reorganization of Hayes Lemmerz International, Inc. and its Affiliated Debtors and Debtors-In-Possession (Docket No. 780) (the "GCG Declaration") to include the voting results for the Class 8 (PBGC Termination Liability Claim) and those ballots in Class 6 (Prepetition Secured Obligations) that were filed after the Voting Deadline or sent to GCG in facsimile form; and

WHEREAS, on October 8, 2009, the Debtors filed the Declaration of Jane Sullivan of Financial Balloting Group LLC With Respect To The Tabulation Of Votes On The First Amended Joint Plan Of Reorganization Of Hayes Lemmerz International, Inc. And Its Affiliated Debtors And Debtors-In-Possession Filed by Hayes Lemmerz International, Inc. (Docket No. 688) (the "FBG

Declaration" and together with the GCG Declaration, the "Voting Declarations") with respect to the tabulation of votes in Class 7 Noteholder Claims; and

WHEREAS, objections to confirmation of the Proposed Plan were filed on or prior to the deadline established for filing objections to confirmation of the Proposed Plan (Docket Nos. 652, 669, 670, 671, 673, 674, and 718) (the "Plan Objections"); and

WHEREAS, on October 14, 2009, the DIP Agent filed the Statement Of Deutsche Bank AG, New York Branch, As DIP Administrative Agent, (I) In Support Of Confirmation Of Debtors First Amended Joint Plan Of Reorganization, And (II) In Response To Objection Of Mercator CLO III Limited (Docket No. 722) (the "DIP Agent Statement") and on October 23, 2009, filed the Supplemental Statement Of Deutsche Bank AG, New York Branch, As DIP Administrative Agent, (I) In Support Of Confirmation Of Debtors' First Amended Joint Plan Of Reorganization, And (II) In Response To Objection Of Mercator CLO III Limited (Docket No. 779) (the "DIP Agent Supplemental Statement," and together with the DIP Agent Statement, the "DIP Agent Statements"); and

WHEREAS, on October 19, 2009, the Debtors filed the Debtors' Memorandum Of Law (I) In Support Of Confirmation Of The First Amended Joint Plan Of Reorganization Of Hayes Lemmerz International, Inc. And Its Affiliated Debtors And Debtors-In-

6

Possession And (II) In Response To Objections Thereto (Docket No. 742) (the "Confirmation Brief") wherein the Debtors set forth the legal basis for confirmation of the Proposed Plan and responded to certain of the Plan Objections; and

WHEREAS, on October 20, 2009, the Creditors' Committee filed the Official Committee of Unsecured Creditors' Statement In Support Of Confirmation Of First Amended Joint Plan Of Reorganization Of Hayes Lemmerz International, Inc. And Its Affiliated Debtors And Debtors-in-Possession (Docket No. 744) (the "Committee Statement," and together with the DIP Agent Statements, the "Statements"); and

WHEREAS, on October 29, 2009, the Debtors filed the declaration of Kevin Carmody and Eric Mendelsohn in support of confirmation of the Proposed Plan (Docket Nos. 809 and 810, respectively) (the "Confirmation Declarations"); and

WHEREAS, on October 29, 2009, the Debtors filed the proposed form of this Order along with contemplated immaterial modifications to the Proposed Plan (Docket No. 814); and

WHEREAS, on November 2, 2009, the Debtors filed a revised proposed form of this Order along with further contemplated immaterial modifications to the Proposed Plan (Docket No. 826);

WHEREAS, all of the Plan Objections relating to disputed cure amounts under Bankruptcy Code section 365 and

rejection of executory contracts were either resolved by agreements among the parties as set forth in this Confirmation Order or on the record at the Confirmation Hearing, or continued to a later hearing date; and

WHEREAS, the Bankruptcy Court held a hearing commencing on November 3, 2009 at 10:00 a.m. (prevailing Eastern Time) (the "Confirmation Hearing") to consider confirmation of the Proposed Plan, including those certain proposed immaterial modifications with respect thereto filed with Court prior to or discussed on the record at the Confirmation Hearing (the "Plan Modifications"); and

WHEREAS, after the Conclusion of the Confirmation Hearing, the Debtors' counsel filed a Certificate of Counsel attaching the proposed final form of this Order, incorporating final revisions to the Order discussed on the record at the Confirmation Hearing, and including as an exhibit the Modified First Amended Joint Plan of Reorganization of Hayes Lemmerz International, Inc. and its Affiliated Debtors and Debtors-in-Possession, dated November 3, 2009 (the "Plan"), which includes and incorporates the Plan Modifications; and

NOW THEREFORE, based upon the Bankruptcy Court's review and consideration of (i) the Plan, the Disclosure Statement, the Solicitation Procedures Order, the Voting Declarations, the Certificate of Service, the Affidavit of

8

Publication, the Plan Supplements, the Statements, the Confirmation Brief, the Confirmation Declarations, the Objections, the proposed forms of this Order, the Plan Modifications and the other pleadings and other documents before the Bankruptcy Court in connection with the confirmation of the Plan, (ii) the record of the Confirmation Hearing (including the statements of counsel in support of confirmation at the Confirmation Hearing and all testimony presented and evidence admitted at the Confirmation Hearing), and (iii) the entire record of these Bankruptcy Cases; and the Bankruptcy Court finding that (y) notice of the Voting Deadline, Objection Deadline, and Confirmation Hearing and the opportunity of any party in interest to object to confirmation were adequate and appropriate, in accordance with Bankruptcy Rule 2002(b) and the Solicitation Procedures Order, as to all parties to be affected by the Plan and the transactions contemplated thereby, and (z) the legal and factual bases presented at the Confirmation Hearing and as set forth in this Confirmation Order establish just cause for the relief granted herein; and after due deliberation thereon, and good cause appearing therefor;

9

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

A.    This Bankruptcy Court has jurisdiction over these Bankruptcy Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L) and this Bankruptcy Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code, to determine whether the Plan should be confirmed and to enter and enforce a final order with respect hereto.  Venue of these Bankruptcy Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Judicial notice is hereby taken of the docket of the Bankruptcy Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and transcripts of, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of the Bankruptcy Cases.

C.    The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).  All acts to be enjoined and

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

10

identification of entities subject to such injunction under the Plan are set forth in specific and conspicuous bold text in the Plan and Disclosure Statement, thereby satisfying Bankruptcy Rule 3016(c).

D. The Debtors have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Such notice was good and sufficient under the particular circumstances and no other or further notice is or shall be required.

E. The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan was transmitted to all creditors entitled to vote on the Plan, and sufficient time was prescribed for such creditors to vote to accept or reject the Plan, thereby satisfying the requirements of Bankruptcy Rule 3018.

F. The Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

G. The Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), thus satisfying the requirements of section 1129(a)(1) of the Bankruptcy Code.

11

H.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this Bankruptcy Court with respect to the solicitation of acceptances or rejections of the Plan, including, without limitation, Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017, 3018 and 3019, thus satisfying the requirements of Bankruptcy Code section 1129(a)(2).

I.    The Plan, and the compromises and settlements embodied therein, have been proposed in good faith and not by any means forbidden by law, thus satisfying the requirements of Bankruptcy Code section 1129(a)(3).

J.    All payments that have been made or are to be made by the Debtors or the Reorganized Debtors under the Plan or by any person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Cases, or in connection with the Plan and incident to the Bankruptcy Cases, has been approved by, or will be subject to the approval of, the Bankruptcy Court as reasonable, thus satisfying the requirements of Bankruptcy Code section 1129(a)(4).

K.    The Debtors have made available all necessary information with respect to the identity of the Reorganized Debtors' officers, directors, managers and stockholders, and the

12

appointment to, or continuance in, such office of such individuals is consistent with the interests of holders of Claims and Interests and with public policy, thus satisfying the requirements of Bankruptcy Code section 1129(a)(5). The initial Directors and Officers of Reorganized Hayes were disclosed in Exhibit G to the Plan which was filed on October 29, 2009 as part of the Second Plan Supplement (Docket No 811).

L.    The Debtors' businesses do not involve the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after confirmation. Thus, Bankruptcy Code section 1129(a)(6) is inapplicable to these Bankruptcy Cases.

M.    Bankruptcy Code section 1129(a)(7) requires that each holder of a Claim or Interest in an impaired class accept the Plan, or receive or retain under the Plan property having a value, as of the Plan Effective Date, that is not less than the amount that such holder would receive on account of such Claim or Interest if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. Classes 6, 7, 8 and 9 are impaired under the Plan. The Disclosure Statement and the other evidence proffered or adduced at the Confirmation Hearing in support of confirmation of the Plan (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged in any of the Objections, and/or (iii) establish that each holder

13

of an impaired Claim in Classes 6, 7, 8 and 9 has either accepted the Plan in good faith, or will receive or retain under the Plan property having a value, as of the Plan Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date, thus satisfying the requirements of Bankruptcy Code section 1129(a)(7).

N.    Bankruptcy Code section 1129(a)(8) requires that for each Class of Claims or Interests under the Plan, such Class has either accepted the Plan or is not impaired under the Plan. Unimpaired Classes 1, 2, 3, 4 and 5 are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to Bankruptcy Code section 1126(f). As indicated in the Voting Declarations, Impaired Classes 6, 7, 8 and 9 have accepted the Plan. Because holders of Claims or Interests in impaired Classes 10 and 11 are entitled to neither receive nor retain any property under the Plan, such holders of Claims or Interests are deemed to have rejected the Plan under Bankruptcy Code section 1126(g). Accordingly, the requirements of Bankruptcy Code section 1129(a)(8) have not been satisfied, thereby requiring application of Bankruptcy Code section 1129(b). As is more fully set forth in this Confirmation Order, the Plan satisfies Bankruptcy Code section 1129(b) with respect to Classes 10 and 11.

14

O.    The treatment of DIP Financing Facility Claims specified in Section 2.5 of the Plan and the treatment of Administrative Claims, including section 503(b)(9) Claims, specified in Sections 2.1 and 2.2 of the Plan, satisfy the requirements of Bankruptcy Code section 1129(a)(9)(A).  The treatment of Non-Tax Priority Claims specified in section 3.2(a) of the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9)(B).  The treatment of Priority Tax Claims under Section 2.4 of the Plan satisfies the requirements of Bankruptcy Code 1129(a)(9)(C).

P.    The Plan has been accepted by impaired Classes 6, 7, 8, and 9, determined without consideration of any acceptance of the Plan by insiders, thus satisfying the requirements of Bankruptcy Code section 1129(a)(10).

Q.    The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors.  The financial projections in Appendix D to the Disclosure Statement, the Confirmation Declarations and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further

15

financial reorganization of the Reorganized Debtors.  Therefore, the Plan satisfies Bankruptcy Code section 1129(a)(11).

R.    The Debtors have paid, or will pay on the Plan Effective Date, all amounts due under 28 U.S.C. § 1930, thus satisfying the requirements of Bankruptcy Code section 1129(a)(12).

S.    The Plan provides for the continuation after the Plan Effective Date of the payment of all retiree benefits, as that term is defined in Bankruptcy Code section 1114, at the level established pursuant to subsection (e)(1)(B) of Bankruptcy Code section 1114.  The Debtors have sought approval of a compromise of their retiree benefit obligations pursuant to the Motion for an Order Pursuant to 11 U.S.C. § 363(b) and Fed. R. Bank. P. 9019 Approving Settlement of Controversies and Disputes Among the Debtors, the Retiree Committee, the United Auto Workers and United Steel Workers Unions (Docket No. 813). Therefore, the Debtors expect to modify their retiree benefits pursuant to Bankruptcy Code section 1114(e)(1)(B), thereby satisfying the requirements of Bankruptcy Code section 1129(a)(13).

T.    Holders of Claims and Interests in Classes 10 and 11 will neither receive nor retain any property or interest in property under the Plan and, accordingly, are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).

16

These are the only Classes that have not accepted the Plan. The Plan does not discriminate unfairly and is fair and equitable with respect to the treatment of Claims and Interests in Classes 10 and 11 because, as required by Bankruptcy Code sections 1129(b)(2)(B) and 1129(b)(2)(C), there are no holders of claims or interests junior to the holders of Claims or Interests in Classes 10 and 11 that will receive or retain under the Plan any property on account of such junior claims or interests. Thus, the Plan satisfies Bankruptcy Code section 1129(b) and may be confirmed notwithstanding its failure to satisfy Bankruptcy Code section 1129(a)(8). The Plan shall be binding upon the members of Classes 10 and 11 upon confirmation and the occurrence of the Plan Effective Date.

U.    The principal purpose of the Plan is not the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and no governmental unit has requested that the Bankruptcy Court deny confirmation on such basis, thus satisfying the requirements of Bankruptcy Code section 1129(d).

V.    The Bankruptcy Court finds that it may properly retain jurisdiction over the matters set forth in Article VI of the Plan and Bankruptcy Code section 1142.

W.    The conditions precedent to confirmation set forth in Article XI of the Plan have been satisfied or duly waived in accordance with the terms of the Plan.

X.    Article III of the Plan adequately and properly identifies and classifies all Claims and Interests.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification is therefore consistent with Bankruptcy Code section 1122.  Valid business and legal reasons exist for the various Classes of Claims and Interests created under the Plan, and such classification does not unfairly discriminate among holders of Claims or Interests.  Neither the payment of the Consent Fee nor the recoveries of DIP Lenders in respect of their DIP Financing Facility Claims is a recovery on account of their Claims in Class 6 and thus such payments and recoveries do not unfairly discriminate among holders of Class 6 Claims.  The Plan's classification scheme recognizes the differing legal and equitable rights of creditors versus Interestholders, secured versus unsecured Claims, and priority versus non-priority Claims.  Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(1).

Y.    Article III of the Plan specifies that Classes 1, 2, 3, 4 and 5 are not impaired under the Plan, thereby satisfying Bankruptcy Code section 1123(a)(2).

18

Z.    Article III of the Plan specifies that Classes 6, 7, 8, and 9 are impaired; the Plan further specifies in section 3.2(b) the treatment of such impaired Classes of Claims.  Thus, Bankruptcy Code section 1123(a)(3) is satisfied.

AA.    The Plan provides for the same treatment for Claims or Interests in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying Bankruptcy Code section 1123(a)(4).

BB.    Article VI of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying Bankruptcy Code section 1123(a)(5).  Among other things, Article VI provides for (i) the continued corporate existence of certain of the Debtors as the Reorganized Debtors; (ii) the authorization of corporate action under the Plan; (iii) the creation of new corporate governance documents for Reorganized Hayes; (iv) the cancellation of Existing Securities and agreements of Hayes and HLI Opco; (v) the authorization and issuance of New Common Stock and the Warrants by Reorganized Hayes; (vi) the appointment of initial Directors and Officers of Reorganized Hayes; (vii) the adoption of various employment incentive compensation programs; and (viii) the establishment of post-Plan Effective Date financing.

19

CC.   Section 6.3 of the Plan provides that the corporate governance documents of each Reorganized Debtor shall, among other things, include a provision prohibiting the issuance of non-voting equity securities, thereby satisfying the requirements of Bankruptcy Code section 1123(a)(6).

DD.   Section 6.6 of the Plan regarding the selection of the Directors and Officers of the Reorganized Debtors is consistent with the interests of creditors and equity security holders and with public policy, thereby satisfying Bankruptcy Code section 1123(a)(7).

EE.   In accordance with Bankruptcy Rule 9019, the Plan constitutes a compromise and settlement among various parties, notably those holding Noteholder Claims, DIP Lender Claims, and Prepetition Secured Lender Claims, the Creditors' Committee, the Retiree Committee, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "USW"), and the Pension Benefit Guaranty Corporation ("PBGC"), regarding the treatment of the Impaired Claims under the Plan, and reflects and implements such compromise and settlement.  Such compromise and settlement is made in exchange for consideration and is in the best interests of the Debtors, their Estates and the holders of Claims and

20

Interests, is within the reasonable range of possible litigation outcomes, is fair, equitable and reasonable and is an essential element of the resolution of the Bankruptcy Cases in accordance with the Plan.  The compromise and settlement embodied in the Plan: (1) falls within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b) and (d); (2) is an essential means of implementing the Plan pursuant to Bankruptcy Code section 1123(a)(5); (3) is an integral element of the transactions incorporated in the Plan; (4) confers material benefit on, and is in the best interests of the Debtors, their Estates and their creditors; (5) is vital to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in the Bankruptcy Cases; and (6) is consistent with Bankruptcy Code sections 105, 1123 and 1129 and other applicable provisions of the Bankruptcy Code.  The settlement and compromise embodied in the Plan has been negotiated at arms' length and has been entered into in good faith, eliminates the need for costly and time consuming litigation and paves the way toward achieving a successful reorganization.

FF.  The releases set forth in Sections 6.4, 10.4, 10.5 and 10.10 of the Plan are fair and necessary to the success of the Debtors' reorganization in light of the circumstances presented.  Such releases are given in exchange for material, specific and identifiable consideration consisting of: (1) the

21

services and contributions of the Released Parties to the Debtors' business and reorganization, and (2) the distributions received by Holders of Claims.  Absent the value of the Non-Debtor Affiliates receiving releases, there would be no recovery to holders of Class 6 Claims (or any more junior Class of Claims under the Plan) on account of such Claims.  Furthermore, such releases are integral components of the Plan and absent such releases it is unlikely that the Debtors would be able to confirm a Plan, as the DIP Lenders' willingness to accept the treatment provided in the Plan (instead of payment, in full, in Cash) on account of their DIP Financing Facility Claims and provide the Exit Credit Facility is contingent upon the granting of such releases and the Debtors have been unable to identify a third party willing to provide the Exit Credit Facility without granting such releases.  There is an identity of interests among the Debtors and the Non-Debtor Affiliates.  Due to the business and legal risks that would be associated with a chapter 11 or other foreign insolvency filing of the Non-Debtor Affiliates and the negative impact such filing would have on the Reorganized Debtors' ongoing businesses, the releases to the Non-Debtor Affiliates,  as set forth in and to the extent of Sections 6.4, 10.5 and 10.10 of the Plan, are a necessary and integral component of any reorganization of the Debtors.  The releases accordingly meet the legal standards of fairness and necessity

22

to the Debtors' reorganization required to justify such releases in light of the factual circumstances in these Bankruptcy Cases. The Court finds that the circumstances here are "extraordinary" and permit it to issue the forgoing releases consistent with the guidance provided by the Third Circuit in Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203 (3d Cir. 2000).

GG.    The Debtors have provided adequate assurance of future performance with respect to the executory contracts and unexpired leases to be assumed and/or assigned pursuant to Article VII of the Plan.

HH.    The modifications to the Proposed Plan as embodied in the Plan Modifications set forth herein or attached hereto, which were previously filed with the Court and/or described on the record at the Confirmation Hearing, do not materially or adversely affect or change the treatment of any holder of a Claim who has not accepted the Plan Modifications. Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of acceptances or rejections under Bankruptcy Code section 1126, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The notices of the Plan Modifications previously filed with the

23

Court and/or disclosure of the Plan Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Bankruptcy Cases.

Accordingly, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1.    Approval.  The Plan attached hereto as Exhibit A, which includes and incorporates the Plan Modifications, and this Confirmation Order are approved and confirmed in substantially the forms as filed, as having satisfied all of the requirements of Chapter 11 of the Bankruptcy Code.  All terms of the Plan are incorporated herein by reference, are an integral part of this Confirmation Order, and are so-ordered.

2.    Findings of Fact and Conclusions of Law.  The findings of fact and conclusions of law of the Bankruptcy Court set forth herein and at the Confirmation Hearing constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable herein by Bankruptcy Rule 9014, and the findings and conclusions of the Bankruptcy Court at the Confirmation Hearing are incorporated herein by reference.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and vice versa.

3.    Confirmation Objections.  All confirmation objections and responses to the Plan, both filed and informal,

24

to the extent not resolved, withdrawn or otherwise addressed by this Confirmation Order or as set forth on the record at the Confirmation Hearing, including any reservations of rights contained therein, are hereby overruled on the merits.  The resolution of the seven (7) objections to the Plan filed with the Court, and other issues raised informally with the Debtors, are described in the paragraphs 4 through 10 herein.

4.    *Objections of Mercator CLO III Limited and Verizon Business Global LLC.*  The Debtors have resolved by settlement stipulations the Plan Objections filed by Mercator CLO III Limited (Docket No. 674) and Verizon Business Global LLC (Docket No. 652).  Each of (a) the Mercator CLO III Limited stipulation filed with this Bankruptcy Court on November 2, 2009 (Docket No. 829), and (b) the Verizon Business Global LLC stipulation filed with this Bankruptcy Court on October 27, 2009 (Docket No. 791) is hereby approved in all respects.  Each of the parties to such stipulations shall perform its respective obligations pursuant to and in accordance with the terms and conditions of such stipulations.

5.    *Objection of Diversified Machine, Inc.*  Entry of this Confirmation Order resolves Diversified Machine, Inc.'s ("DMI") Plan Objection (Docket No. 673) ("DMI Objection") as follows: (a) Notwithstanding any provision in this Confirmation Order or the Plan to the contrary, (i) nothing herein or in the

25

Plan supersedes, alters, amends or otherwise modifies this Bankruptcy Court's Order Granting DMI's Motion for Relief from the Automatic Stay to Prosecute Counterclaims (Docket No. 313) (the "DMI Lift Stay Order") regarding DMI's counterclaims in that certain civil action pending in the Wayne County Circuit Court for the State of Michigan (the "Wayne County Circuit Court") entitled *HLI Operating Co., Inc. and HLI Suspension Holding Co., Inc. v. Diversified Machine, Inc., Case No. 09-006683-CZ* (the "Wayne County Litigation"), and (ii) to the extent that either the Plan or this Confirmation Order is inconsistent with the DMI Lift Stay Order, the DMI Lift Stay Order shall control.

(b)    The Wayne County Litigation shall proceed unaffected by this Confirmation Order or the Plan, and the Wayne County Circuit Court shall continue to have jurisdiction to fully and finally determine all claims between the parties in the Wayne County Litigation.  If the Wayne County Circuit Court enters a judgment or other final order (including, but not limited to, any order which may result from a settlement agreement between the parties, a "Judgment or Final Order") in the Wayne County Litigation awarding DMI, the Debtors or Reorganized Debtors some or all of the Balance in the Escrow (as both terms are defined in the DMI Objection) at issue in the Wayne County Litigation, such Judgment or Final Order shall (i)

26

govern DMI, the Debtors, the Reorganized Debtors and the Escrow Agent (as defined in the Stock Purchase Agreement (defined herein)), (ii) control the disposition of the Balance in the Escrow notwithstanding any provision of the Plan or this Confirmation Order to the contrary, and (iii) not be subject to any further proceedings in this Bankruptcy Court.

(c)    If the Wayne County Circuit Court enters a Judgment or Final Order in the Wayne County Litigation awarding DMI a claim against the Debtors exceeding the Balance in the Escrow, the amount of such claim that exceeds the Balance in the Escrow shall (i) be an Allowed Class 9 General Unsecured Claim in the respective Chapter 11 cases of Debtors HLI Operating Co., Inc. and HLI Suspension Holding Co., Inc. upon DMI filing proofs of claim, with attached copies of the relevant Judgment or Final Order in the Wayne County Litigation, amending the Proofs of Claim DMI previously filed on or about July 23, 2009, and (ii) not be subject to objection by the Debtors, the Reorganized Debtors or any other party in interest in the Debtors' Chapter 11 cases; provided that the amended proofs of claim conform to the pertinent Judgment or  Final Order in the Wayne Country Litigation.

(d)    That certain Stock Purchase Agreement dated as of February 1, 2007, between certain of the Debtors and DMI (the "Stock Purchase Agreement") is hereby rejected by the Debtors

27

effective as of the date hereof.  Nothing in the Plan or Confirmation Order is or shall be deemed to be a determination of (i) whether the Stock Purchase Agreement is an executory contract as of the date hereof, or (ii) the effect of the Debtors' rejection of the Stock Purchase Agreement. Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, the rejection of the Stock Purchase Agreement shall not prejudice the rights of any of DMI, the Debtors or the Reorganized Debtors to later contest or assert, or have judicially determined or resolved, whether the Stock Purchase Agreement was executory as of the date hereof or otherwise capable of rejection by the Debtors, the effect of the rejection of the Stock Purchase Agreement, or whether any covenant not to compete contained in the Stock Purchase Agreement continues or continued to be valid and enforceable after the effective date of rejection; _provided_, however, that any determination regarding the continuing validity and enforceability of such covenant not to compete shall not be affected by any provision contained in the Plan or this Confirmation Order.

6.    _Objection of Oracle USA, Inc._  The hearing on the objection to cure amount filed by Oracle USA, Inc., successor in interest to Oracle Corporation, Hyperion Solutions Corporation and Stellent (Docket No. 670) ("_Oracle_") will be held on

November 19, 2009 at 9:30 a.m. (prevailing Eastern time). The assumption or rejection of Oracle's executory contracts with the Debtors shall not be effective until Oracle's objection with respect to such assumption or rejection is resolved by order of the Bankruptcy Court.

7.    *Objection of CaremarkPCS Health, L.P.*  The Debtors and Reorganized Debtors shall pay all post-petition amounts owing to CaremarkPCS Health, L.P. ("Caremark") in the ordinary course of business (which shall include the Debtors' and the Reorganized Debtors' rights to dispute any such amounts and the reservation of the parties' rights with respect to any such dispute). The objection to the Plan filed by Caremark (Docket No. 669) is hereby resolved and withdrawn.

8.    *Objection of ACE Group of Companies and Liberty Mutual Insurance Company.*  The Debtors have resolved the objections filed by Ace Group of Companies (Docket No. 671) and Liberty Mutual Insurance Company (Docket No. 718), as well as informal issues raised by other insurers, including Hartford Fire Insurance Company, pursuant to language set forth herein.

(a)    To the extent that any non-workers compensation insurance policies issued to the Debtors by ACE American Insurance Company, Pacific Employers Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance, or any other members of the ACE group

of companies ("ACE"), including but not limited to (i) the policies set forth in ACE's Limited Objection to the Plan (Docket No. 671) (collectively, the "ACE Insurance Policies"), (ii) any insurance policies issued to the Debtors by Liberty Mutual Insurance Company and its affiliates and predecessors including but not limited to Employers Insurance of Wausau and Safeco Insurance Company of America ("Liberty" and the "Liberty Insurance Policies") and (iii) any insurance policies issued to the Debtors by Hartford Fire Insurance Company and its affiliates and predecessors including but not limited to Twin City Fire Insurance Company, Hartford Insurance Company of the Midwest and Hartford Fire Insurance Company ("Hartford" and the "Hartford Insurance Policies") are executory, they are each hereby assumed by the Debtors and assigned to the Reorganized Debtors pursuant to the Plan effective as of the Effective Date of the Plan.  Regardless of whether the ACE Insurance Policies, the Liberty Insurance Policies and the Hartford Insurance Policies are executory, after the Effective Date the Reorganized Debtors and ACE, Liberty and Hartford shall continue to perform their respective obligations under the ACE Insurance Policies, the Liberty Insurance Policies and the Hartford Insurance Policies including, but not limited to, any obligations that remain unperformed as of the Effective Date of the Plan.

30

(b)   Notwithstanding anything to the contrary herein, the Debtors will assume all of their non-workers' compensation insurance policies.   The Debtors assert and propose that there are no cure obligations with respect to such non-workers' compensation insurance policies.   However, any party to a non-workers' compensation insurance policy asserting that it is owed cure obligations shall file with this Court within twenty (20) days of entry of this Order an objection to proposed cure amount setting forth the amount, basis and calculation of the asserted cure claim.   If a cure objection is filed and is not resolved by the Debtors and the objecting insurer, the matter will be heard at the next regularly scheduled omnibus hearing in these cases or as otherwise ordered by the Court.   If cure objections are not filed and the Debtors' counsel files a certificate of no objection, then no cure amounts shall payable with respect to the non-workers' compensation  insurance policies.

(c)   To the extent that any workers compensation insurance policies issued to the Debtors by ACE, including but not limited to those certain high deductible Workers' Compensation and Employers' Liability (Policy Nos./Policy years: WLR C43021850 (2002-2003); WLR C43510046 (2003-2004); WLR C43971396 (2004 - 2005) (collectively, the "ACE Workers' Compensation Policies") and any workers' compensation insurance policies issued to the Debtors by Liberty (the "Liberty Workers'

31

Compensation Policies"), Hartford (the "Hartford Workers' Compensation Policies"), Kemper Insurance Company and any of its affiliates or predecessors including but not limited to American Protection Insurance Company ("Kemper" and the "Kemper Workers' Compensation Policies"), Sentry Insurance Company and any of its affiliates or predecessors ("Sentry") and the "Sentry Workers' Compensation Policies") and Mitsui Sumitimo Insurance Company Insurance and any of its affiliates or predecessors ("Mitsui" and the "Mitsui Workers' Compensation Policies"); and any related workers compensation program agreements among the Debtors and ACE, including but not limited to the (i) ACE – HLI Deductible Workers' Compensation Program Agreement and 2002 Addendum, (ii) ACE – HLI Deductible Workers Comp Program Agreement – 2003 Addendum, and (iii) ACE – HLI Deductible Workers Comp Program Agreement – 2004 Addendum (collectively, the "ACE Workers' Compensation Program Agreements" and, collectively with the ACE Workers Compensation Policies, the "ACE Workers Compensation Policies  and Agreements"); any related workers compensation program agreements among the Debtors and Liberty (collectively, the "Liberty Workers' Compensation Agreements", and collectively, with the Liberty Workers' Compensation Policies, the "Liberty Workers' Compensation Policies and Agreements"); any related workers compensation program agreements among the Debtors and Hartford

32

(collectively, the "Hartford Workers' Compensation Agreements", and collectively, with the Hartford Workers' Compensation Policies, the "Hartford Workers' Compensation Policies and Agreements"); any related workers compensation program agreements among the Debtors and Kemper (collectively, the "Kemper Workers' Compensation Agreements", and collectively, with the Kemper Workers' Compensation Policies, the "Kemper Workers' Compensation Policies and Agreements"); any related workers compensation program agreements among the Debtors and Sentry (collectively, the "Sentry Workers' Compensation Agreements", and collectively, with the Sentry Workers' Compensation Policies, the "Sentry Workers' Compensation Policies and Agreements"); and any related workers compensation program agreements among the Debtors and Mitsui (collectively, the "Mitsui Workers' Compensation Agreements", and collectively, with the Mitsui Workers' Compensation Policies, the "Mitsui Workers' Compensation Policies and Agreements") are executory, they are each hereby rejected by the Debtors effective as of the Effective Date of the Plan. The automatic stay in the Debtors' cases is hereby lifted to the extent that it is necessary to allow ACE, Liberty, Hartford, Kemper, Sentry and Mitsui to settle any claims under the ACE Workers Compensation Policies and Agreements, the Liberty Workers' Compensation Policies and Agreements, the Hartford Workers' Compensation Policies and

Agreements, the Kemper Workers' Compensation Policies and Agreements, the Sentry Workers' Compensation Policies and Agreements and the Mitsui Workers' Compensation Policies and Agreements and to perform under the ACE Workers Compensation Policies and Agreements, the Liberty Workers' Compensation Policies and Agreements, the Hartford Workers' Compensation Policies and Agreements, the Kemper Workers' Compensation Policies and Agreements, the Sentry Workers' Compensation Policies and Agreements and the Mitsui Workers' Compensation Policies and Agreements including exercising ACE's, Liberty's, Hartford's, Kemper's, Sentry's and Mitsui's rights to draw upon any letters of credit posted by the Debtors prepetition or loss funds pre-funded by the Debtors prepetition.

(d)    Notwithstanding anything to the contrary in the foregoing, the current year Hartford Workers' Compensation Policies and Agreements are hereby assumed.  The Debtors asserted and propose that no cure obligations are owing under the current year Hartford Workers' Compensation Policies and Agreements.  However, if Hartford believes it is owed cure obligations, it shall file with this Court an objection to proposed cure amount within twenty (20) days of entry of this Order.  If a cure objection is filed and is not resolved by the Debtors and Hartford, the matter will be heard at the next regularly scheduled omnibus hearing in these cases or as

34

otherwise ordered by the Court.  If a cure objection is not filed and the Debtors' counsel files a certificate of no objection, then no cure amount shall be payable with respect to the current year Hartford Workers' Compensation Policies and Agreements.

9.    *Resolution of Informal Assumption and Cure Issues with GE Capital Corporation.*  The Debtors have resolved by settlement stipulation the informal assumption and cure issues raised by GE Capital Corporation.  The GE Capital Corporation stipulation filed with the Bankruptcy Court on October 12, 2009 (Docket No. 702) is hereby approved in all respects.  Each of the parties to such stipulation shall perform its respective obligations pursuant to and in accordance with the terms and conditions of such stipulations

10.    *Extension of Objection Deadline for Moody's Investors Services.*  The Debtors have extended the cure objection deadline for Moody's Investors Services and its affiliates ("Moody's") to November 6, 2009 at 4:00 p.m. (prevailing Eastern time).  If Moody's does not timely file an objection with respect to the assumption of or cure for Moody's executory contracts with the Bankruptcy Court by such deadline, Moody's executory contracts will be, and will be deemed to be, assumed pursuant to this Order effective upon the Debtors' counsel filing a certificate no objection.  If Moody's timely

35

files an assumption or cure objection with the Court, and such the Debtors and Moody's cannot resolve such objection, the matter will be heard at the hearing on November 19, 2009 at 9:30 a.m. (prevailing Eastern time). The assumption of Moody's executory contracts with the Debtors shall not be effective until either the Debtors' counsel files a certificate of no objection, or Moody's objection, if any, with respect to assumption or cure is resolved by agreement of the parties of a further order of the Bankruptcy Court.

11. Discharge of the Debtors. Pursuant to, and to the fullest extent permitted by Bankruptcy Code section 1141(d), except as otherwise specifically provided in the Plan or in this Confirmation Order, confirmation of the Plan discharges and releases, effective as of the Confirmation Date (but subject to the occurrence of the Plan Effective Date), the Debtors, the Reorganized Debtors and the Estates (a) from all Claims and Causes of Action, whether known or unknown, and (b) from liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, in each case regardless of whether any property has been distributed or retained pursuant to this Plan on account of such Claims, Causes of Action, rights, liabilities, liens, obligations and Interests, and in each case including, but not limited to, demands and (w) any claim, lien, interest or

36

obligation for joint or several liability, the right to assert any such claim, lien, interest or obligation, and the right to assess or impose any such liability, arising before or after the Confirmation Date under (i) Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Sections 430 and/or 412 of the United States Internal Revenue Code of 1986, as amended, of the PBGC or any other party in connection with the Hayes Lemmerz International, Inc., Retirement Income Plan ("Title IV Liability"), (ii) the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and all other environmental statues and regulations and (iii) any applicable securities laws; (x) Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests that arose before the Confirmation Date, (y) any Claims, Causes of Actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests to the extent such Claims, Causes of Actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, and (z) all Claims of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), in each case whether or not (i) a proof of claim or interest based upon such Claims, Causes of Actions, rights,

37

liabilities, liens, obligations and Interests or Interest is filed or deemed filed under Bankruptcy Code section 501, (ii) a Claim or Interest based upon such Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests is allowed under Bankruptcy Code section 502, or (iii) the Holder of such a Claim, Cause of Action, right, liability, lien, obligation or Interests accepted this Plan.  This Confirmation Order shall be a judicial determination of the discharge of all liabilities of and Interests in the Debtors, subject to the Plan Effective Date occurring.

12.  As of the Plan Effective Date, except as provided in the Plan or in this Confirmation Order or under the terms of the documents evidencing the Exit Credit Facility, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Plan Effective Date.  In accordance with the foregoing, except as provided in the Plan or this Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests in Hayes pursuant to Bankruptcy Code sections 524 and

38

1141, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

13. Binding Effect. As of the Plan Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former Claimholders (wherever located anywhere in the world), all present and former Interestholders, other parties-in-interest and their respective heirs, successors and assigns.

14. Receipt of Distributions. In order to receive the distributions provided under the Plan, Creditors other than holders of Claims in Class 7 and Class 8 may have to identify themselves to the Disbursing Agent and provide such identifying information as may be reasonably required. Additionally, all creditors receiving New Common Stock under the Plan (including, without limitation, New Common Stock received upon exercise of the Warrants) shall be required to execute the Stockholders Agreement; provided that the Requisite DIP Lenders may waive, in their sole discretion, the Stockholders Agreement requirement as it pertains to creditors who receive New Common Stock under the Plan as distributions for Allowed Claims in Class 7; provided, however, that any person receiving non-Cash grants under the Long Term Incentive Plan shall be required to execute a

39

management shareholder's agreement acceptable to the Reorganized Debtors and such person.

15. <u>Release of Liens and Guarantees Relating to Prepetition Secured Lender Claims</u>. Each Holder of a Prepetition Secured Lender Claim and the Prepetition Agents is deemed to have forever waived, released, and discharged the non-Debtor Affiliates of the Debtors of any Liens, Claims, claims, causes of action, rights, or liabilities arising from the guarantees, liens, and asset pledges granted to the Holders of the Prepetition Secured Lender Claims and the Prepetition Agents under and in connection with the Prepetition Credit Facility. The Prepetition Agents are authorized and directed to take whatever action may be necessary or appropriate, at the direction of the Debtors or Reorganized Debtors, as applicable, to effectuate the foregoing, including, without limitation, providing a release of the liens securing such obligations and a release of such guarantees.

16. <u>Directors and Officers</u>. The individuals identified in Exhibit G of the Plan shall serve as the initial officers of the Reorganized Debtors in the capacities set forth therein. All other existing officers or managing members of the Debtors (unless expressly replaced) shall remain in their current capacities as officers or managing members of the Debtors, subject to the ordinary rights and powers of the board

40

of directors or equityholders, as the case may be, to replace them. Each director of Reorganized Hayes shall be entitled to execute a directors' indemnification agreement with Reorganized Hayes. Other provisions governing the service, term and continuance in office of the directors of Reorganized Hayes shall be as set forth in the organizational documents of Reorganized Hayes.

17. Post-Effective Date Financing. The Debtors or Reorganized Debtors, as applicable, are authorized to enter into the Exit Credit Facility on the terms and conditions disclosed to the Bankruptcy Court, with such changes that may be agreed upon by the parties thereto and approved by the Requisite DIP Lenders, and to execute, without further order of this Court, the Exit Credit Facility Documents together with such other documents, agreements, instruments, security agreements, mortgages and financing statements as the Exit Credit Facility Lenders may require and the Requisite DIP Lenders have approved in connection with the Exit Credit Facility; provided however that any Exit Credit Facility Documents or any changes to the Exit Credit Facility Documents must be consistent with the Exit Term Sheet.

18. Restructuring Transactions. On, as of, or after the Plan Effective Date and subject to the prior agreement of the Requisite DIP Lenders, the Debtors or the Reorganized

41

Debtors, as the case may be, may take such actions as may be necessary or appropriate to effect certain Restructuring Transactions which may include the following: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of this Plan; (iii) the filing of appropriate Organizational Documents with the appropriate governmental authorities under applicable law; and (iv) all other actions that such Debtor or Reorganized Debtor determines are necessary or appropriate, including the transactions described in Section 6.9 of the Plan.

19.    Preservation of Causes of Action.

(a)    In accordance with Bankruptcy Code section 1123(b)(3) and except as otherwise provided in the Plan, the Reorganized Debtors shall retain and may, in their sole discretion, enforce or prosecute all Retained Actions.  The Reorganized Debtors, in their sole and absolute discretion, will determine whether to bring, settle, release, or compromise any Retained Actions (or decline to do any of the foregoing).  The Reorganized Debtors or any successors may prosecute (or decline

42

to prosecute) such Retained Actions in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

(b)    Except as otherwise provided in the Plan, the failure of the Debtors to specifically list any Claim, right of action, suit or proceeding in the Schedules or in Exhibit D to the Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors of such claim, right of action, suit or proceeding, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits or proceedings in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit or proceeding upon or after the confirmation or consummation of this Plan.

(c)    Upon the Plan Effective Date and in satisfaction of the condition to the Plan Effective Date specified in sections 11.2(g) and 11.2(s) of the Plan, the Declaratory Judgment Action shall be deemed dismissed with prejudice.  The parties to the Declaratory Judgment Action shall take such steps as are reasonably necessary to effectuate such dismissal. Further, on the Plan Effective Date, to the extent it has not previously occurred, the Investigation Termination Date (as

43

defined in the Final DIP Order) shall be deemed to have occurred.

20.  Effectuating Documents; Further Transactions. The chairman of the Board of Directors, the chief executive officer, the chief financial officer, the general counsel, or any other executive officer or managing member of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The secretary or assistant secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

21.  Exemption From Certain Transfer Taxes and Recording Fees.  Pursuant to Bankruptcy Code section 1146(c), any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to the Plan (including, without limitation, pursuant to any grant of collateral under the Exit Credit Facility), or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property, will not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment, and the appropriate

44

state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

22. Compromise of Declaratory Judgment Action and Title IV Liability. Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of the Declaratory Judgment Action and all Claims that the Noteholders and PBGC may have against the Debtors and, to the extent provided by Section 10.10 of the Plan, their non-Debtor affiliates and all Title IV Liability of PBGC against the Debtors and their non-Debtor Affiliates. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromises and settlements with the Noteholders and the PBGC and the Bankruptcy Court's finding that such compromises and settlements are in the best interests of the Debtors, their estates, and the holders of such Claims and Title IV Liability and is fair, equitable, and reasonable. Upon the Plan Effective Date, the PBGC's Claims and Title IV Liability against the Debtors and non-Debtor Affiliates shall be waived,

45

released, and discharged in exchange for the treatment provided under the Plan.

23. <u>Assumed Contracts and Leases</u>. Except as otherwise provided in the Plan or this Order, on the Plan Effective Date all executory contracts or unexpired leases of the Debtors (except those executory contracts and unexpired leases to which the Debtors are a party that are specifically listed on the schedule of rejected contracts and leases annexed to the Plan as Exhibit J) will be assumed in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. This Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions (subject to the occurrence of the Plan Effective Date), pursuant to Bankruptcy Code section 365(b)(1) and, to the extent applicable, Bankruptcy Code section 365(b)(3), as of the Plan Effective Date and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtors, their Estates, and all parties in interest in these cases.

24. In addition, this Confirmation Order shall constitute a finding of fact and conclusion of law that (i) each executory contract or unexpired lease is an executory contract which may be assumed by the Debtors, (ii) there are no defaults of the Debtors, no cure payments owing (except as established through the procedure set forth in Section 7.4(b) of the Plan),

46

no compensation due for any actual pecuniary loss, and there is adequate assurance of future performance with respect to of each executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtors and their Estates, (iv) upon the Plan Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. Each executory contract and unexpired lease assumed pursuant to Article VII of the Plan shall be reinstated and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, without amendment or modification.

25. Rejected Contracts and Leases. All executory contracts and unexpired leases listed on Exhibit J to the Plan (as amended) shall be rejected as of the Plan Effective Date. This Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Bankruptcy Code section 365 (subject to the occurrence of the Plan Effective Date).

26. Payments Related to Assumption of Executory Contracts and Unexpired Leases. The provisions (if any) of each executory contract or unexpired lease to be assumed and

47

Reinstated under this Plan which are or may be in default shall be satisfied solely by Cure. Any Cure disputes not resolved prior to the Confirmation Hearing will be noticed by the Debtors for the next omnibus hearing.

27. <u>Rejection Damages Date</u>. If the rejection of an executory contract or unexpired lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against either the Debtors or the Reorganized Debtors or such entities' properties unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty days after service of the earlier of (a) notice of entry of the Confirmation Order or (b) other notice that the executory contract or unexpired lease has been rejected. Any Claim that may be Allowed as a result of the rejection of an executory contract or unexpired lease shall be treated as an Other Unsecured Claim.

28. <u>Revesting of Assets</u>. Except as otherwise explicitly provided in the Plan, on the Plan Effective Date all property comprising the Estates (including Retained Actions) shall revest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and clear of all Claims, Liens and Interests of creditors and equity security Holders (other than as expressly provided in the Plan). As of the Plan Effective

48

Date, each of the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

29. <u>Releases, Exculpation and Limitation of Liability</u>. The releases set forth in Sections 10.4 and 10.5 of the Plan and the exculpation and limitation of liability provisions set forth in Section 10.7 of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety; <u>provided</u>, <u>however</u>, that Section 10.5 of the Plan shall not apply to holders of claims or interests that are deemed to accept the Plan pursuant to Section 5.2 of the Plan.

30. <u>Injunction</u>. Except as provided in the Plan or this Confirmation Order, as of the Plan Effective Date, the satisfaction, release, and discharge pursuant to Article X of the Plan shall also act as an injunction against any person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided for by the Bankruptcy

Code, including, without limitation, to the extent provided for or authorized by Bankruptcy Code sections 524 and 1141.

31. Applicability of Section 1145 of the Bankruptcy Code. The issuance and distribution of Reorganized Hayes' New Common Stock as described in the Plan satisfy the requirements of section 1145 of the Bankruptcy Code, and therefore section 5 of the Securities Act of 1933, as amended, and any other federal, state, or local laws requiring registration for offer or sale of securities do not apply to the issuance and distribution to Holders of Claims in these Bankruptcy Cases of such securities.

32. Applicability of Section 1125 of the Bankruptcy Code. Solely for the limited purpose of the provisions of section 1125(e) of the Bankruptcy Code, the Holders of Class 6 Prepetition Secured Obligations, the Holders of Class 7 Noteholder Claims, the Holders of Class 8 PBGC Termination Liability Claims, the Holders of Class 9 Other Unsecured Claims and the Reorganized Debtors are deemed to have participated, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan, of a newly organized successor to the Debtors under the Plan, and therefore, pursuant to section 1125(e) of the Bankruptcy Code, are not liable for violation of any applicable law, rule, or

50

regulation governing the offer, issuance, sale, or purchase of securities.

33. <u>Distributions</u>. The provisions of the Plan governing distributions and the procedures for treating and resolving disputed and contingent claims under the Plan, including those contained in Article VIII of the Plan, are approved and found to be fair and reasonable.

34. <u>Consents and Approvals</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

35. <u>Retention of Jurisdiction</u>. Notwithstanding confirmation of the Plan or the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Bankruptcy Cases and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the matters set forth in Article XII of the Plan, which provisions are incorporated herein by reference, <u>provided</u>, <u>however</u>, that this retention of jurisdiction does not extend to matters arising out of or

51

related to the Exit Credit Facility and New Common Stock after the Plan Effective Date.

36.    Failure to Reference Provisions of the Plan.    The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability or such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.    All terms and provisions of the Plan are deemed so ordered by the Bankruptcy Court as if such terms and provisions had been set forth in this Confirmation Order.

37.    Technical Adjustments.    Prior to the Plan Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of this Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests, have been approved by the Requisite DIP Lenders, and are satisfactory in form and substance to the Creditors' Committee.

38.    Notice of Entry of Confirmation Order.    The Debtors and their authorized agent shall serve notice of (a) entry of this Confirmation Order and (b) the Plan Effective Date, and (c) bar dates for filing Administrative Claims, Professional Claims, and Contract/Lease Rejection Damages

52

Claims; substantially in the form annexed hereto as <u>Exhibit B</u> (the "<u>Plan Confirmation Notice</u>"), which form is hereby approved, on all creditors of the Debtors as of the date hereof, and other parties in interest within five Business Days from the Plan Effective Date.  The Debtors shall not be required to serve the Plan Confirmation Notice upon the holders of Interests in Classes 10 and 11.

39.  <u>Inconsistency</u>.  In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or documents.  In the event of any inconsistency between the Plan and any agreement, instrument or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern, unless otherwise expressly provided for in such agreements, instruments, or documents.  Nothing in the Plan, including, without limitation, this paragraph, shall alter, supercede, modify or invalidate any settlements or prior order of the Bankruptcy Court approving any settlements.

40.  <u>Enforceability</u>.  Pursuant to Bankruptcy Code sections 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan, and all Plan-related documents

shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

41.  Separate Confirmation Orders.  This Confirmation Order is and shall be a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Bankruptcy Case for all purposes.

42.  Plan With Respect to Certain Debtors Not Confirmed.  Notwithstanding anything contained herein to the contrary, this Order shall not apply to the Plans of Hayes Lemmerz International - Howell, Inc., Hayes Lemmerz International - Laredo, Inc., and HLI Realty, Inc. (together, the "Non-Confirming Debtors") and Plan confirmation with respect to the Non-Confirming Debtors is hereby continued to November 19, 2009 at 9:30 (prevailing Eastern time).

43.  Notwithstanding entry of this Order and any provision of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Plan or this Order to the contrary, this Order shall not be effective until (a) 48 hours after the date and time the Debtors file and serve via facsimile or electronic mail upon the parties that have filed notices of appearances in the Bankruptcy Cases the final or substantially final form of Exit Credit Agreement (the "Exit Credit Agreement Objection Deadline"), and (b) the Debtors' counsel files a certificate of counsel stating that either (i) no objections to the Exit Credit

54

Agreement (an "Exit Financing Objection") have been timely filed with the Court by the Exit Credit Agreement Objection Deadline, or (ii) any timely filed Exit Financing Objection is resolved consensually, or (b) the Bankruptcy Court overrules any timely filed and unresolved Exit Financing Objection; provided however that the only issues that may be set forth and raised in an Exit Financing Objection and thereafter litigated at any subsequent hearing on an timely filed and unresolved Exit Financing Objection are and will be with respect to the terms of the Exit Credit Agreement.  The Bankruptcy Court will not consider untimely objections or objections regarding issues other than with respect to the terms of the Exit Credit Agreement.

Dated:  Wilmington, Delaware
        November 3, 2009

_____
Honorable Mary F. Walrath
United States Bankruptcy Judge

55