**L-2 Form of Series C & D Warrants Agreement**

Execution Version

HAYES LEMMERZ INTERNATIONAL, INC.

and

MELLON INVESTOR SERVICES LLC,

as Warrant Agent

---

WARRANT AGREEMENT

Dated as of _____, 2009

---

Warrants to Receive Common Stock, par value $.01 per share

---

## TABLE OF CONTENTS

**Page**

ARTICLE I ISSUANCE OF WARRANTS AND EXECUTION AND DELIVERY OF
    WARRANT CERTIFICATES......................................................................................2

    Section 1.01        Issuance of Warrants.....................................................................2

    Section 1.02        Execution and Delivery of Warrant Certificates. ..........................2

    Section 1.03        Issuance of Warrant Certificates...................................................3

ARTICLE II WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS ................4

    Section 2.01        Reserved. ......................................................................................4

    Section 2.02        Duration of Warrants .....................................................................4

    Section 2.03        Exercise of Warrants. ....................................................................4

    Section 2.04        Reservation of Warrant Shares .....................................................7

ARTICLE III OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF
    WARRANT ..............................................................................................................8

    Section 3.01        No Rights as Stockholder Conferred by Warrants or
                       Warrant Certificates. ....................................................................8

    Section 3.02        Lost, Mutilated, Stolen or Destroyed Warrant Certificates............8

ARTICLE IV EXCHANGE AND TRANSFER .................................................................8

    Section 4.01        Exchange and Transfer..................................................................8

    Section 4.02        Restrictions on Transfer; Restrictive Legend ................................9

    Section 4.03        Treatment of Holders of Warrant Certificates..............................10

    Section 4.04        Cancellation of Warrant Certificates.............................................11

ARTICLE V ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT
    SECURITIES ..........................................................................................................11

    Section 5.01        Adjustments Generally..................................................................11

    Section 5.02        Stock Dividends; Split-Ups. .........................................................11

    Section 5.03        Aggregation of Shares...................................................................11

    Section 5.04        Replacement of Securities upon Reorganization. ..........................11

    Section 5.05        Notices of Changes in Warrant......................................................12

    Section 5.06        No Fractional Shares. ....................................................................12

i

Section 5.07          Form of Warrant. ..........................................................12

Section 5.08          Extraordinary Transactions. ..........................................12

Section 5.09          De Minimis Adjustments. ..............................................13

ARTICLE VI CONCERNING THE WARRANT AGENT .......................................13

Section 6.01          Warrant Agent. ..............................................................13

Section 6.02          Conditions of Warrant Agent's Obligations. ...............13

Section 6.03          Resignation and Appointment of Successor. ................16

ARTICLE VII MISCELLANEOUS ........................................................................17

Section 7.01          Amendment. ..................................................................17

Section 7.02          Notices and Demands to the Company and Warrant Agent ..........18

Section 7.03          Addresses. .....................................................................18

Section 7.04          Applicable Law. .............................................................18

Section 7.05          Obtaining of Governmental Approval. ........................18

Section 7.06          Persons Having Rights Under Warrant Agreement. ......18

Section 7.07          Headings. .......................................................................18

Section 7.08          Counterparts. .................................................................18

Section 7.09          Inspection of Agreement. .............................................19

Section 7.10          Notices to Holders of Warrants. ..................................19

Section 7.11          Binding Effects ............................................................19

Section 7.12          Severability ...................................................................19

SCHEDULE

Schedule 1          Pro Forma Capitalization Table

EXHIBIT

Exhibit A          Form of Warrant Certificate

WARRANT AGREEMENT

THIS AGREEMENT dated as of _____, 2009 (the "Effective Date") between HAYES LEMMERZ INTERNATIONAL, INC., a Delaware corporation (the "Company"), and MELLON INVESTOR SERVICES LLC, a New Jersey limited liability company, as Warrant Agent (the "Warrant Agent").

WITNESSETH:

WHEREAS, on May 11, 2009, the Company and certain of the Company's direct and indirect subsidiaries each filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") initiating cases under chapter 11 of title 11 of the United States Code §§ 101-1330 and continued in the possession of their assets and in the management of their businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code; and

WHEREAS, the [Plan of Reorganization of [Hayes Lemmerz International, Inc., et al.], as confirmed on [_____], 2009 by an order of the Bankruptcy Court entered on [_____], 2009 (the "Plan") provides that the Company shall issue to certain holders of prepetition secured obligations entitled to receive a Consent Fee (as defined in the Plan) pursuant to the Plan (the "Holders"), an aggregate of 1,198,677 shares (the "Consenting Prepetition Secured Lenders Shares") of the Company's Class A Common Stock, par value $0.01 per share (the "Class A Common Stock") and/or Class B Common Stock, par value $0.01 per share (the "Class B Common Stock" and, together with the Class A Common Stock, the "Common Stock") representing 11.99% of the 10,000,000 shares of Common Stock to be issued on the effective date of the Plan as contemplated therein; and

WHEREAS, the Plan provides that the Company shall also issue to certain holders of the 8.25% Senior Notes due 2015 of Hayes Lemmerz Finance LLC – Luxembourg S.C.A. (the "Noteholders") and to the Pension Benefit Guaranty Corporation (together with the Noteholders, the "GUCs") Series A Warrants of the Company (the "Series A Warrants") and Series B Warrants of the Company (the "Series B Warrants"), entitling the GUCs to purchase shares of Common Stock;

WHEREAS, the Plan provides that the Company shall also issue to the Holders Series C Warrants of the Company (the "Series C Warrants" or the "Warrants"), entitling the Holders to receive shares (the "Warrant Shares") of Common Stock, by surrendering the certificates representing the Series C Warrants (the "Warrant Certificates") and without the need to pay any additional consideration therefor, in order to offset dilution of the Consenting Prepetition Secured Lenders Shares, if any, as a result of the exercise of the Series A Warrants and Series E Warrants;

WHEREAS, the Plan provides that the Company shall also issue to the Holders Series D Warrants of the Company (the "Series D Warrants"), entitling the Holders to receive shares of Common Stock in order to offset dilution of the Consenting Prepetition Secured Lenders Shares, if any, as a result of the exercise of the Series B Warrants and Series F Warrants;

WHEREAS, the Plan provides that the Company shall also issue to the GUCs Series E Warrants of the Company (the "Series E Warrants"), entitling the GUCs to receive shares of Common Stock, without the need to pay any additional consideration, in order to offset dilution of the GUCs, if any, as a result of the exercise of the Series C Warrants;

WHEREAS, the Plan provides that the Company shall also issue to the GUCs Series F Warrants of the Company (the "Series F Warrants"), entitling the GUCs to receive shares of Common Stock, without the need to pay any additional consideration, in order to offset dilution of the GUCs, if any, as a result of the exercise of the Series D Warrants; and

WHEREAS, the Company desires the Warrant Agent to act on behalf of the Company in connection with the issuance, transfer, exchange, exercise and replacement of the Warrant Certificates, and in this Agreement wishes to set forth, among other things, the form and provisions of the Warrant Certificates and the terms and conditions on which they may be issued, transferred, exchanged, exercised and replaced;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## ISSUANCE OF WARRANTS AND EXECUTION AND DELIVERY OF WARRANT CERTIFICATES

Section 1.01    Issuance of Warrants.  The Warrants shall be evidenced by one or more Warrant Certificates.  Each Warrant evidenced thereby shall represent the right, subject to the provisions contained herein and therein, to receive one share of the Warrant Shares.  The Company, on the date hereof shall deliver to each Holder duly executed Warrant Certificates registered in the name of each Holder for the number of Warrant Shares required pursuant to the Plan (for each such Holder, the "Base Warrant Shares").  Upon exercise pursuant to the terms herein, the Warrants shall initially entitle the Holders of such Warrants to receive up to a maximum of 76,583 shares of Common Stock, as such amount may be adjusted from time to time pursuant to this Agreement (the "Aggregate Maximum Series C Warrant Shares").

Section 1.02    Execution and Delivery of Warrant Certificates.

(a)    Each Warrant shall be evidenced by a Warrant Certificate in registered form substantially in the form set forth in Exhibit A hereto, shall be dated and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the officers of the Company executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Agreement, or as may be required to comply with any law or with any rule or regulation made pursuant thereto.  The Warrant Certificates shall be signed on behalf of the Company by its chairman or vice chairman of the Board of Directors of the Company (the "Board of Directors"), the chief financial officer, the president, any vice president, any assistant vice president, the treasurer or any assistant treasurer of the Company, which may but need not be attested by its secretary or one of its assistant secretaries.  Such signatures may be manual or facsimile signatures of such authorized officers

2

and may be imprinted or otherwise reproduced on the Warrant Certificates. The Warrant Certificates shall be subject to all of the terms and conditions of the Warrant Agreement, which terms and conditions shall be incorporated therein by reference and made a part thereof. Notwithstanding anything contained herein to the contrary, if any terms or conditions of the Warrant Certificates shall be found to conflict with any terms or conditions of the Warrant Agreement, the Warrant Agreement shall control.

(b)    No Warrant Certificate shall be valid for any purpose, and no Warrant evidenced thereby shall be exercisable, until such Warrant Certificate has been countersigned by the Warrant Agent by manual or facsimile signature. Such signature by the Warrant Agent upon any Warrant Certificate executed by the Company shall be conclusive evidence, and the only evidence, that the Warrant Certificate so countersigned has been duly issued hereunder.

(c)    In case any officer of the Company who shall have signed any of the Warrant Certificates either manually or by facsimile signature shall cease to be such officer before the Warrant Certificates so signed shall have been countersigned and delivered by the Warrant Agent as provided herein, such Warrant Certificates may be countersigned and delivered notwithstanding that the person who signed such Warrant Certificates ceased to be such officer of the Company; and any Warrant Certificate may be signed on behalf of the Company by such persons as, at the actual date of the execution of such Warrant Certificate, shall be the proper officers of the Company, although at the date of the execution of this Agreement any such person was not such officer.

(d)    The term "Holder," when used with respect to any Warrant Certificate, shall mean any person in whose name at the time such Warrant Certificate shall be registered upon the books to be maintained by the Warrant Agent for that purpose.

Section 1.03    Issuance of Warrant Certificates.

(a)    Warrant Certificates evidencing the right to receive the Warrant Shares (except as provided in Sections 2.03, 3.02 and 4.01) may be executed by the Company and delivered to the Warrant Agent upon the execution of this Warrant Agreement. The Warrant Agent shall, upon receipt of a written order of the Company, Warrant Certificates duly executed on behalf of the Company and all other information reasonably requested by the Warrant Agent, countersign Warrant Certificates evidencing Warrants representing the right to receive Warrant Shares and shall deliver such Warrant Certificates to or upon the order of the Company. Subsequent to such original issuance of the Warrant Certificates, the Warrant Agent shall countersign a Warrant Certificate only if the Warrant Certificate is issued in exchange or substitution for one or more previously countersigned Warrant Certificates or in connection with their transfer as hereinafter provided.

(b)    Pending the preparation of definitive Warrant Certificates evidencing Warrants, the Company may execute and the Warrant Agent, upon receipt of a written order of the Company and all other information reasonably requested by the Warrant Agent, shall countersign and deliver temporary Warrant Certificates evidencing such Warrants

3

(printed, lithographed, typewritten or otherwise produced, in each case in form satisfactory to the Warrant Agent). Such temporary Warrant Certificates shall be issuable substantially in the form of the definitive Warrant Certificates but with such omissions, insertions and variations as may be appropriate for temporary Warrant Certificates, all as may be determined by the Company with the concurrence of the Warrant Agent. Such temporary Warrant Certificates may contain such reference to any provisions of this Warrant Agreement as may be appropriate. Every such temporary Warrant Certificate shall be executed by the Company and shall be countersigned by the Warrant Agent upon the same conditions and in substantially the same manner, and with like effect, as the definitive Warrant Certificates. Without unreasonable delay, the Company shall execute and shall furnish definitive Warrant Certificates and thereupon such temporary Warrant Certificates may be surrendered in exchange therefor without charge pursuant to and subject to the provisions of Section 4.01, and the Warrant Agent shall countersign and deliver in exchange for such temporary Warrant Certificates definitive Warrant Certificates of authorized denominations evidencing a like aggregate number of Warrants evidenced by such temporary Warrant Certificates. Until so exchanged, such temporary Warrant Certificates shall be entitled to the same benefits under this Warrant Agreement as definitive Warrant Certificates.

## ARTICLE II
## WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS

Section 2.01   Reserved.

Section 2.02   Duration of Warrants. Subject to the provisions of this Agreement, each Warrant may be exercised as provided herein in whole or in part prior to 5:00 p.m. New York City time on _____, 2016, or such earlier date and time at which the Series A Warrants are no longer exercisable (in either case, such date and such time, the "Expiration Date"); provided further, that for the avoidance of doubt, the foregoing proviso shall not affect a Holder's entitlement to replacement securities pursuant to Section 5.04 hereof. Each Warrant not exercised at or before the Expiration Date shall become void, and all rights of the Holder and any beneficial owners of the Warrant Certificate evidencing such Warrant under this Agreement shall cease. The Company shall promptly notify the Warrant Agent in writing upon the occurrence of the Expiration Date and, if such notification is given orally, the Company shall confirm same in writing on or prior to the Business Day (as defined below) next following. Until such notice is received by the Warrant Agent, the Warrant Agent may presume conclusively for all purposes that the Expiration Date has not occurred. "Business Day" shall mean prior to 5:00 p.m. New York City time on any day other than a Saturday, Sunday or a day on which banking institutions in the state of New York or New Jersey are authorized or obligated by law or executive order to close.

Section 2.03   Exercise of Warrants.

(a)     The Warrants shall be automatically exercised at each time, and only to the extent, at least 5% of the then outstanding Series A Warrants[1] not previously exercised (the "Minimum Exercise Threshold") have been exercised (any such time a Series A Warrant[2] is exercised, an "Exercise Time"); provided that the Minimum Exercise Threshold shall not apply with respect to any exercise of a Warrant (i) in connection with an IPO (as defined in the Series A Warrant Agreement) or any Triggering Event or (ii) within sixty (60) days of the Expiration Date.  The number of shares of Common Stock to which an individual Holder shall be entitled under the Warrant at a given Exercise Time (the "Vested Warrant Shares") shall be based upon the number of Series A Warrants exercised at that particular Exercise Time (the "Aggregate Exercised Series A Share Amount"), in accordance with the following formula:

$$\text{Vested Warrant Shares} = 76{,}583 * (x/555{,}555) * (y/76{,}583)$$

where:

$76{,}583$ = the Aggregate Maximum Series C Warrant Shares.[3]

$x$ = the Aggregate Exercised Series A Share Amount.

$555{,}555$ = the "Aggregate Exercisable Series A Warrant Shares."

$y$ = the Base Warrant Shares

For illustration purposes, a pro forma capitalization table is set forth on Schedule 1 hereto showing the share ownership of the Company in the event of exercise of (i) all Series A Warrants, Series C Warrants and Series E Warrants and (ii) all Series A Warrants, Series B Warrants, Series C Warrants, Series D Warrants, Series E Warrants and Series F Warrants.  The Warrants may not be exercised in any manner other than as provided herein.

(b)     Pursuant to and in accordance with section 2.03(j)(iv) of the Series A Warrant Agreement (as defined below), the Warrant Agent shall notify the Company upon the exercise of any Series A Warrant, and provide the percentage of the then outstanding Series A Warrants represented by such exercise and such other information as may be reasonably requested by the Company.  Following receipt of such notice, the Company shall confirm to the Warrant Agent in writing, based on such information, if such exercise of Series A Warrants equals or exceeds the Minimum Exercise Threshold.  Until such confirmation is received by the Warrant Agent, the Warrant Agent may presume conclusively for all purposes that the Minimum Exercise Threshold has not been achieved.  If this Warrant is automatically exercised pursuant to this Section 2.03, the Company (provided that if the company provides such notice to the Holder, it will also provide prompt written notice thereof to the Warrant Agent), or if requested and provided with all necessary information, the Warrant Agent, shall notify the Holder of the

---

[1] Series D Warrant Agreement will refer to "Series B"

[2] Series D Warrant will refer to "Series B"

[3] Aggregate Maximum Series D Warrant Shares will be 77,801

5

automatic exercise as soon as reasonably practicable, and the Holder shall surrender the Warrant Certificate to the Warrant Agent. For purposes of providing such notice, the Warrant Agent shall maintain a record of the number of outstanding Series A Warrants that have been exercised. The Company shall cause to be issued to each Holder the aggregate number of whole Warrant Shares issuable upon such exercise and deliver to the Holder written confirmation that such Warrant Shares have been duly issued and recorded on the books of the Company as hereinafter provided; provided that certificates for the Warrant Shares shall not be issued to the Holder unless and until such Holder surrenders the Warrant Certificate for cancellation. The Warrant Shares so issued shall be registered in the name of the Holder.

(c)    The Warrant Agent shall promptly advise the Company, by telephone or by facsimile transmission or other form of electronic communication available to both parties when Warrant Certificates have been received. The Warrant Agent shall promptly confirm such advice to the Company in writing. Upon surrender of a Warrant Certificate, the Warrant Agent shall requisition from the transfer agent for the Common Stock (the "Transfer Agent") for issuance and delivery to each Holder of such Warrant Certificate, a certificate or certificates for the Vested Warrant Shares issuable upon the exercise of the Warrant or Warrants evidenced by such Warrant Certificate (together with any other Warrant Shares to which the Holder may be entitled for which the Holder has not yet been issued certificates). Such certificate or certificates shall be deemed to have been issued as of the date of surrender of such Warrant Certificate at the offices of the Warrant Agent designated for such purpose (the "Warrant Agent Office") duly executed by the Holder thereof. Notwithstanding any provision herein to the contrary, the Company shall not be required to register Warrant Shares in the name of any person who acquired any Warrant or any Warrant Shares otherwise than in accordance with this Agreement.

(d)    In case an exercise of Warrants is in part only, a new Warrant or Warrants of like tenor, calling in the aggregate on the face or faces of the Warrant Certificate or Warrant Certificates for the number of shares of Common Stock equal (without giving effect to any adjustment thereof) to the number of such shares called for on the face of the Warrant Certificate minus the number of such shares so exercised, shall be issued and delivered to the Holder or its registered assigns.

(e)    Neither the Warrant Agent nor the Company shall be required to pay any stamp or other tax or other charge required to be paid in connection with any transfer involved in the issuance of the Warrant Shares, and in the event that any such transfer is involved, neither the Warrant Agent nor the Company shall be required to issue or deliver any Warrant Share until it has been established to the Company's and the Warrant Agent's satisfaction that *such tax or other charge* has been paid or that no such tax or other charge is due.

(f)    An exercise of a Warrant pursuant to the terms of this Agreement shall be irrevocable; *provided however,* that if an exercise is effected as a result of an exercise of Series A Warrants in connection with the occurrence of a "Triggering Event" (as defined in the Warrant Agreement dated [_____] governing the Series A Warrants (the "Series A Warrant Agreement")), such exercise of a Warrant shall be effective only upon the consummation of such Triggering Event.

6

(g)   The Warrant Agent shall:

(i)   examine all documents delivered to it by or on behalf of Holders as contemplated hereunder to ascertain whether or not, on their face, such documents have been executed and completed in accordance with their terms and the terms hereof;

(ii)   where an exercised Warrant or other document appears on its face to have been improperly completed or executed or some other irregularity in connection with the exercise of the Warrants exists, the Warrant Agent shall endeavor to inform the appropriate parties (including the person submitting such instrument) of the need for fulfillment of all requirements, specifying those requirements which appear to be unfulfilled;

(iii)   inform the Company of and cooperate with and assist the Company in resolving any reconciliation problems between exercised Warrants and delivery of Warrant Certificates to the Warrant Agent's account; and

(iv)   advise the Company of such other information as the Company shall reasonably require.

(h)   All questions as to the validity, form and sufficiency (including time of receipt) of an exercised Warrant will be determined by the Company in its sole discretion, which determination shall be final and binding.  Such determination by the Company shall be final and binding on the Holders, absent manifest error.  Except as provided for in section 2.03(g), neither the Company nor the Warrant Agent shall be under any duty to give notice to any Person of any irregularities in any document delivered to it by or on behalf of Holders, nor shall it incur any liability for the failure to give such notice.

Section 2.04   <u>Reservation of Warrant Shares</u>

(a)   For the purpose of enabling it to satisfy any obligation to issue Warrant Shares upon exercise of Warrants, the Company will at all times through the Expiration Date, reserve and keep available out of its aggregate authorized but unissued or treasury shares of Common Stock, the number of Warrant Shares deliverable upon the exercise of all outstanding Warrants, and the Company's Transfer Agent is hereby irrevocably authorized and directed at all times to reserve such number of authorized and unissued or treasury shares of Common Stock as shall be required for such purpose.  The Company will keep a copy of this Agreement on file with the Transfer Agent.  The Warrant Agent is hereby irrevocably authorized to requisition from time to time from such Transfer Agent stock certificates issuable upon exercise of outstanding Warrants, and the Company will supply such Transfer Agent with duly executed stock certificates for such purpose.

(b)   The Company covenants that all shares of Common Stock issued upon exercise of the Warrants will, upon issuance in accordance with the terms of this Agreement, be fully paid and nonassessable and free from all taxes, liens, charges and security interests created by or imposed upon the Company with respect to the issuance and holding thereof.

7

## ARTICLE III
## OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF WARRANT

Section 3.01    No Rights as Stockholder Conferred by Warrants or Warrant Certificates.    No Warrant Certificate or Warrant evidenced thereby shall, and nothing contained in this Agreement or in the Warrant Certificate shall be construed to, entitle the Holder or any beneficial owner thereof to any of the rights of a holder or beneficial owner of Warrant Shares, including, without limitation, the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or any other matter, to receive dividends on Warrant Shares or any rights whatsoever as stockholders of the Company.

Section 3.02    Lost, Mutilated, Stolen or Destroyed Warrant Certificates.    Upon receipt by the Warrant Agent of evidence reasonably satisfactory to it and the Company of the ownership of and the loss, mutilation, theft or destruction of any Warrant Certificate and of such security or indemnity as may be required by the Company and the Warrant Agent to hold each of them and any agent of them harmless and, in the case of mutilation of a Warrant Certificate, upon surrender thereof to the Warrant Agent for cancellation, then, in the absence of notice to the Company or the Warrant Agent that such Warrant Certificate has been acquired by a bona fide purchaser, the Company shall execute, and an authorized officer of the Warrant Agent shall manually countersign or countersign by facsimile and deliver, in exchange for or in lieu of the lost, mutilated, stolen or destroyed Warrant Certificate, a new Warrant Certificate of the same tenor and evidencing a like number of Warrants.  Upon the issuance of any new Warrant Certificate under this Section 3.02, the Company may require the payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Warrant Agent) in connection therewith. Every substitute Warrant Certificate executed and delivered pursuant to this Section 3.02 in lieu of any lost, mutilated, stolen or destroyed Warrant Certificate shall represent an additional contractual obligation of the Company, whether or not the lost, stolen or destroyed Warrant Certificate shall be at any time enforceable by anyone, and shall be entitled to the benefits of this Agreement equally and proportionately with any and all other Warrant Certificates duly executed and delivered hereunder.  The provisions of this Section 3.02 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement of lost, mutilated, stolen or destroyed Warrant Certificates.  Notwithstanding anything in this Agreement to the contrary, the Warrant Agent shall have no obligation to take any action whatsoever with respect to such an exchange unless and until such payments required under this section have been made.

## ARTICLE IV
## EXCHANGE AND TRANSFER

Section 4.01    Exchange and Transfer.

(a)    Upon surrender at the Warrant Agent Office, Warrant Certificates evidencing Warrants may be exchanged for Warrant Certificates in other authorized denominations evidencing such Warrants or the transfer thereof may be registered in whole or in

8

part; *provided, however,* that such other Warrant Certificates shall evidence the same aggregate number of Warrants as the Warrant Certificates so surrendered.

(b)    The Warrant Agent shall keep, at the Warrant Agent Office, books in which, subject to such reasonable regulations as it may prescribe, it shall register Warrant Certificates and exchanges and transfers of outstanding Warrant Certificates upon surrender of such Warrant Certificates to the Warrant Agent at the Warrant Agent Office for exchange or registration of transfer, properly endorsed.

(c)    No service charge shall be made for any exchange or registration of transfer of Warrant Certificates, however, the Warrant Agent and/or the Company may require payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed in connection with any such exchange or registration of transfer.  Neither the Warrant Agent nor the Company shall be required to pay any stamp or other tax or other charge required to be paid in connection with such transfer, and neither the Warrant Agent nor the Company shall be required to issue or deliver any Warrant Share until it has been established to the Company's and the Warrant Agent's reasonable satisfaction that such tax or other charge has been paid or that no such tax or other charge is due.

(d)    Whenever any Warrant Certificates are so surrendered for exchange or registration of transfer, an authorized officer of the Warrant Agent, upon the request of the Company, shall manually countersign or countersign by facsimile and deliver to the person or persons entitled thereto a Warrant Certificate or Warrant Certificates, duly authorized and executed by the Company, as so requested.  The Warrant Agent shall not effect any exchange or registration of transfer which will result in the issuance of a Warrant Certificate, evidencing a fraction of a Warrant or a number of full Warrants and a fraction of a Warrant.

(e)    All Warrant Certificates, issued upon any exchange or registration of transfer of Warrant Certificates shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates surrendered for such exchange or registration or transfer.

Section 4.02    <u>Restrictions on Transfer; Restrictive Legend</u>

(a)    A Holder shall not transfer Warrants except in connection with the Holder's transfer of shares of the Consenting Prepetition Secured Lenders Shares held by such Holder (the "Transferred Shares"), which transfer shall comply with the provisions of the Stockholders Agreement (a "Share Transfer").  In the event of a valid Share Transfer, a Holder shall concurrently transfer such proportion of the Holder's Warrants equal to the proportion that the number of Transferred Shares bears to the total number of Consenting Prepetition Secured Lenders Shares held by such Holder prior to such transfer.

(b)    Any attempted or purported transfer of all or a portion of the Warrants held by a Holder in violation of this Section 4.02 shall be null and void and of no force or effect whatsoever, such purported transferee will not be treated as an owner of the Warrants for purposes of this Agreement or otherwise, and the Company will not register such transfer.

9

(c)    Each Warrant Certificate and certificate representing Warrant Shares issued upon the exercise of a Warrant shall be stamped or otherwise imprinted with a legend in the following or a comparable form:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE (THE "SECURITIES") WERE ORIGINALLY ISSUED IN RELIANCE UPON AN EXEMPTION FROM THE REGISTRATION REQUIREMENT OF SECTION 5 OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), PROVIDED BY SECTION 1145 OF THE BANKRUPTCY CODE, 11 U.S.C. 1145. THE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE ACT OR ANY STATE SECURITIES LAW, AND TO THE EXTENT THE HOLDER OF THE SECURITIES IS AN "UNDERWRITER," AS DEFINED IN SECTION 1145(B)(1) OF THE BANKRUPTCY CODE, THE SECURITIES MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER.

If at the time of issuance of Warrant Shares the Stockholders Agreement is still in effect, each certificate representing Warrant Shares issued upon the exercise of a Warrant shall also be stamped or otherwise imprinted with a legend in the following or a comparable form:

THE SALE, ASSIGNMENT, PLEDGE, ENCUMBRANCE OR OTHER TRANSFER OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE IS RESTRICTED BY THE TERMS OF, AND THE HOLDER HEREOF IS SUBJECT TO CERTAIN OTHER OBLIGATIONS PURSUANT TO, THE PROVISIONS OF A STOCKHOLDERS AGREEMENT, DATED AS OF [____], 2009, AMONG THE COMPANY AND CERTAIN HOLDERS OF ITS SECURITIES, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.

(d)    A Holder (or its transferee, as applicable) shall be entitled to receive from the Company, without expense, new securities of like tenor not bearing the legends set forth above when (i) such Warrant Shares shall have been (A) effectively registered under the Securities Act and disposed of in accordance with a registration statement covering such securities, (B) disposed of pursuant to the provisions of Rule 144 or any comparable rule under the Securities Act, or (C) when, in the written reasonable opinion of independent counsel for the holder thereof experienced in Securities Act matters, which counsel and opinion shall be reasonably satisfactory to the Company, such restrictions are no longer required in order to insure compliance with the Securities Act (including when the provisions of Rule 144(k) or any comparable rule under the Securities Act have been satisfied) and (ii) such Warrant Shares are no longer subject to the Stockholders Agreement.

Section 4.03    Treatment of Holders of Warrant Certificates. Each Holder of a Warrant Certificate, by accepting the same, consents and agrees with the Company, the Warrant Agent and every subsequent Holder of such Warrant Certificate that until the transfer of such Warrant Certificate is registered on the books of such Warrant Agent, the Company and the Warrant Agent may treat the registered Holder of such Warrant Certificate as the absolute owner

10

thereof for any purpose and as the person entitled to exercise the rights represented by the Warrants evidenced thereby, any notice to the contrary notwithstanding.

Section 4.04    Cancellation of Warrant Certificates. Any Warrant Certificate surrendered for exchange or registration of transfer or exercise of the Warrants evidenced thereby shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent and shall not be reissued and, except as expressly permitted by this Agreement, no Warrant Certificate shall be issued hereunder in exchange therefor or in lieu thereof. The Warrant Agent shall cause all cancelled Warrant Certificates to be destroyed and shall deliver a certificate of such destruction to the Company.

## ARTICLE V
## ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT SECURITIES

Section 5.01    Adjustments Generally. The number of Warrant Shares issuable upon exercise of Warrants and the number of Warrants outstanding are subject to adjustment from time to time upon the occurrence of the events enumerated in this Article V, as determined to be necessary or appropriate in the reasonable discretion of the Board of Directors of the Company.

Section 5.02    Stock Dividends; Split-Ups. If after the date hereof, and subject to the provisions of Section 5.06, the number of outstanding shares of Common Stock is increased by a stock dividend payable in shares of Common Stock, or by a split-up of shares of Common Stock, or other similar event, then, on the effective date of such stock dividend, split-up or similar event, the number of shares of Common Stock issuable on exercise of each Warrant shall be increased in proportion to such increase in outstanding shares of Common Stock.

Section 5.03    Aggregation of Shares. If after the date hereof, and subject to the provisions of Section 5.06, the number of outstanding shares of Common Stock is decreased by a consolidation, combination, reverse stock split or reclassification of shares of Common Stock or other similar event, then, on the effective date of such consolidation, combination, reverse stock split, reclassification or similar event, the number of shares of Common Stock issuable on exercise of each Warrant shall be decreased in proportion to such decrease in outstanding shares of Common Stock.

Section 5.04    Replacement of Securities upon Reorganization. In case of any reclassification or reorganization of the outstanding shares of Common Stock (other than a change covered by Section 5.02 or 5.03 or that solely affects the par value of such shares of Common Stock), or in the case of any merger or consolidation of the Company with or into another corporation (other than a consolidation or merger in which the Company is the continuing corporation and that does not result in any reclassification or reorganization of the outstanding shares of Common Stock), or in the case of any sale or conveyance to another corporation or entity of the assets or other property of the Company as an entirety or substantially as an entirety in connection with which the Company is dissolved, except in each case, with respect to any such transaction pursuant to which holders of the outstanding Common

11

Stock are entitled to receive cash consideration for such shares, the Holders shall thereafter have the right to receive, upon the basis and upon the terms and conditions specified in the Warrants and in lieu of the shares of the Warrant Shares immediately theretofore receivable upon the exercise of the rights represented thereby, the kind and amount of shares of stock or other securities or property (including cash) receivable upon such reclassification, reorganization, merger or consolidation, or upon a dissolution following any such sale or transfer, that the Holder would have received if such Holder had exercised his, her or its Warrant(s) immediately prior to such event; and if any reclassification also results in a change in shares of Common Stock covered by Section 5.02 or 5.03, then such adjustment shall be made pursuant to Sections 5.02, 5.03 and this Section 5.04. The provisions of this Section 5.04 shall similarly apply to successive reclassifications, reorganizations, mergers or consolidations, sales or other transfers.

Section 5.05    Notices of Changes in Warrant. Upon every adjustment of the number of shares issuable upon exercise of a Warrant, the Company shall give written notice thereof to the Warrant Agent, which notice shall state the increase or decrease, if any, in the number of shares of Common Stock issuable upon the exercise of a Warrant, setting forth in reasonable detail the method of calculation and the facts upon which such calculation is based. Upon the occurrence of any event specified in Section 5.02, 5.03, 5.04 or 5.08, then, in any such event, the Company shall give or cause to be given written notice to each Holder, by press release or at the last address set forth for such Holder in the register books of the Warrant Agent, of the record date or the effective date of the event. Failure to give such notice, or any defect therein, shall not affect the legality or validity of such event. The Warrant Agent shall be fully protected in relying upon such a certificate and shall have no duty to investigate or inquire as to whether such adjustment is accurate, and shall not be deemed to have knowledge of, and shall not be required to take any action with respect to any adjustments, unless and until the Warrant Agent shall have received such a certificate.

Section 5.06    No Fractional Shares. Notwithstanding any provision contained in this Agreement to the contrary, the Company shall not issue fractional shares upon exercise of Warrants. If, by reason of any adjustment made pursuant to this Article V, any Holder would be entitled, upon the exercise of such Warrant, to receive a fractional interest in a share of Common Stock, the Company shall, upon such exercise, round down to the nearest whole number the number of the shares of Common Stock to be issued to the Holder. The Warrant Agent shall not be required to effect any registration of transfer or exchange that will result in the issuance of a Warrant Certificate for a fraction of a share of Common Stock.

Section 5.07    Form of Warrant. The form of Warrant or Warrant Certificate need not be changed because of any adjustment pursuant to this Article V, and Warrant Certificates issued after such adjustment may state the same number of shares as is stated in the Warrant Certificates initially issued pursuant to this Agreement. However, the Company may at any time in its sole discretion make any change in the form of Warrant or Warrant Certificate that the Company may deem appropriate and that does not affect the substance thereof, and any Warrant Certificates thereafter issued or countersigned, whether in exchange or substitution for an outstanding Warrant Certificate or otherwise, may be in the form as so changed.

Section 5.08    Extraordinary Transactions. If the Company's Board of Directors, in connection with an "Extraordinary Transaction" (as defined in the Series A Warrant

12

Agreement), determines to adjust the warrant price or the number of shares of Common Stock issuable upon exercise of the Series A Warrants to reflect such Extraordinary Transaction, the number of shares issuable upon exercise of a Warrant shall also be appropriately adjusted as determined in good faith by the Company's Board of Directors.

Section 5.09   De Minimis Adjustments.   No adjustment in the number of Warrant Shares issuable hereunder shall be required unless such adjustment would require an increase or decrease of at least one percent (1%) in the number of Warrant Shares issuable upon the exercise of each Warrant; *provided, however,* that any adjustments which by reason of this paragraph (c) are not required to be made shall be carried forward and taken into account in any subsequent adjustment.  All calculations shall be made to the nearest cent and to the nearest one-hundredth of a Warrant Share, as the case may be.

## ARTICLE VI
## CONCERNING THE WARRANT AGENT

Section 6.01   Warrant Agent.

The Company hereby appoints the Warrant Agent to act as agent of the Company in respect of the Warrants and the Warrant Certificates upon the express terms and subject to the conditions herein and in the Warrant Certificates (and no implied terms); and the Warrant Agent hereby accepts such appointment.  The Warrant Agent shall have the powers and authority granted to and conferred upon it in the Warrant Certificates and herein and such further powers and authority to act on behalf of the Company as the Company may hereafter grant to or confer upon it.  All of the terms and provisions with respect to such powers and authority contained in the Warrant Certificates are subject to and governed by the terms and provisions hereof.

Section 6.02   Conditions of Warrant Agent's Obligations.

(a)   The Warrant Agent accepts its obligations herein set forth upon the express terms and conditions hereof (and no implied terms), including the following, to all of which the Company agrees and to all of which the rights hereunder of the Holders from time to time of the Warrant Certificates shall be subject:

(i)   *Compensation and Indemnification.*   The Company agrees promptly to pay the Warrant Agent the compensation to be agreed upon with the Company for all services rendered by the Warrant Agent and to reimburse the Warrant Agent for reasonable out-of-pocket expenses (including the reasonable fees and expenses of its counsel) incurred by the Warrant Agent without gross negligence, bad faith or willful misconduct (each as determined by a final, non-appealable judgment of a court of competent jurisdiction) on its part in connection with the preparation, delivery, acceptance, administration, execution and amendment of this Agreement and the exercise and performance of its duties hereunder.  The Company also agrees to indemnify the Warrant Agent for, and to hold it harmless against, any loss, liability, suit, action, proceeding, judgment, claim, settlement, cost or expense (including the reasonable fees and

13

expenses of its counsel) incurred without gross negligence, bad faith or willful misconduct on the part of the Warrant Agent, (each as determined by a final, non-appealable judgment of a court of competent jurisdiction), for any action taken, suffered or omitted to be taken by the Warrant Agent in connection with the preparation, delivery, acceptance, administration, execution and amendment of the Agreement and the exercise and performance of its duties hereunder, including the costs and expenses of defending against any claim of liability arising therefrom, directly or indirectly. The provisions of this Section 6.02(a)(i) shall survive the termination of this Agreement and the replacement, removal or resignation of the Warrant Agent.

(ii)    *Agent for the Company.* In acting under this Agreement and in connection with the Warrants and the Warrant Certificates, the Warrant Agent is acting solely as agent of the Company and does not assume any obligation or relationship of agency or trust for or with any of the Holders of Warrant Certificates or beneficial owners of Warrants.

(iii)    *Counsel.* The Warrant Agent may consult with counsel satisfactory to it in its reasonable judgment (who may be counsel for the Company or in-house counsel of the Warrant Agent), and the advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder, in the absence of gross negligence, bad faith or willful misconduct, and in accordance with the advice of such counsel.

(iv)    *Documents.* Subject to Section 2.03(g), the Warrant Agent shall be protected and shall incur no liability for or in respect of any action taken, suffered or omitted to be taken by it in reliance upon any Warrant Certificate, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been presented or signed by the proper parties.

(v)    *Certain Transactions.* The Warrant Agent, and its officers, directors, employees, agents and affiliates, may become the owner of, or acquire any interest in, Warrants, with the same rights that it or they would have if it were not the Warrant Agent hereunder, and, to the extent permitted by applicable law, it or they may engage or be interested in any financial or other transaction with the Company and may act on, or as depositary, trustee or agent for, any committee or body of holders of Warrant Shares or other obligations of the Company as freely as if it were not the Warrant Agent hereunder.

(vi)    *No Liability for Interest.* The Warrant Agent shall have no liability for interest on any monies at any time received by it pursuant to any of the provisions of this Agreement or of the Warrant Certificates.

(vii)    *No Liability for Invalidity.* The Warrant Agent shall not be under any responsibility with respect to the validity or sufficiency of this

14

Agreement or the execution and delivery hereof (except the due authorization to execute this Agreement and the due execution and delivery hereof by the Warrant Agent) or subject to Section 2.03(g), with respect to the validity or execution of any Warrant Certificates (except its countersignature thereof).

(viii)    *No Liability for Recitals*.  The recitals contained herein shall be taken as the statements of the Company and the Warrant Agent assumes no liability for the correctness of the same.

(ix)    *No Implied Obligations*.  The Warrant Agent shall be obligated to perform only such duties as are herein and in the Warrant Certificates specifically set forth and no implied duties or obligations shall be read into this Agreement or the Warrant Certificates against the Warrant Agent.  The Warrant Agent shall not be under any obligation to expend or risk its own funds or take any action hereunder or at the request of any Warrant Holder or other Person which may tend to involve it in any expense or liability unless it has received indemnity reasonably satisfactory to it or, the payment of which within a reasonable time is not, in its opinion, assured to it.  The Warrant Agent shall not be accountable or under any duty or responsibility for the use by the Company of any of the Warrant Certificates countersigned by the Warrant Agent and delivered by it to the Company pursuant to this Agreement or for the application by the Company of the proceeds of the Warrant Certificates.  The Warrant Agent shall have no duty or responsibility in case of any default by the Company in the performance of its covenants or agreements contained herein or in the Warrant Certificates or in the case of the receipt of any written demand from a Holder of a Warrant Certificate with respect to such default, including, without limiting the generality of the foregoing, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or, except as provided in Section 7.02, to make any demand upon the Company.

(x)    *Agents*.  The Warrant Agent may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys-in-fact, provided reasonable care has been exercised in the selection and continued employment of such agent or attorney-in-fact.

(xi)    *Liability*.  Notwithstanding anything in this Agreement to the contrary, in no event shall the Warrant Agent be liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Warrant Agent has been advised of the likelihood of the loss or damage and regardless of the form of the action.  Any liability of the Warrant Agent under this Agreement shall be limited to the amount of annual fees paid by the Company to the Warrant Agent.  The provisions of this Section 6.02(a)(xi) shall survive the termination of this Agreement and the replacement, removal or resignation of the Warrant Agent.

15

(xii)   *Force Majeure.*  In no event shall the Warrant Agent be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused by, directly or indirectly, forces beyond its reasonable control, including without limitation strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software or hardware) services ("Force Majeure").  In the event of any such excused delay, the time for performance shall be extended for a period equal to the time lost by reason of the delay; *provided, however,* that the Warrant Agent shall use all commercially reasonable efforts to avoid and to remove such causes of non-performance and shall continue performance hereunder promptly following the removal of such causes.

Section 6.03   Resignation and Appointment of Successor.

(a)   The Company agrees, for the benefit of the Holders from time to time of the Warrant Certificates, that there shall at all times be a Warrant Agent hereunder until all the Warrants have been exercised or are no longer exercisable.

(b)   The Warrant Agent may at any time resign as such by giving written notice of its resignation to the Company, specifying the desired date on which its resignation shall become effective; *provided, however,* that such date shall be not less than 30 days after the date on which such notice is given unless the Company agrees to accept shorter notice.  Upon receiving such notice of resignation, the Company shall promptly appoint a successor Warrant Agent (which shall be a bank or trust company in good standing, authorized under the laws of the jurisdiction of its organization to exercise corporate trust powers) by written instrument in duplicate signed on behalf of the Company, one copy of which shall be delivered to the resigning Warrant Agent and one copy to the successor Warrant Agent.  The Company may, at any time and for any reason, remove the Warrant Agent and appoint a successor Warrant Agent (qualified as aforesaid) by written instrument in duplicate signed on behalf of the Company and specifying such removal and the date when it is intended to become effective, one copy of which shall be delivered to the Warrant Agent being removed and one copy to the successor Warrant Agent.  Any resignation or removal of the Warrant Agent and any appointment of a successor Warrant Agent shall become effective upon acceptance of appointment by the successor Warrant Agent as provided in this subsection (b).  In the event a successor Warrant Agent has not been appointed and accepted its duties within 30 days of the Warrant Agent's notice of resignation, the Warrant Agent may apply to any court of competent jurisdiction for the designation of a successor Warrant Agent.  Upon its resignation, replacement or removal, the Warrant Agent shall be entitled to the payment by the Company of the compensation and to the reimbursement of all reasonable out-of-pocket expenses incurred by it hereunder as agreed to in Section 6.02(a).

(c)   The Company shall remove the Warrant Agent and appoint a successor Warrant Agent if the Warrant Agent (i) shall become incapable of acting, (ii) shall be adjudged bankrupt or insolvent, (iii) shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment

16

of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, (iv) shall consent to, or shall have had entered against it a court order for, any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceedings commenced against it, (v) shall make a general assignment for the benefit of creditors or (vi) shall fail generally to pay its debts as they become due. Upon the appointment as aforesaid of a successor Warrant Agent and acceptance by it of such appointment, the predecessor Warrant Agent shall, if not previously disqualified by operation of law, cease to be Warrant Agent hereunder.

(d)    Any successor Warrant Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and the Company an instrument accepting such appointment hereunder, and thereupon such successor Warrant Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, immunities, duties and obligations of such predecessor with like effect as if originally named as Warrant Agent hereunder, and such predecessor shall thereupon become obligated to transfer, deliver and pay over, and such successor Warrant Agent shall be entitled to receive, all monies, securities and other property on deposit with or held by such predecessor as Warrant Agent hereunder.

(e)    Any person into which the Warrant Agent hereunder may be merged or converted or any person with which the Warrant Agent may be consolidated, or any person resulting from any merger, conversion or consolidation to which the Warrant Agent shall be a party, or any person to which the Warrant Agent shall sell or otherwise transfer all or substantially all the assets and business of the Warrant Agent, *provided* that it shall be qualified as aforesaid, shall be the successor Warrant Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

## ARTICLE VII
## MISCELLANEOUS

Section 7.01    Amendment. The terms of the Warrants may be amended by the Company together with the affirmative vote or consent of the Holders of a majority of the Warrants. The Company and the Warrant Agent may from time to time supplement or amend this Agreement without the approval of any Holders in order to cure any ambiguity, manifest error or other mistake in this Agreement, or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein, or to make any other provisions in regard to matters or questions arising hereunder that the Company and the Warrant Agent may deem necessary or desirable and that shall not adversely affect, alter or change the interests of any Holder. Notwithstanding anything to the contrary herein, upon the delivery of a certificate from an appropriate officer of the Company, which states that the proposed supplement or amendment is in compliance with the terms of this Section 8.01 and, provided such supplement or amendment does not change the Warrant Agent's own rights, duties, liabilities, immunities or obligations hereunder, the Warrant Agent shall execute such supplement or amendment. Any amendment, modification or waiver effected pursuant to and in accordance with the provisions of this Section 8.01 will be binding upon all Holders and upon each future Holder, the Company and the Warrant Agent. In the event of any amendment, modification or waiver, the Company will give prompt notice thereof to all Holders.

17

Section 7.02   Notices and Demands to the Company and Warrant Agent. If the Warrant Agent shall receive any notice or demand addressed to the Company by the Holder of a Warrant Certificate pursuant to the provisions of the Warrant Certificates, the Warrant Agent shall promptly forward such notice or demand to the Company.

Section 7.03   Addresses. Any communication from the Company to the Warrant Agent with respect to this Agreement shall be addressed to Mellon Investor Services LLC, 200 W. Monroe Street, Suite 1590, Chicago, IL 60606, Attention: Georg Drake, with a copy to Mellon Investor Services LLC, 480 Washington Boulevard, Jersey City, NJ 07310, Attention: Legal Department, and any communication from the Warrant Agent to the Company with respect to this Agreement shall be addressed to Hayes Lemmerz International, Inc., 15300 Centennial Drive, Northville, MI 48167, Attention: General Counsel (or such other address as shall be specified in writing by the Warrant Agent or by the Company). For the avoidance of doubt, the Company may satisfy its obligation to provide the Warrant Agent with a written order or direction pursuant to this Agreement through the use of electronic mail delivered to the Warrant Agent.

Section 7.04   Applicable Law. The validity, interpretation and performance of this Agreement and each Warrant Certificate issued hereunder and of the respective terms and provisions hereof and thereof shall be governed by, and construed in accordance with, the laws of the State of Delaware.

Section 7.05   Obtaining of Governmental Approval. The Company from time to time will use its best efforts to obtain and keep effective any and all permits, consents and approvals of governmental agencies and authorities and to make any necessary filings under federal or state securities laws, which may become requisite in connection with the issuance, sale, transfer and delivery of the Warrant Certificates, the exercise or conversion of the Warrants, the issuance, sale, transfer and delivery of the Warrant Shares.

Section 7.06   Persons Having Rights Under Warrant Agreement. Nothing contained in the Warrant shall be construed as conferring upon the Holder the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or any other matter, to receive dividends or any rights whatsoever as stockholders of the Company. Each Holder shall be entitled to receive the same information and reports to which a holder of the Common Stock is entitled pursuant to the Stockholders Agreement then in effect, subject to execution of an appropriate confidentiality agreement.

Section 7.07   Headings. The descriptive headings of the several Articles and Sections of this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 7.08   Counterparts. This Agreement may be executed in any number of counterparts, each of which as so executed shall be deemed to be an original, but such counterparts shall together constitute but one and the same instrument.

18

Section 7.09   Inspection of Agreement. A copy of this Agreement shall be available at all reasonable times at the principal corporate trust office of the Warrant Agent for inspection by the Holder of any Warrant Certificate. The Warrant Agent may require such Holder to submit his Warrant Certificate for inspection by it.

Section 7.10   Notices to Holders of Warrants. Any notice to Holders of Warrants evidenced by Warrant Certificates which by any provisions of this Warrant Agreement is required or permitted to be given shall be given by first class mail prepaid at such Holder's address as it appears on the books of the Warrant Agent.

Section 7.11   Binding Effects. This Agreement shall inure to the benefit and shall be binding upon the Company, the Warrant Agent and the Holders and their respective heirs, legal representatives, successors and assigns. Nothing in this Agreement, express or implied, is intended to or shall confer on any Person other than the Company, the Warrant Agent and the Holders, or their respective heirs, legal representatives, successors or assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

Section 7.12   Severability. In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable, the validity, legality and enforceability of any such provisions in every other respect and of the remaining provisions contained herein and therein shall not be affected or impaired thereby; provided, that if any such excluded term, provision, covenant or restriction shall materially adversely affect the rights, immunities, duties or obligations of the Warrant Agent, the Warrant Agent shall be entitled to resign by giving not less than ten (10) days prior written notice to the Company. In the event a successor Warrant Agent has not been appointed and accepted its duties within ten (10) days of the Warrant Agent's notice of resignation, the Warrant Agent may apply to any court of competent jurisdiction for the designation of a successor to the Warrant Agent.

[SIGNATURE PAGE FOLLOWS]

19

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

HAYES LEMMERZ INTERNATIONAL, INC.

By: _____

Name:

Title:

MELLON INVESTOR SERVICES LLC

By: _____

Name:

Title:

SCHEDULE 1

**HLI - Share Count Analysis**

*Scenarios Assume Cash Settlement of Exercised Warrants*

| | |
|---|---|
| Shares Outstanding at Emergence | 10,000,000 |
| Shares Authorized | 20,000,000 |

| | |
|---|---|
| Tranche A Warrants | 555,555 |
| Tranche B Warrants | 555,555 |

| | |
|---|---|
| Pre-petition debt held by DIP Lenders | $ 285,584,531 |
| Pre-petition Consenting Lenders | 192,432,416 |
| Pre-petition Non-Consenting Lenders | 28,324,933 |
| Total Pre-Petition Debt | $ 506,341,880 |
| Equity to Pre-petition Lenders Under Plan | 4% |

| | Emergence | | Exercise of Tranche A Only Pre Anti-Dilution | | | Exercise of Tranche A/B Warrants Pre Anti-Dilution | | |
|---|---|---|---|---|---|---|---|---|
| DIP Lenders | 8,450,000 | 84.50% | 8,450,000 | 80.05% | | 8,450,000 | 76.05% | |
| | | | | | | | | |
| Pre-Petition Lenders | | | | | | | | |
| Pre-Petition Lender Consent Fee | 850,000 | 8.50% | 850,000 | 8.05% | | 850,000 | 7.65% | |
| Pre-Petition Consenting Lender Equity | 348,677 | 3.49% | 348,677 | 3.30% | | 348,677 | 3.14% | |
| Tranche C/D Anti-Dilution Warrants | 0 | 0.00% | 0 | 0.00% | | 0 | 0.00% | |
| Total Consenting Pre-Petition Lenders | 1,198,677 | 11.99% | 1,198,677 | 11.36% | | 1,198,677 | 10.79% | |
| Non-consenting Pre-Petition Lender Equity | 51,323 | 0.51% | 51,323 | 0.49% | | 51,323 | 0.46% | |
| Total Pre-Petition Lenders | 1,250,000 | 12.50% | 1,250,000 | 11.84% | | 1,250,000 | 11.25% | |
| | | | | | | | | |
| Foreign Creditor Distribution | | | | | | | | |
| PBGC/Noteholders | 300,000 | 3.00% | 300,000 | 2.84% | | 300,000 | 2.70% | |
| Tranche A/B Warrants Exercised | 0 | 0.00% | 555,555 | 5.26% | | 1,111,110 | 10.00% | |
| Tranche E/F Anti-Dilution Warrants | 0 | 0.00% | 0 | 0.00% | | 0 | 0.00% | |
| Total Foreign Creditor Distribution | 300,000 | 3.00% | 855,555 | 8.11% | | 1,411,110 | 12.70% | |
| | | | | | | | | |
| Total Shares | 10,000,000 | 100.00% | 10,555,555 | 100.00% | | 11,111,110 | 100.00% | |

EXHIBIT A

[FORM OF WARRANT CERTIFICATE]

[Face]

EXERCISABLE ONLY AUTOMATICALLY FROM TIME TO TIME AS PROVIDED HEREIN

VOID AFTER THE CLOSE OF BUSINESS ON _____, 2016
HAYES LEMMERZ INTERNATIONAL, INC.

Warrant Certificate representing
Series C[4] Warrants to receive
Common Stock, par value $0.01 per share
as described herein

_____ Warrants

    This certifies that [_____] or registered assigns is the registered owner of the above indicated number of Series C Warrants[5] (each, a "Warrant"), each Warrant entitling such registered owner to receive, one share of the Common Stock, par value $0.01 per share (the "Warrant Shares") of Hayes Lemmerz International, Inc. (the "Company") on the following basis.

    The Warrant may be exercised in whole or in part at any time on or before 5:00 p.m. New York City time on _____, 2016, or such earlier date and time at which the Series A Warrants[6] of the Company (the "Series A Warrants") are no longer exercisable (in either case, such date and such time, the "Expiration Date"); *provided further, that* for the avoidance of doubt, the foregoing proviso shall not affect a Holder's entitlement to replacement securities pursuant to Section 5.04 of the Warrant Agreement. Each Warrant not exercised at or before the Expiration Date shall become void, and all rights of the Holder and any beneficial owners of the Warrant Certificate evidencing such Warrant under the Warrant Agreement shall cease.

    Prior to the Expiration Date, each Warrant shall entitle the Holder thereof, subject to the provisions of this Agreement, to receive from the Company one Warrant Share. The Warrants shall be automatically exercised at each time, and only to the extent, at least 5% of the then

---

[4] Series D Warrant Certificate will state "Series D"

[5] Series D Warrant Certificate will state "Series D"

[6] Series D Warrant Certificate will state "Series B"

outstanding Series A Warrants[7] not previously exercised (the "Minimum Exercise Threshold") have been exercised (any such time a Series A Warrant[8] is exercised, an "Exercise Time"); provided that the Minimum Exercise Threshold shall not apply with respect to any exercise of a Warrant (i) in connection with an IPO (as defined in the Series A Warrant Agreement) or any Triggering Event or (ii) within sixty (60) days of the Expiration Date. The number of shares of common stock to which an individual Holder shall be entitled under the Warrant at a given Exercise Time (the "Vested Warrant Shares") shall be based upon the number of Series A Warrants exercised at that particular Exercise Time (the "Aggregate Exercised Series A Share Amount"), in accordance with the following formula:

$$\text{Vested Warrant Shares} = 76{,}583 * (x/555{,}555) * (y/76{,}583)$$

where:

76,583 = the Aggregate Maximum Series C Warrant Shares.[9]

$x$ = the Aggregate Exercised Series A Share Amount.

555,555 = the "Aggregate Exercisable Series A Warrant Shares."

$y$ = the Base Warrant Shares

For illustration purposes, a pro forma capitalization table is set forth on Schedule 1 hereto showing the share ownership of the Company in the event of exercise of (i) all Series A Warrants, Series C Warrants and Series E Warrants and (ii) all Series A Warrants, Series B Warrants, Series C Warrants, Series D Warrants, Series E Warrants and Series F Warrants. The Warrants may not be exercised in any manner other than as provided herein.

If this Warrant is automatically exercised, the Company or the Warrant Agent shall notify the Holder of the automatic exercise as soon as reasonably practicable, and the Holder shall surrender this Warrant Certificate to the Warrant Agent (as hereinafter defined), at the office of Mellon Investor Services LLC, or its successor as warrant agent (the "Warrant Agent") at the addresses specified on the reverse hereof and upon compliance with and subject to the conditions set forth herein and in the Warrant Agreement dated as of _____, 2009 (the "Warrant Agreement"). Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Warrant Agreement.

The term "Holder" as used herein shall mean the person in whose name at the time this Warrant Certificate shall be registered upon the books to be maintained by the Warrant Agent for that purpose pursuant to Section 4.01 of the Warrant Agreement.

---

[7] Series D Warrant Certificate will refer to "Series B"

[8] Series D Warrant Certificate will refer to "Series B"

[9] Aggregate Maximum Series D Warrant Shares will be 77,801

In case an exercise of Warrants is for a number of shares fewer than the number of Warrants evidenced by this Warrant Certificate, a new Warrant or Warrants of like tenor, calling in the aggregate on the face or faces of this Warrant Certificate or Warrant Certificates for the number of shares of Common Stock equal (without giving effect to any adjustment thereof) to the number of such shares called for on the face of the Warrant Certificate minus the number of such shares so exercised, shall be issued and delivered to the Holder or its registered assigns.

This Warrant Certificate is issued under and in accordance with the Warrant Agreement, between the Company and the Warrant Agent and is subject to the terms and provisions contained in the Warrant Agreement, to all of which terms and provisions the Holder of this Warrant Certificate consents by acceptance hereof. Copies of the Warrant Agreement are on file at the above-mentioned office of the Warrant Agent.

After authentication by the Warrant Agent and prior to the expiration of this Warrant Certificate, this Warrant Certificate may be exchanged at the corporate trust office of the Warrant Agent for Warrant Certificates representing the same aggregate number of Warrants.

Neither this Warrant Certificate nor the Warrant evidenced hereby, shall, and nothing contained in the Warrant Agreement shall be construed to entitle the registered owner hereof, or any beneficial owner, to any of the rights of a registered holder or beneficial owner of the Warrant Shares, including, without limitation, the right to vote or to consent or to receive notice as a stockholder in respect of any meetings of stockholders for the election of directors of the Company or any other matter, to receive dividends on Warrant Shares or any rights whatsoever as stockholders of the Company.

Reference is hereby made to the further provisions of this Warrant Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Warrant Certificate shall not be valid or obligatory for any purpose until authenticated by the Warrant Agent.

IN WITNESS WHEREOF, the Company has caused this Warrant Certificate to be duly executed.

Dated:_____

HAYES LEMMERZ INTERNATIONAL, INC

By:_____

Attest:

_____

Certificate of Authentication

This is one of the Warrant Certificates referred to in the within-mentioned Warrant Agreement.

_____

MELLON INVESTOR SERVICES LLC,
    As Warrant Agent

By:_____
    Authorized Signature

A-4

[REVERSE] [FORM OF WARRANT CERTIFICATE]
(Instructions for Exercise of Warrants)

To receive a certificate for Warrant Shares representing any exercised Warrants evidenced hereby, the Holder of this Warrant Certificate must complete the information required below and present in person or mail by registered mail this Warrant Certificate to the Warrant Agent at the addresses set forth below.

[FORM OF EXERCISE]
(To be executed upon exercise of Warrants.)

The undersigned hereby submits _____ Warrants, represented by this Warrant Certificate, in order to receive _____ shares of Class A Common Stock, par value $0.01 per share (the "Warrant Shares") of Hayes Lemmerz International, Inc.

The undersigned requests the shares of common stock, par value $0.01 per share (the "Warrant Shares") of Hayes Lemmerz International, Inc. to which the Holder is entitled (the "Vested Warrant Shares") be in fully registered form, in the authorized denominations, registered in such names and delivered, all as specified in accordance with the instructions set forth below.

If the Vested Warrant Shares is less than the maximum number of Warrant Shares subject to this Warrant Certificate, the undersigned requests that a new Warrant Certificate or Warrants of like tenor representing the remaining balance of the Warrants evidenced hereby be issued and delivered to the undersigned unless otherwise specified in the instructions below.

Dated: _____

Name _____
        (Please Print)


_____
(Insert Social Security or Other
Identifying Number of Holder)

Address _____

_____

Signature _____
        (Signed exactly as name appears
        on the other side of this Warrant
        Certificate)

This Warrant may be exercised at the following addresses:
        By hand at        _____

                          _____

                          _____

A-5

By mail at        _____

                  _____

                  _____
                  _____
                  _____

(Instructions as to form and delivery of Warrant Shares and/or Warrant Certificates):

**(NOTE:  The signature(s) must be medallion guaranteed by a commercial bank or trust company in the United States or by a member firm of the New York Stock Exchange)**

[FORM OF ASSIGNMENT]

(TO BE EXECUTED TO TRANSFER THE WARRANT CERTIFICATE)

FOR VALUE RECEIVED _____ hereby sells, assigns and transfers unto
Please insert social
security or other
identifying number)

_____

_____
(Please print name and address
including zip code)

__ the right represented by the within Warrant Certificate and does hereby irrevocably constitute and appoint _____, Attorney, to transfer said Warrant Certificate on the books of the Warrant Agent with full power of substitution.

Dated: _____

_____
Signature
(Signed exactly as name appears on the
other side of this Warrant Certificate)

Signature Guarantee:

_____
Participant in a recognized Signature
Guarantee Medallion Program (or other
signature guarantor program reasonably
acceptable to the Warrant Agent)

(NOTE:  The signature(s) must be medallion guaranteed by a commercial bank or trust company in the United States or by a member firm of the New York Stock Exchange)

A-7

SCHEDULE 1

**HLI - Share Count Analysis**

*Scenarios Assume Cash Settlement of Exercised Warrants*

| | |
|---|---:|
| **Shares Outstanding at Emergence** | **10,000,000** |
| **Shares Authorized** | **20,000,000** |

| | |
|---|---:|
| **Tranche A Warrants** | **555,555** |
| **Tranche B Warrants** | **555,555** |

| | |
|---|---:|
| Pre-petition debt held by DIP Lenders | $ 285,584,531 |
| Pre-petition Consenting Lenders | 192,432,416 |
| Pre-petition Non-Consenting Lenders | 28,324,933 |
| **Total Pre-Petition Debt** | **$ 506,341,880** |
| **Equity to Pre-petition Lenders Under Plan** | **4%** |

| | Emergence | | Exercise of Tranche A Only Pre Anti-Dilution | | Exercise of Tranche A/B Warrants Pre Anti-Dilution | |
|---|---:|---:|---:|---:|---:|---:|
| DIP Lenders | 8,450,000 | 84.50% | 8,450,000 | 80.05% | 8,450,000 | 76.05% |
| **Pre-Petition Lenders** | | | | | | |
| Pre-Petition Lender Consent Fee | 850,000 | 8.50% | 850,000 | 8.05% | 850,000 | 7.65% |
| Pre-Petition Consenting Lender Equity | 348,677 | 3.49% | 348,677 | 3.30% | 348,677 | 3.14% |
| Tranche C/D Anti-Dilution Warrants | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Total Consenting Pre-Petition Lenders | 1,198,677 | 11.99% | 1,198,677 | 11.36% | 1,198,677 | 10.79% |
| Non-consenting Pre-Petition Lender Equity | 51,323 | 0.51% | 51,323 | 0.49% | 51,323 | 0.46% |
| Total Pre-Petition Lenders | 1,250,000 | 12.50% | 1,250,000 | 11.84% | 1,250,000 | 11.25% |
| **Foreign Creditor Distribution** | | | | | | |
| PBGC/Noteholders | 300,000 | 3.00% | 300,000 | 2.84% | 300,000 | 2.70% |
| Tranche A/B Warrants Exercised | 0 | 0.00% | 555,555 | 5.26% | 1,111,110 | 10.00% |
| Tranche E/F Anti-Dilution Warrants | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Total Foreign Creditor Distribution | 300,000 | 3.00% | 855,555 | 8.11% | 1,411,110 | 12.70% |
| **Total Shares** | **10,000,000** | **100.00%** | **10,555,555** | **100.00%** | **11,111,110** | **100.00%** |

**L-3 Form of Series E & F Warrants Agreement**

Execution Version

HAYES LEMMERZ INTERNATIONAL, INC.

and

MELLON INVESTOR SERVICES LLC,

as Warrant Agent

WARRANT AGREEMENT

Dated as of _____, 2009

Warrants to Receive Common Stock, par value $.01 per share

**TABLE OF CONTENTS**

**Page**

ARTICLE I ISSUANCE OF WARRANTS AND EXECUTION AND DELIVERY OF
WARRANT CERTIFICATES.................................................................................2

Section 1.01            Issuance of Warrants...............................................2

Section 1.02            Execution and Delivery of Warrant Certificates. ............2

Section 1.03            Issuance of Warrant Certificates..............................3

ARTICLE II WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS ..............4

Section 2.01            Reserved. ...........................................................4

Section 2.02            Duration of Warrants ............................................4

Section 2.03            Exercise of Warrants.............................................5

Section 2.04            Reservation of Warrant Shares ................................7

ARTICLE III OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF
WARRANT .................................................................................................8

Section 3.01            No Rights as Stockholder Conferred by Warrants or
                        Warrant Certificates .............................................8

Section 3.02            Lost, Mutilated, Stolen or Destroyed Warrant Certificates............8

ARTICLE IV EXCHANGE AND TRANSFER ......................................................9

Section 4.01            Exchange and Transfer............................................9

Section 4.02            Restrictions on Transfer; Restrictive Legend ...............10

Section 4.03            Treatment of Holders of Warrant Certificates. ..............11

Section 4.04            Cancellation of Warrant Certificates...........................11

ARTICLE V ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT
SECURITIES ..............................................................................................11

Section 5.01            Adjustments Generally............................................11

Section 5.02            Stock Dividends; Split-Ups.....................................11

Section 5.03            Aggregation of Shares............................................11

Section 5.04            Replacement of Securities upon Reorganization. ............12

Section 5.05            Notices of Changes in Warrant..................................12

Section 5.06            No Fractional Shares.............................................12

i

Section 5.07        Form of Warrant. ...............................................................13

Section 5.08        Extraordinary Transactions. ..............................................13

Section 5.09        De Minimis Adjustments. ....................................................13

ARTICLE VI CONCERNING THE WARRANT AGENT ....................................13

Section 6.01        Warrant Agent. ...................................................................13

Section 6.02        Conditions of Warrant Agent's Obligations. ..................13

Section 6.03        Resignation and Appointment of Successor.....................16

ARTICLE VII MISCELLANEOUS.......................................................................17

Section 7.01        Amendment. .........................................................................17

Section 7.02        Notices and Demands to the Company and Warrant Agent..........18

Section 7.03        Addresses. ............................................................................18

Section 7.04        Applicable Law.....................................................................18

Section 7.05        Obtaining of Governmental Approval. ..............................18

Section 7.06        Persons Having Rights Under Warrant Agreement. ...........18

Section 7.07        Headings. .............................................................................19

Section 7.08        Counterparts. ......................................................................19

Section 7.09        Inspection of Agreement. ...................................................19

Section 7.10        Notices to Holders of Warrants. .......................................19

Section 7.11        Binding Effects ...................................................................19

Section 7.12        Severability..........................................................................19

SCHEDULE

Schedule 1              Pro Forma Capitalization Table

EXHIBIT

Exhibit A               Form of Warrant Certificate

WARRANT AGREEMENT

THIS AGREEMENT dated as of _____, 2009 (the "Effective Date") between HAYES LEMMERZ INTERNATIONAL, INC., a Delaware corporation (the "Company"), and MELLON INVESTOR SERVICES LLC, a New Jersey limited liability company, as Warrant Agent (the "Warrant Agent").

WITNESSETH:

WHEREAS, on May 11, 2009, the Company and certain of the Company's direct and indirect subsidiaries each filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") initiating cases under chapter 11 of title 11 of the United States Code §§ 101-1330 and continued in the possession of their assets and in the management of their businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code; and

WHEREAS, the [Plan of Reorganization of [Hayes Lemmerz International, Inc., et al.], as confirmed on [_____], 2009 by an order of the Bankruptcy Court entered on [_____], 2009 (the "Plan") provides that the Company shall issue to certain holders of prepetition secured obligations (the "Prepetition Secured Lenders") an aggregate of 1,198,677 shares (the "Prepetition Secured Lenders Shares") of the Company's Class A Common Stock, par value $0.01 per share (the "Class A Common Stock") and/or Class B Common Stock, par value $0.01 per share (the "Class B Common Stock" and, together with the Class A Common Stock, the "Common Stock") representing 11.99% of the 10,000,000 shares of Common Stock to be issued on the effective date of the Plan as contemplated therein (the "New Common Stock"); and

WHEREAS, the Plan provides that the Company shall also issue to certain holders of the 8.25% Senior Notes due 2015 of Hayes Lemmerz Finance LLC – Luxembourg S.C.A. (the "Noteholders") and to the Pension Benefit Guaranty Corporation (together with the Noteholders, the "Holders") (i) an aggregate of 300,000 shares (the "Holders Shares") of Common Stock, representing 3% of the New Common Stock; (ii) Series A Warrants of the Company (the "Series A Warrants") entitling the Holders to purchase up to 555,555 shares of Common Stock (the "Series A Warrant Shares") representing in aggregate up to 5% (on a fully diluted basis) of the number of shares of New Common Stock, Series A Warrant Shares and Series B Warrant Shares; and (iii) Series B Warrants of the Company (the "Series B Warrants") entitling the Holders to purchase up to 555,555 shares of Common Stock (the "Series B Warrant Shares") representing, together with the Series A Warrant Shares, up to 10% (on a fully diluted basis) of the number of shares of New Common Stock, Series A Warrant Shares and Series B Warrant Shares (the Holders Shares, together with the Series A Warrant Shares and Series B Warrant Shares actually issued as a result of the exercise of Series A Warrants and Series B Warrants, are referred to as the "Issued Holders Shares" and the aggregate percentage of the New Common Stock, issued Series A Warrant Shares and issued Series B Warrant Shares that such Issued Holders Shares represents, the "Issued Holders Shares Percentage");

WHEREAS, the Plan provides that the Company shall also issue, to those Prepetition Secured Lenders entitled to receive a Consent Fee (as defined in the Plan), pursuant to the Plan, Series C Warrants of the Company (the "Series C Warrants") and Series D Warrants

(the "Series D Warrants") of the Company, entitling the Prepetition Secured Lenders to receive shares of Common Stock in order to offset dilution of the Prepetition Secured Lenders Shares, if any, as a result of the exercise of the warrants described in these recitals; and

WHEREAS, the Plan provides that the Company shall also issue, to the Holders, Series E Warrants of the Company (the "Warrants"), entitling the Holders to receive, by surrendering the certificates representing the Warrants (the "Warrant Certificates") and without the need to pay any additional consideration therefor, shares of Common Stock (the "Warrant Shares") in order to offset dilution of the Issued Holders Shares, if any, as a result of the exercise of the Series C Warrants; and

WHEREAS, the Plan provides that the Company shall also issue to the Holders Series F Warrants of the Company (the "Series F Warrants"), entitling the Holders to receive shares of Common Stock in order to offset dilution of the Issued Holders Shares, if any, as a result of the exercise of the Series D Warrants; and

WHEREAS, the Company desires the Warrant Agent to act on behalf of the Company in connection with the issuance, transfer, exchange, exercise and replacement of the Warrant Certificates, and in this Agreement wishes to set forth, among other things, the form and provisions of the Warrant Certificates and the terms and conditions on which they may be issued, transferred, exchanged, exercised and replaced;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## ISSUANCE OF WARRANTS AND EXECUTION AND DELIVERY OF WARRANT CERTIFICATES

Section 1.01    Issuance of Warrants.  The Warrants shall be evidenced by one or more Warrant Certificates.  Each Warrant evidenced thereby shall represent the right, subject to the provisions contained herein and therein, to receive one share of the Warrant Shares.  The Company, on the date hereof shall deliver to each Holder duly executed Warrant Certificates registered in the name of each Holder for the number of Warrant Shares required pursuant to the Plan (for each such Holder, the "Base Warrant Shares").  Upon exercise pursuant to the terms herein, the Warrants shall initially entitle the Holders of such Warrants to receive up to a maximum of 6,755 shares of Common Stock, as such amount may be adjusted from time to time pursuant to this Agreement (the "Aggregate Maximum Series E Warrant Shares").

Section 1.02    Execution and Delivery of Warrant Certificates.

(a)    Each Warrant shall be evidenced by a Warrant Certificate in registered form substantially in the form set forth in Exhibit A hereto, shall be dated and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the officers of the Company executing the same may approve (execution thereof to be conclusive evidence of such approval)

2

and as are not inconsistent with the provisions of this Agreement, or as may be required to comply with any law or with any rule or regulation made pursuant thereto. The Warrant Certificates shall be signed on behalf of the Company by its chairman or vice chairman of the Board of Directors of the Company (the "Board of Directors"), the chief financial officer, the president, any vice president, any assistant vice president, the treasurer or any assistant treasurer of the Company, which may but need not be attested by its secretary or one of its assistant secretaries. Such signatures may be manual or facsimile signatures of such authorized officers and may be imprinted or otherwise reproduced on the Warrant Certificates. The Warrant Certificates shall be subject to all of the terms and conditions of the Warrant Agreement, which terms and conditions shall be incorporated therein by reference and made a part thereof. Notwithstanding anything contained herein to the contrary, if any terms or conditions of the Warrant Certificates shall be found to conflict with any terms or conditions of the Warrant Agreement, the Warrant Agreement shall control.

(b)    No Warrant Certificate shall be valid for any purpose, and no Warrant evidenced thereby shall be exercisable, until such Warrant Certificate has been countersigned by the Warrant Agent by manual or facsimile signature. Such signature by the Warrant Agent upon any Warrant Certificate executed by the Company shall be conclusive evidence, and the only evidence, that the Warrant Certificate so countersigned has been duly issued hereunder.

(c)    In case any officer of the Company who shall have signed any of the Warrant Certificates either manually or by facsimile signature shall cease to be such officer before the Warrant Certificates so signed shall have been countersigned and delivered by the Warrant Agent as provided herein, such Warrant Certificates may be countersigned and delivered notwithstanding that the person who signed such Warrant Certificates ceased to be such officer of the Company; and any Warrant Certificate may be signed on behalf of the Company by such persons as, at the actual date of the execution of such Warrant Certificate, shall be the proper officers of the Company, although at the date of the execution of this Agreement any such person was not such officer.

(d)    The term "Holder," when used with respect to any Warrant Certificate, shall mean any person in whose name at the time such Warrant Certificate shall be registered upon the books to be maintained by the Warrant Agent for that purpose.

Section 1.03    Issuance of Warrant Certificates.

(a)    Warrant Certificates evidencing the right to receive the Warrant Shares (except as provided in Sections 2.03, 3.02 and 4.01) may be executed by the Company and delivered to the Warrant Agent upon the execution of this Warrant Agreement. The Warrant Agent shall, upon receipt of a written order of the Company, Warrant Certificates duly executed on behalf of the Company and all other information reasonably requested by the Warrant Agent, countersign Warrant Certificates evidencing Warrants representing the right to receive Warrant Shares and shall deliver such Warrant Certificates to or upon the order of the Company. Subsequent to such original issuance of the Warrant Certificates, the Warrant Agent shall countersign a Warrant Certificate only if the Warrant Certificate is issued in exchange or

3

substitution for one or more previously countersigned Warrant Certificates or in connection with their transfer as hereinafter provided.

(b)    Pending the preparation of definitive Warrant Certificates evidencing Warrants, the Company may execute and the Warrant Agent upon receipt of a written order of the Company and all other information reasonably requested by the Warrant Agent, shall countersign and deliver temporary Warrant Certificates evidencing such Warrants (printed, lithographed, typewritten or otherwise produced, in each case in form satisfactory to the Warrant Agent). Such temporary Warrant Certificates shall be issuable substantially in the form of the definitive Warrant Certificates but with such omissions, insertions and variations as may be appropriate for temporary Warrant Certificates, all as may be determined by the Company with the concurrence of the Warrant Agent. Such temporary Warrant Certificates may contain such reference to any provisions of this Warrant Agreement as may be appropriate. Every such temporary Warrant Certificate shall be executed by the Company and shall be countersigned by the Warrant Agent upon the same conditions and in substantially the same manner, and with like effect, as the definitive Warrant Certificates. Without unreasonable delay, the Company shall execute and shall furnish definitive Warrant Certificates and thereupon such temporary Warrant Certificates may be surrendered in exchange therefor without charge pursuant to and subject to the provisions of Section 4.01, and the Warrant Agent shall countersign and deliver in exchange for such temporary Warrant Certificates definitive Warrant Certificates of authorized denominations evidencing a like aggregate number of Warrants evidenced by such temporary Warrant Certificates. Until so exchanged, such temporary Warrant Certificates shall be entitled to the same benefits under this Warrant Agreement as definitive Warrant Certificates.

## ARTICLE II
## WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS

Section 2.01    Reserved.

Section 2.02    Duration of Warrants. Subject to the provisions of this Agreement, each Warrant may be exercised as provided herein in whole or in part prior to 5:00 p.m. New York City time on _____, 2016, or such earlier date and time at which the Series C Warrants are no longer exercisable (in either case, such date and such time, the "Expiration Date"); provided further, that for the avoidance of doubt, the foregoing proviso shall not affect a Holder's entitlement to replacement securities pursuant to Section 5.04 hereof. Each Warrant not exercised at or before the Expiration Date shall become void, and all rights of the Holder and any beneficial owners of the Warrant Certificate evidencing such Warrant under this Agreement shall cease. The Company shall promptly notify the Warrant Agent in writing upon the occurrence of the Expiration Date and, if such notification is given orally, the Company shall confirm same in writing on or prior to the Business Day (as defined below) next following. Until such notice is received by the Warrant Agent, the Warrant Agent may presume conclusively for all purposes that the Expiration Date has not occurred. "Business Day" shall mean prior to 5:00 p.m. New York City time on any day other than a Saturday, Sunday or a day on which banking

4

institutions in the state of New York or New Jersey are authorized or obligated by law or executive order to close.

Section 2.03    Exercise of Warrants.

(a)    The Warrants shall be automatically exercised at each time, and only to the extent, at least 5% of the then outstanding Series C Warrants not previously exercised (the "Minimum Exercise Threshold") have been exercised in conjunction with the exercise of Series A Warrants[1] (any such time a Series C Warrant[2] is exercised, an "Exercise Time"); provided that the Minimum Exercise Threshold shall not apply with respect to any exercise of a Warrant (i) in connection with an IPO (as defined in the Series A Warrant Agreement) or any Triggering Event or (ii) within sixty (60) days of the Expiration Date. The number of shares of Common Stock to which an individual Holder shall be entitled under the Warrant at a given Exercise Time (the "Vested Warrant Shares") shall be based upon the number of Series A Warrants exercised at that particular Exercise Time (the "Aggregate Exercised Series A Share Amount"), in accordance with the following formula:

$$\text{Vested Warrant Shares} = 6{,}755 * (x/555{,}555) * (y/6{,}755)$$

where:

$6{,}755$ = the Aggregate Maximum Series E Warrant Shares.[3]

$x$ = the Aggregate Exercised Series A Share Amount.

$555{,}555$ = the "Aggregate Exercisable Series A Warrant Shares."

$y$ = the Base Warrant Shares.

For illustration purposes, a pro forma capitalization table is set forth on Schedule 1 hereto showing the share ownership of the Company in the event of exercise of (i) all Series A Warrants, Series C Warrants and Series E Warrants and (ii) all Series A Warrants, Series B Warrants, Series C Warrants, Series D Warrants, Series E Warrants and Series F Warrants. The Warrants may not be exercised in any manner other than as provided herein.

(b)    Pursuant to and in accordance with section 2.03(j)(iv) of the Series A Warrant Agreement (as defined below), the Warrant Agent shall notify the Company upon the exercise of any Series A Warrant,[4] and provide the percentage of the then outstanding Series A Warrants represented by such exercise and such other information as may be reasonably requested by the Company. Following receipt of such notice, the Company shall confirm to the

---

[1] Series F Warrant Agreement will state "Series D Warrants in conjunction with the exercise of Series B Warrants"

[2] Series F Warrant Agreement will refer to "Series D"

[3] The Aggregate Maximum Series F Warrant Shares will be 15,704

[4] Series F will refer to 'Series B"

5

Warrant Agent in writing, based on such information, if such exercise of Series A Warrants[5] has caused an exercise of the Series C Warrants that equals or exceeds the Minimum Exercise Threshold. Until such confirmation is received by the Warrant Agent, the Warrant Agent may presume conclusively for all purposes that the Minimum Exercise Threshold has not been achieved. If this Warrant is automatically exercised pursuant to this Section 2.03, the Company (provided that if the Company provides such notice to the Holder, it will also provide prompt written notice thereof to the Warrant Agent), or if requested and provided with all necessary information, the Warrant Agent, shall notify the Holder of the automatic exercise as soon as reasonably practicable, and the Holder shall surrender the Warrant Certificate to the Warrant Agent. For purposes of providing such notice, the Warrant Agent shall maintain a record of the number of outstanding Series C Warrants that have been exercised. The Company shall cause to be issued to each Holder the aggregate number of whole Warrant Shares issuable upon such exercise and deliver to the Holder written confirmation that such Warrant Shares have been duly issued and recorded on the books of the Company as hereinafter provided; provided that certificates for the Warrant Shares shall not be issued to the Holder unless and until such Holder surrenders the Warrant Certificate for cancellation. The Warrant Shares so issued shall be registered in the name of the Holder.

(c)     The Warrant Agent shall promptly advise the Company, by telephone or by facsimile transmission or other form of electronic communication available to both parties when Warrant Certificates have been received. The Warrant Agent shall promptly confirm such advice to the Company in writing. Upon surrender of a Warrant Certificate, the Warrant Agent shall requisition from the transfer agent for the Common Stock (the "Transfer Agent") for issuance and delivery to each Holder of such Warrant Certificate , a certificate or certificates for the Vested Warrant Shares issuable upon the exercise of the Warrant or Warrants evidenced by such Warrant Certificate (together with any other Warrant Shares to which the Holder may be entitled for which the Holder has not yet been issued certificates). Such certificate or certificates shall be deemed to have been issued as of the date of surrender of such Warrant Certificate at the offices of the Warrant Agent designated for such purpose (the "Warrant Agent Office") duly executed by the Holder thereof. Notwithstanding any provision herein to the contrary, the Company shall not be required to register Warrant Shares in the name of any person who acquired any Warrant or any Warrant Shares otherwise than in accordance with this Agreement.

(d)     In case an exercise of Warrants is in part only, a new Warrant or Warrants of like tenor, calling in the aggregate on the face or faces of the Warrant Certificate or Warrant Certificates for the number of shares of Common Stock equal (without giving effect to any adjustment thereof) to the number of such shares called for on the face of the Warrant Certificate minus the number of such shares so exercised, shall be issued and delivered to the Holder or its registered assigns.

(e)     Neither the Warrant Agent nor the Company shall be required to pay any stamp or other tax or other charge required to be paid in connection with any transfer

---

[5] Series F will refer to 'Series B"

6

involved in the issuance of the Warrant Shares, and in the event that any such transfer is involved, neither the Warrant Agent nor the Company shall be required to issue or deliver any Warrant Share until it has been established to the Company's and the Warrant Agent's satisfaction that *such tax or other charge* has been paid or that no such tax or other charge is due.

(f)    An exercise of a Warrant pursuant to the terms of this Agreement shall be irrevocable; *provided however*, that if an exercise is effected as a result of an exercise of Series A Warrants in connection with the occurrence of a "Triggering Event" (as defined in the Warrant Agreement dated [_____] governing the Series A Warrants (the "Series A Warrant Agreement")), exercise of a Warrant shall be effective only upon consummation of such Triggering Event.

(g)    The Warrant Agent shall:

(i)    examine all documents delivered to it by or on behalf of Holders as contemplated hereunder to ascertain whether or not, on their face, such documents have been executed and completed in accordance with their terms and the terms hereof;

(ii)    where an exercised Warrant or other document appears on its face to have been improperly completed or executed or some other irregularity in connection with the exercise of the Warrants exists, the Warrant Agent shall endeavor to inform the appropriate parties (including the person submitting such instrument) of the need for fulfillment of all requirements, specifying those requirements which appear to be unfulfilled;

(iii)    inform the Company of and cooperate with and assist the Company in resolving any reconciliation problems between exercised Warrants and delivery of Warrant Certificates to the Warrant Agent's account; and

(iv)    advise the Company of such other information as the Company shall reasonably require.

(h)    All questions as to the validity, form and sufficiency (including time of receipt) of an exercised Warrant will be determined by the Company in its sole discretion, which determination shall be final and binding. Such determination by the Company shall be final and binding on the Holders, absent manifest error. Except as provided for in section 2.03(g), neither the Company nor the Warrant Agent shall be under any duty to give notice to any Person of any irregularities in any document delivered to it by or on behalf of Holders, nor shall it incur any liability for the failure to give such notice.

Section 2.04    Reservation of Warrant Shares

(a)    For the purpose of enabling it to satisfy any obligation to issue Warrant Shares upon exercise of Warrants, the Company will at all times through the Expiration Date, reserve and keep available out of its aggregate authorized but unissued or treasury shares of Common Stock, the number of Warrant Shares deliverable upon the exercise of all outstanding Warrants, and the Company's Transfer Agent is hereby irrevocably authorized and

7

directed at all times to reserve such number of authorized and unissued or treasury shares of Common Stock as shall be required for such purpose. The Company will keep a copy of this Agreement on file with the Transfer Agent. The Warrant Agent is hereby irrevocably authorized to requisition from time to time from such Transfer Agent stock certificates issuable upon exercise of outstanding Warrants, and the Company will supply such Transfer Agent with duly executed stock certificates for such purpose.

(b)     The Company covenants that all shares of Common Stock issued upon exercise of the Warrants will, upon issuance in accordance with the terms of this Agreement, be fully paid and nonassessable and free from all taxes, liens, charges and security interests created by or imposed upon the Company with respect to the issuance and holding thereof.

## ARTICLE III
## OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF WARRANT

Section 3.01    No Rights as Stockholder Conferred by Warrants or Warrant Certificates. No Warrant Certificate or Warrant evidenced thereby shall, and nothing contained in this Agreement or in the Warrant Certificate shall be construed to, entitle the Holder or any beneficial owner thereof to any of the rights of a holder or beneficial owner of Warrant Shares, including, without limitation, the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or any other matter, to receive dividends on Warrant Shares or any rights whatsoever as stockholders of the Company.

Section 3.02    Lost, Mutilated, Stolen or Destroyed Warrant Certificates. Upon receipt by the Warrant Agent of evidence reasonably satisfactory to it and the Company of the ownership of and the loss, mutilation, theft or destruction of any Warrant Certificate and of such security or indemnity as may be required by the Company and the Warrant Agent to hold each of them and any agent of them harmless and, in the case of mutilation of a Warrant Certificate, upon surrender thereof to the Warrant Agent for cancellation, then, in the absence of notice to the Company or the Warrant Agent that such Warrant Certificate has been acquired by a bona fide purchaser, the Company shall execute, and an authorized officer of the Warrant Agent shall manually countersign or countersign by facsimile and deliver, in exchange for or in lieu of the lost, mutilated, stolen or destroyed Warrant Certificate, a new Warrant Certificate of the same tenor and evidencing a like number of Warrants. Upon the issuance of any new Warrant Certificate under this Section 3.02, the Company may require the payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Warrant Agent) in connection therewith. Every substitute Warrant Certificate executed and delivered pursuant to this Section 3.02 in lieu of any lost, mutilated, stolen or destroyed Warrant Certificate shall represent an additional contractual obligation of the Company, whether or not the lost, stolen or destroyed Warrant Certificate shall be at any time enforceable by anyone, and shall be entitled to the benefits of this Agreement equally and proportionately with any and all other Warrant Certificates duly executed and delivered hereunder. The provisions of this Section 3.02 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement of lost, mutilated, stolen or destroyed Warrant Certificates. Notwithstanding anything in this Agreement to the

8

contrary, the Warrant Agent shall have no obligation to take any action whatsoever with respect to such an exchange unless and until such payments required under this section have been made.

## ARTICLE IV
## EXCHANGE AND TRANSFER

Section 4.01    Exchange and Transfer.

(a)    Upon surrender at the Warrant Agent Office, Warrant Certificates evidencing Warrants may be exchanged for Warrant Certificates in other authorized denominations evidencing such Warrants or the transfer thereof may be registered in whole or in part; *provided, however,* that such other Warrant Certificates shall evidence the same aggregate number of Warrants as the Warrant Certificates so surrendered.

(b)    The Warrant Agent shall keep, at the Warrant Agent Office, books in which, subject to such reasonable regulations as it may prescribe, it shall register Warrant Certificates and exchanges and transfers of outstanding Warrant Certificates upon surrender of such Warrant Certificates to the Warrant Agent at the Warrant Agent Office for exchange or registration of transfer, properly endorsed.

(c)    No service charge shall be made for any exchange or registration of transfer of Warrant Certificates, however, the Warrant Agent and/or the Company may require payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed in connection with any such exchange or registration of transfer.  Neither the Warrant Agent nor the Company shall be required to pay any stamp or other tax or other charge required to be paid in connection with such transfer, and neither the Warrant Agent nor the Company shall be required to issue or deliver any Warrant Share until it has been established to the Company's and the Warrant Agent's reasonable satisfaction that such tax or other charge has been paid or that no such tax or other charge is due.

(d)    Whenever any Warrant Certificates are so surrendered for exchange or registration of transfer, an authorized officer of the Warrant Agent, upon the request of the Company,  shall manually countersign or countersign by facsimile and deliver to the person or persons entitled thereto a Warrant Certificate or Warrant Certificates, duly authorized and executed by the Company, as so requested.  The Warrant Agent shall not effect any exchange or registration of transfer which will result in the issuance of a Warrant Certificate, evidencing a fraction of a Warrant or a number of full Warrants and a fraction of a Warrant.

(e)    All Warrant Certificates, issued upon any exchange or registration of transfer of Warrant Certificates shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates surrendered for such exchange or registration or transfer.

9

Section 4.02    Restrictions on Transfer; Restrictive Legend

(a)    A Holder shall not transfer Warrants except in connection with the Holder's transfer of shares of the Issued Holders Shares held by such Holder (the "Transferred Shares"), which transfer shall comply with the provisions of the Stockholders Agreement (a "Share Transfer").  In the event of a valid Share Transfer, a Holder shall concurrently transfer such proportion of the Holder's Warrants equal to the proportion that the number of Transferred Shares bears to the total number of Issued Holders Shares held by such Holder prior to such transfer.

(b)    Any attempted or purported transfer of all or a portion of the Warrants held by a Holder in violation of this Section 4.02 shall be null and void and of no force or effect whatsoever, such purported transferee will not be treated as an owner of the Warrants for purposes of this Agreement or otherwise, and the Company will not register such transfer.

(c)    Each Warrant Certificate and certificate representing Warrant Shares issued upon the exercise of a Warrant shall be stamped or otherwise imprinted with a legend in the following or a comparable form:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE (THE "SECURITIES") WERE ORIGINALLY ISSUED IN RELIANCE UPON AN EXEMPTION FROM THE REGISTRATION REQUIREMENT OF SECTION 5 OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), PROVIDED BY SECTION 1145 OF THE BANKRUPTCY CODE, 11 U.S.C. 1145.  THE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE ACT OR ANY STATE SECURITIES LAW, AND TO THE EXTENT THE HOLDER OF THE SECURITIES IS AN "UNDERWRITER," AS DEFINED IN SECTION 1145(B)(1) OF THE BANKRUPTCY CODE, THE SECURITIES MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER.

If at the time of issuance of Warrant Shares the Stockholders Agreement is still in effect, each certificate representing Warrant Shares issued upon the exercise of a Warrant shall also be stamped or otherwise imprinted with a legend in the following or a comparable form:

THE SALE, ASSIGNMENT, PLEDGE, ENCUMBRANCE OR OTHER TRANSFER OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE IS RESTRICTED BY THE TERMS OF, AND THE HOLDER HEREOF IS SUBJECT TO CERTAIN OTHER OBLIGATIONS PURSUANT TO, THE PROVISIONS OF A STOCKHOLDERS AGREEMENT, DATED AS OF [____], 2009, AMONG THE COMPANY AND CERTAIN HOLDERS OF ITS SECURITIES, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.

(d)    A Holder (or its transferee, as applicable) shall be entitled to receive from the Company, without expense, new securities of like tenor not bearing the legends

10

set forth above when (i) such Warrant Shares shall have been (A) effectively registered under the Securities Act and disposed of in accordance with a registration statement covering such securities, (B) disposed of pursuant to the provisions of Rule 144 or any comparable rule under the Securities Act, or (C) when, in the written reasonable opinion of independent counsel for the holder thereof experienced in Securities Act matters, which counsel and opinion shall be reasonably satisfactory to the Company, such restrictions are no longer required in order to insure compliance with the Securities Act (including when the provisions of Rule 144(k) or any comparable rule under the Securities Act have been satisfied) and (ii)such Warrant Shares are no longer subject to the Stockholders Agreement.

Section 4.03    Treatment of Holders of Warrant Certificates.  Each Holder of a Warrant Certificate, by accepting the same, consents and agrees with the Company, the Warrant Agent and every subsequent Holder of such Warrant Certificate that until the transfer of such Warrant Certificate is registered on the books of such Warrant Agent, the Company and the Warrant Agent may treat the registered Holder of such Warrant Certificate as the absolute owner thereof for any purpose and as the person entitled to exercise the rights represented by the Warrants evidenced thereby, any notice to the contrary notwithstanding.

Section 4.04    Cancellation of Warrant Certificates.  Any Warrant Certificate surrendered for exchange or registration of transfer or exercise of the Warrants evidenced thereby shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent and shall not be reissued and, except as expressly permitted by this Agreement, no Warrant Certificate shall be issued hereunder in exchange therefor or in lieu thereof.  The Warrant Agent shall cause all cancelled Warrant Certificates to be destroyed and shall deliver a certificate of such destruction to the Company.

## ARTICLE V
## ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT SECURITIES

Section 5.01    Adjustments Generally.  The number of Warrant Shares issuable upon exercise of Warrants and the number of Warrants outstanding are subject to adjustment from time to time upon the occurrence of the events enumerated in this Article V, as determined to be necessary or appropriate in the reasonable discretion of the Board of Directors of the Company.

Section 5.02    Stock Dividends; Split-Ups.  If after the date hereof, and subject to the provisions of Section 5.06, the number of outstanding shares of Common Stock is increased by a stock dividend payable in shares of Common Stock, or by a split-up of shares of Common Stock, or other similar event, then, on the effective date of such stock dividend, split-up or similar event, the number of shares of Common Stock issuable on exercise of each Warrant shall be increased in proportion to such increase in outstanding shares of Common Stock.

Section 5.03    Aggregation of Shares.  If after the date hereof, and subject to the provisions of Section 5.06, the number of outstanding shares of Common Stock is decreased by a consolidation, combination, reverse stock split or reclassification of shares of Common Stock or

11

other similar event, then, on the effective date of such consolidation, combination, reverse stock split, reclassification or similar event, the number of shares of Common Stock issuable on exercise of each Warrant shall be decreased in proportion to such decrease in outstanding shares of Common Stock.

Section 5.04    Replacement of Securities upon Reorganization.  In case of any reclassification or reorganization of the outstanding shares of Common Stock (other than a change covered by Section 5.02 or 5.03 or that solely affects the par value of such shares of Common Stock), or in the case of any merger or consolidation of the Company with or into another corporation (other than a consolidation or merger in which the Company is the continuing corporation and that does not result in any reclassification or reorganization of the outstanding shares of Common Stock), or in the case of any sale or conveyance to another corporation or entity of the assets or other property of the Company as an entirety or substantially as an entirety in connection with which the Company is dissolved, except in each case, with respect to any such transaction pursuant to which holders of the outstanding Common Stock are entitled to receive cash consideration for such shares, the Holders shall thereafter have the right to receive, upon the basis and upon the terms and conditions specified in the Warrants and in lieu of the shares of the Warrant Shares immediately theretofore receivable upon the exercise of the rights represented thereby, the kind and amount of shares of stock or other securities or property (including cash) receivable upon such reclassification, reorganization, merger or consolidation, or upon a dissolution following any such sale or transfer, that the Holder would have received if such Holder had exercised his, her or its Warrant(s) immediately prior to such event; and if any reclassification also results in a change in shares of Common Stock covered by Section 5.02 or 5.03, then such adjustment shall be made pursuant to Sections 5.02, 5.03 and this Section 5.04.  The provisions of this Section 5.04 shall similarly apply to successive reclassifications, reorganizations, mergers or consolidations, sales or other transfers.

Section 5.05    Notices of Changes in Warrant.  Upon every adjustment of the number of shares issuable upon exercise of a Warrant, the Company shall give written notice thereof to the Warrant Agent, which notice shall state the increase or decrease, if any, in the number of shares of Common Stock issuable upon the exercise of a Warrant, setting forth in reasonable detail the method of calculation and the facts upon which such calculation is based. Upon the occurrence of any event specified in Section 5.02, 5.03, 5.04 or 5.08, then, in any such event, the Company shall give or cause to be given written notice to each Holder, by press release or at the last address set forth for such Holder in the register books of the Warrant Agent, of the record date or the effective date of the event.  Failure to give such notice, or any defect therein, shall not affect the legality or validity of such event.  The Warrant Agent shall be fully protected in relying upon such a certificate and shall have no duty to investigate or inquire as to whether such adjustment is accurate, and shall not be deemed to have knowledge of and shall not be required to take any action with respect to any adjustments, unless and until the Warrant Agent shall have received such a certificate.

Section 5.06    No Fractional Shares.  Notwithstanding any provision contained in this Agreement to the contrary, the Company shall not issue fractional shares upon exercise of Warrants.  If, by reason of any adjustment made pursuant to this Article V, any Holder would be entitled, upon the exercise of such Warrant, to receive a fractional interest in a share of Common Stock, the Company shall, upon such exercise, round down to the nearest whole number the

12

number of the shares of Common Stock to be issued to the Holder. The Warrant Agent shall not be required to effect any registration of transfer or exchange that will result in the issuance of a Warrant Certificate for a fraction of a share of Common Stock.

Section 5.07   Form of Warrant. The form of Warrant or Warrant Certificate need not be changed because of any adjustment pursuant to this Article V, and Warrant Certificates issued after such adjustment may state the same number of shares as is stated in the Warrant Certificates initially issued pursuant to this Agreement. However, the Company may at any time in its sole discretion make any change in the form of Warrant or Warrant Certificate that the Company may deem appropriate and that does not affect the substance thereof, and any Warrant Certificates thereafter issued or countersigned, whether in exchange or substitution for an outstanding Warrant Certificate or otherwise, may be in the form as so changed.

Section 5.08   Extraordinary Transactions. If the Company's Board of Directors, in connection with an "Extraordinary Transaction" (as defined in the Series A Warrant Agreement), determines to adjust the warrant price or the number of shares of Common Stock issuable upon exercise of the Series A Warrants to reflect such Extraordinary Transaction, the number of shares issuable upon exercise of a Warrant shall also be appropriately adjusted as determined in good faith by the Company's Board of Directors.

Section 5.09   De Minimis Adjustments. No adjustment in the number of Warrant Shares issuable hereunder shall be required unless such adjustment would require an increase or decrease of at least one percent (1%) in the number of Warrant Shares issuable upon the exercise of each Warrant; provided, however, that any adjustments which by reason of this paragraph (c) are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations shall be made to the nearest cent and to the nearest one-hundredth of a Warrant Share, as the case may be.

## ARTICLE VI
## CONCERNING THE WARRANT AGENT

Section 6.01   Warrant Agent.

The Company hereby appoints the Warrant Agent to act as agent of the Company in respect of the Warrants and the Warrant Certificates upon the express terms and subject to the conditions herein and in the Warrant Certificates (and no implied terms); and the Warrant Agent hereby accepts such appointment. The Warrant Agent shall have the powers and authority granted to and conferred upon it in the Warrant Certificates and herein and such further powers and authority to act on behalf of the Company as the Company may hereafter grant to or confer upon it. All of the terms and provisions with respect to such powers and authority contained in the Warrant Certificates are subject to and governed by the terms and provisions hereof.

Section 6.02   Conditions of Warrant Agent's Obligations.

(a)   The Warrant Agent accepts its obligations herein set forth upon the express terms and conditions hereof (and no implied terms), including the following, to all of

13

which the Company agrees and to all of which the rights hereunder of the Holders from time to time of the Warrant Certificates shall be subject:

(i)        *Compensation and Indemnification.* The Company agrees promptly to pay the Warrant Agent the compensation to be agreed upon with the Company for all services rendered by the Warrant Agent and to reimburse the Warrant Agent for reasonable out-of-pocket expenses (including the reasonable fees and expenses of its counsel) incurred by the Warrant Agent without gross negligence, bad faith or willful misconduct (each as determined by a final, non-appealable judgment of a court of competent jurisdiction) on its part in connection with the preparation, delivery, acceptance, administration, execution and amendment of this Agreement and the exercise and performance of its duties hereunder.  The Company also agrees to indemnify the Warrant Agent for, and to hold it harmless against, any loss, liability, suit, action, proceeding, judgment, claim, settlement, cost or expense (including the reasonable fees and expenses of its counsel) incurred without gross negligence, bad faith or willful misconduct on the part of the Warrant Agent, (each as determined by a final, non-appealable judgment of a court of competent jurisdiction), for any action taken, suffered or omitted to be taken by the Warrant Agent in connection with the preparation, delivery, acceptance, administration, execution and amendment of the Agreement and the exercise and performance of its duties hereunder, including the costs and expenses of defending against any claim of liability arising therefrom, directly or indirectly.  The provisions of this Section 6.02(a)(i) shall survive the termination of this Agreement and the replacement, removal or resignation of the Warrant Agent.

(ii)       *Agent for the Company.* In acting under this Agreement and in connection with the Warrants and the Warrant Certificates, the Warrant Agent is acting solely as agent of the Company and does not assume any obligation or relationship of agency or trust for or with any of the Holders of Warrant Certificates or beneficial owners of Warrants.

(iii)      *Counsel.* The Warrant Agent may consult with counsel satisfactory to it in its reasonable judgment (who may be counsel for the Company or in-house counsel of the Warrant Agent), and the advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder, in the absence of gross negligence, bad faith or willful misconduct, and in accordance with the advice of such counsel.

(iv)      *Documents.* Subject to Section 2.03(g), the Warrant Agent shall be protected and shall incur no liability for or in respect of any action taken, suffered or omitted to be taken by it in reliance upon any Warrant Certificate, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been presented or signed by the proper parties.

14

(v)      *Certain Transactions.* The Warrant Agent, and its officers, directors, employees, agents and affiliates, may become the owner of, or acquire any interest in, Warrants, with the same rights that it or they would have if it were not the Warrant Agent hereunder, and, to the extent permitted by applicable law, it or they may engage or be interested in any financial or other transaction with the Company and may act on, or as depositary, trustee or agent for, any committee or body of holders of Warrant Shares or other obligations of the Company as freely as if it were not the Warrant Agent hereunder.

(vi)      *No Liability for Interest.* The Warrant Agent shall have no liability for interest on any monies at any time received by it pursuant to any of the provisions of this Agreement or of the Warrant Certificates.

(vii)      *No Liability for Invalidity.* The Warrant Agent shall not be under any responsibility with respect to the validity or sufficiency of this Agreement or the execution and delivery hereof (except the due authorization to execute this Agreement and the due execution and delivery hereof by the Warrant Agent) or subject to Section 2.03(g), with respect to the validity or execution of any Warrant Certificates (except its countersignature thereof).

(viii)      *No Liability for Recitals.* The recitals contained herein shall be taken as the statements of the Company and the Warrant Agent assumes no liability for the correctness of the same.

(ix)      *No Implied Obligations.* The Warrant Agent shall be obligated to perform only such duties as are herein and in the Warrant Certificates specifically set forth and no implied duties or obligations shall be read into this Agreement or the Warrant Certificates against the Warrant Agent. The Warrant Agent shall not be under any obligation to expend or risk its own funds or take any action hereunder or at the request of any Warrant Holder or other Person which may tend to involve it in any expense or liability unless it has received indemnity reasonably satisfactory to it or, the payment of which within a reasonable time is not, in its opinion, assured to it. The Warrant Agent shall not be accountable or under any duty or responsibility for the use by the Company of any of the Warrant Certificates countersigned by the Warrant Agent and delivered by it to the Company pursuant to this Agreement or for the application by the Company of the proceeds of the Warrant Certificates. The Warrant Agent shall have no duty or responsibility in case of any default by the Company in the performance of its covenants or agreements contained herein or in the Warrant Certificates or in the case of the receipt of any written demand from a Holder of a Warrant Certificate with respect to such default, including, without limiting the generality of the foregoing, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or, except as provided in Section 7.02, to make any demand upon the Company.

(x)      *Agents.* The Warrant Agent may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by

15

or through agents or attorneys-in-fact, provided reasonable care has been exercised in the selection and continued employment of such agent or attorney-in-fact.

(xi) _Liability_. Notwithstanding anything in this Agreement to the contrary, in no event shall the Warrant Agent be liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Warrant Agent has been advised of the likelihood of the loss or damage and regardless of the form of the action. Any liability of the Warrant Agent under this Agreement shall be limited to the amount of annual fees paid by the Company to the Warrant Agent. The provisions of this Section 6.02(a)(xi) shall survive the termination of this Agreement and the replacement, removal or resignation of the Warrant Agent.

(xii) _Force Majeure_. In no event shall the Warrant Agent be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused by, directly or indirectly, forces beyond its reasonable control, including without limitation strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software or hardware) services ("Force Majeure"). In the event of any such excused delay, the time for performance shall be extended for a period equal to the time lost by reason of the delay; _provided, however_, that the Warrant Agent shall use all commercially reasonable efforts to avoid and to remove such causes of non-performance and shall continue performance hereunder promptly following the removal of such causes.

Section 6.03    Resignation and Appointment of Successor.

(a)    The Company agrees, for the benefit of the Holders from time to time of the Warrant Certificates, that there shall at all times be a Warrant Agent hereunder until all the Warrants have been exercised or are no longer exercisable.

(b)    The Warrant Agent may at any time resign as such by giving written notice of its resignation to the Company, specifying the desired date on which its resignation shall become effective; _provided, however,_ that such date shall be not less than 30 days after the date on which such notice is given unless the Company agrees to accept shorter notice. Upon receiving such notice of resignation, the Company shall promptly appoint a successor Warrant Agent (which shall be a bank or trust company in good standing, authorized under the laws of the jurisdiction of its organization to exercise corporate trust powers) by written instrument in duplicate signed on behalf of the Company, one copy of which shall be delivered to the resigning Warrant Agent and one copy to the successor Warrant Agent. The Company may, at any time and for any reason, remove the Warrant Agent and appoint a successor Warrant Agent (qualified as aforesaid) by written instrument in duplicate signed on behalf of the Company and specifying such removal and the date when it is intended to become effective, one copy of which shall be delivered to the Warrant Agent being removed and one copy to the successor Warrant Agent.

16

Any resignation or removal of the Warrant Agent and any appointment of a successor Warrant Agent shall become effective upon acceptance of appointment by the successor Warrant Agent as provided in this subsection (b). In the event a successor Warrant Agent has not been appointed and accepted its duties within 30 days of the Warrant Agent's notice of resignation, the Warrant Agent may apply to any court of competent jurisdiction for the designation of a successor Warrant Agent. Upon its resignation, replacement or removal, the Warrant Agent shall be entitled to the payment by the Company of the compensation and to the reimbursement of all reasonable out-of-pocket expenses incurred by it hereunder as agreed to in Section 6.02(a).

(c)     The Company shall remove the Warrant Agent and appoint a successor Warrant Agent if the Warrant Agent (i) shall become incapable of acting, (ii) shall be adjudged bankrupt or insolvent, (iii) shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, (iv) shall consent to, or shall have had entered against it a court order for, any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceedings commenced against it, (v) shall make a general assignment for the benefit of creditors or (vi) shall fail generally to pay its debts as they become due. Upon the appointment as aforesaid of a successor Warrant Agent and acceptance by it of such appointment, the predecessor Warrant Agent shall, if not previously disqualified by operation of law, cease to be Warrant Agent hereunder.

(d)     Any successor Warrant Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and the Company an instrument accepting such appointment hereunder, and thereupon such successor Warrant Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, immunities, duties and obligations of such predecessor with like effect as if originally named as Warrant Agent hereunder, and such predecessor shall thereupon become obligated to transfer, deliver and pay over, and such successor Warrant Agent shall be entitled to receive, all monies, securities and other property on deposit with or held by such predecessor as Warrant Agent hereunder.

(e)     Any person into which the Warrant Agent hereunder may be merged or converted or any person with which the Warrant Agent may be consolidated, or any person resulting from any merger, conversion or consolidation to which the Warrant Agent shall be a party, or any person to which the Warrant Agent shall sell or otherwise transfer all or substantially all the assets and business of the Warrant Agent, *provided* that it shall be qualified as aforesaid, shall be the successor Warrant Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

## ARTICLE VII
## MISCELLANEOUS

Section 7.01    Amendment. The terms of the Warrants may be amended by the Company together with the affirmative vote or consent of the Holders of a majority of the Warrants. The Company and the Warrant Agent may from time to time supplement or amend

17

this Agreement without the approval of any Holders in order to cure any ambiguity, manifest error or other mistake in this Agreement, or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein, or to make any other provisions in regard to matters or questions arising hereunder that the Company and the Warrant Agent may deem necessary or desirable and that shall not adversely affect, alter or change the interests of any Holder. Notwithstanding anything to the contrary herein, upon the delivery of a certificate from an appropriate officer of the Company, which states that the proposed supplement or amendment is in compliance with the terms of this Section 8.01 and, provided such supplement or amendment does not change the Warrant Agent's own rights, duties, liabilities, immunities or obligations hereunder, the Warrant Agent shall execute such supplement or amendment. Any amendment, modification or waiver effected pursuant to and in accordance with the provisions of this Section 8.01 will be binding upon all Holders and upon each future Holder, the Company and the Warrant Agent. In the event of any amendment, modification or waiver, the Company will give prompt notice thereof to all Holders.

Section 7.02   Notices and Demands to the Company and Warrant Agent. If the Warrant Agent shall receive any notice or demand addressed to the Company by the Holder of a Warrant Certificate pursuant to the provisions of the Warrant Certificates, the Warrant Agent shall promptly forward such notice or demand to the Company.

Section 7.03   Addresses. Any communication from the Company to the Warrant Agent with respect to this Agreement shall be addressed to Mellon Investor Services LLC, 200 W. Monroe Street, Suite 1590, Chicago, IL 60606, Attention: Georg Drake, with a copy to Mellon Investor Services LLC, 480 Washington Boulevard, Jersey City, NJ 07310, Attention: Legal Department, and any communication from the Warrant Agent to the Company with respect to this Agreement shall be addressed to Hayes Lemmerz International, Inc., 15300 Centennial Drive, Northville, MI 48167, Attention: General Counsel (or such other address as shall be specified in writing by the Warrant Agent or by the Company). For the avoidance of doubt, the Company may satisfy its obligation to provide the Warrant Agent with a written order or direction pursuant to this Agreement through the use of electronic mail delivered to the Warrant Agent.

Section 7.04   Applicable Law. The validity, interpretation and performance of this Agreement and each Warrant Certificate issued hereunder and of the respective terms and provisions hereof and thereof shall be governed by, and construed in accordance with, the laws of the State of Delaware.

Section 7.05   Obtaining of Governmental Approval. The Company from time to time will use its best efforts to obtain and keep effective any and all permits, consents and approvals of governmental agencies and authorities and to make any necessary filings under federal or state securities laws, which may become requisite in connection with the issuance, sale, transfer and delivery of the Warrant Certificates, the exercise or conversion of the Warrants, the issuance, sale, transfer and delivery of the Warrant Shares.

Section 7.06   Persons Having Rights Under Warrant Agreement. Nothing contained in the Warrant shall be construed as conferring upon the Holder the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the

18

election of directors of the Company or any other matter, to receive dividends or any rights whatsoever as stockholders of the Company.  Each Holder shall be entitled to receive the same information and reports to which a holder of the Common Stock is entitled pursuant to the Stockholders Agreement then in effect, subject to execution of an appropriate confidentiality agreement.

Section 7.07    Headings.  The descriptive headings of the several Articles and Sections of this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 7.08    Counterparts.  This Agreement may be executed in any number of counterparts, each of which as so executed shall be deemed to be an original, but such counterparts shall together constitute but one and the same instrument.

Section 7.09    Inspection of Agreement.  A copy of this Agreement shall be available at all reasonable times at the principal corporate trust office of the Warrant Agent for inspection by the Holder of any Warrant Certificate.  The Warrant Agent may require such Holder to submit his Warrant Certificate for inspection by it.

Section 7.10    Notices to Holders of Warrants.  Any notice to Holders of Warrants evidenced by Warrant Certificates which by any provisions of this Warrant Agreement is required or permitted to be given shall be given by first class mail prepaid at such Holder's address as it appears on the books of the Warrant Agent.

Section 7.11    Binding Effects.  This Agreement shall inure to the benefit and shall be binding upon the Company, the Warrant Agent and the Holders and their respective heirs, legal representatives, successors and assigns.  Nothing in this Agreement, express or implied, is intended to or shall confer on any Person other than the Company, the Warrant Agent and the Holders, or their respective heirs, legal representatives, successors or assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

Section 7.12    Severability.  In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable, the validity, legality and enforceability of any such provisions in every other respect and of the remaining provisions contained herein and therein shall not be affected or impaired thereby; provided, that if any such excluded term, provision, covenant or restriction shall materially adversely affect the rights, immunities, duties or obligations of the Warrant Agent, the Warrant Agent shall be entitled to resign by giving not less than ten (10) days prior written notice to the Company.  In the event a successor Warrant Agent has not been appointed and accepted its duties within ten (10) days of the Warrant Agent's notice of resignation, the Warrant Agent may apply to any court of competent jurisdiction for the designation of a successor to the Warrant Agent.

19

[SIGNATURE PAGE FOLLOWS]

SCHEDULE 1

**HLI - Share Count Analysis**

*Scenarios Assume Cash Settlement of Exercised Warrants*

| | |
|---|---|
| **Shares Outstanding at Emergence** | **10,000,000** |
| **Shares Authorized** | **20,000,000** |

| | |
|---|---|
| **Tranche A Warrants** | **555,555** |
| **Tranche B Warrants** | **555,555** |

| | |
|---|---|
| Pre-petition debt held by DIP Lenders | $ 285,584,531 |
| Pre-petition Consenting Lenders | 192,432,416 |
| Pre-petition Non-Consenting Lenders | 28,324,933 |
| **Total Pre-Petition Debt** | **$ 506,341,880** |
| **Equity to Pre-petition Lenders Under Plan** | **4%** |



| | Emergence | | Exercise of Tranche A Only Pre Anti-Dilution | | | Exercise of Tranche A/B Warrants Pre Anti-Dilution | |
|---|---|---|---|---|---|---|---|
| DIP Lenders | 8,450,000 | 84.50% | 8,450,000 | 80.05% | | 8,450,000 | 76.05% |
| Pre-Petition Lenders | | | | | | | |
| Pre-Petition Lender Consent Fee | 850,000 | 8.50% | 850,000 | 8.05% | | 850,000 | 7.65% |
| Pre-Petition Consenting Lender Equity | 348,677 | 3.49% | 348,677 | 3.30% | | 348,677 | 3.14% |
| Tranche C/D Anti-Dilution Warrants | 0 | 0.00% | 0 | 0.00% | | 0 | 0.00% |
| Total Consenting Pre-Petition Lenders | 1,198,677 | 11.99% | 1,198,677 | 11.36% | | 1,198,677 | 10.79% |
| Non-consenting Pre-Petition Lender Equity | 51,323 | 0.51% | 51,323 | 0.49% | | 51,323 | 0.46% |
| Total Pre-Petition Lenders | 1,250,000 | 12.50% | 1,250,000 | 11.84% | | 1,250,000 | 11.25% |
| Foreign Creditor Distribution | | | | | | | |
| PBGC/Noteholders | 300,000 | 3.00% | 300,000 | 2.84% | | 300,000 | 2.70% |
| Tranche A/B Warrants Exercised | 0 | 0.00% | 555,555 | 5.26% | | 1,111,110 | 10.00% |
| Tranche E/F Anti-Dilution Warrants | 0 | 0.00% | 0 | 0.00% | | 0 | 0.00% |
| Total Foreign Creditor Distribution | 300,000 | 3.00% | 855,555 | 8.11% | | 1,411,110 | 12.70% |
| **Total Shares** | **10,000,000** | **100.00%** | **10,555,555** | **100.00%** | | **11,111,110** | **100.00%** |

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

HAYES LEMMERZ INTERNATIONAL, INC.

By: _____
      Name:
      Title:

MELLON INVESTOR SERVICES LLC

By: _____
      Name:
      Title:

EXHIBIT A

[FORM OF WARRANT CERTIFICATE]

[Face]

EXERCISABLE ONLY AUTOMATICALLY FROM TIME TO TIME AS PROVIDED
HEREIN

VOID AFTER THE CLOSE OF BUSINESS ON _____, 2016
HAYES LEMMERZ INTERNATIONAL, INC.

Warrant Certificate representing
Series E[6] Warrants to receive
Common Stock, par value $0.01 per share
as described herein

_____ Warrants

This certifies that [_____] or registered assigns is the registered
owner of the above indicated number of Series E Warrants[7] (each, a "Warrant"), each Warrant
entitling such registered owner to receive, one share of the Common Stock, par value $0.01 per
share (the "Warrant Shares") of Hayes Lemmerz International, Inc. (the "Company") on the
following basis.

The Warrant may be exercised in whole or in part at any time on or before 5:00 p.m. New
York City time on _____, 2016, or such earlier date and time at which the Series C
Warrants[8] of the Company (the "Series C Warrants") are no longer exercisable (in either case,
such date and such time, the "Expiration Date"); *provided further, that* for the avoidance of
doubt, the foregoing proviso shall not affect a Holder's entitlement to replacement securities
pursuant to Section 5.04 of the Warrant Agreement. Each Warrant not exercised at or before the
Expiration Date shall become void, and all rights of the Holder and any beneficial owners of the
Warrant Certificate evidencing such Warrant under the Warrant Agreement shall cease.

Prior to the Expiration Date, each Warrant shall entitle the Holder thereof, subject to the
provisions of this Agreement, to receive from the Company one Warrant Share. The Warrants
shall be automatically exercised at each time, and only to the extent, at least 5% of the then
outstanding Series C Warrants not previously exercised (the "Minimum Exercise Threshold")

---

[6] Series F Warrant Certificate will state "Series F"

[7] Series F Warrant Certificate will state "Series F"

[8] Series F Warrant Certificate will state "Series D"

have been exercised in conjunction with the exercise of Series A Warrants[9] (any such time a Series C[10] Warrant is exercised, an "Exercise Time");  provided that the Minimum Exercise Threshold shall not apply with respect to any exercise of a Warrant (i) in connection with an IPO (as defined in the Series A Warrant Agreement) or any Triggering Event or (ii) within sixty (60) days of the Expiration Date.  The number of shares of common stock to which an individual Holder shall be entitled under the Warrant at a given Exercise Time (the "Vested Warrant Shares") shall be based upon the number of Series A Warrants exercised at that particular Exercise Time (the "Aggregate Exercised Series A Share Amount"), in accordance with the following formula:

$$\text{Vested Warrant Shares} = 6{,}755 * (x/555{,}555) * (y/6{,}755)$$

where:

$6{,}755$ = the Aggregate Maximum Series E Warrant Shares. [11]

$x$ = the Aggregate Exercised Series A Share Amount.

$555{,}555$ = the "Aggregate Exercisable Series A Warrant Shares."

$y$ = the Base Warrant Shares.

For illustration purposes, a pro forma capitalization table is set forth on Schedule 1 hereto showing the share ownership of the Company in the event of exercise of (i) all Series A Warrants, Series C Warrants and Series E Warrants and (ii) all Series A Warrants, Series B Warrants, Series C Warrants, Series D Warrants, Series E Warrants and Series F Warrants.  The Warrants may not be exercised in any manner other than as provided herein.

If this Warrant is automatically exercised, the Company or the Warrant Agent shall notify the Holder of the automatic exercise as soon as reasonably practicable, and the Holder shall surrender this Warrant Certificate to the Warrant Agent (as hereinafter defined), at the office of Mellon Investor Services LLC, or its successor as warrant agent (the "Warrant Agent") at the addresses specified on the reverse hereof and upon compliance with and subject to the conditions set forth herein and in the Warrant Agreement dated as of _____, 2009 (the "Warrant Agreement").  Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Warrant Agreement.

The term "Holder" as used herein shall mean the person in whose name at the time this Warrant Certificate shall be registered upon the books to be maintained by the Warrant Agent for that purpose pursuant to Section 4.01 of the Warrant Agreement.

---

[9] Series F Warrant Agreement will state "Series D Warrants in conjunction with the exercise of Series B Warrants"

[10] Series F Warrant Certificate will refer to "Series D"

[11] The Aggregate Maximum Series F Warrant Shares will be 15,704

In case an exercise of Warrants is for a number of shares fewer than the number of Warrants evidenced by this Warrant Certificate, a new Warrant or Warrants of like tenor, calling in the aggregate on the face or faces of this Warrant Certificate or Warrant Certificates for the number of shares of Common Stock equal (without giving effect to any adjustment thereof) to the number of such shares called for on the face of the Warrant Certificate minus the number of such shares so exercised, shall be issued and delivered to the Holder or its registered assigns.

This Warrant Certificate is issued under and in accordance with the Warrant Agreement, between the Company and the Warrant Agent and is subject to the terms and provisions contained in the Warrant Agreement, to all of which terms and provisions the Holder of this Warrant Certificate consents by acceptance hereof. Copies of the Warrant Agreement are on file at the above-mentioned office of the Warrant Agent.

After authentication by the Warrant Agent and prior to the expiration of this Warrant Certificate, this Warrant Certificate may be exchanged at the corporate trust office of the Warrant Agent for Warrant Certificates representing the same aggregate number of Warrants.

Neither this Warrant Certificate nor the Warrant evidenced hereby, shall, and nothing contained in the Warrant Agreement shall be construed to entitle the registered owner hereof, or any beneficial owner, to any of the rights of a registered holder or beneficial owner of the Warrant Shares, including, without limitation, the right to vote or to consent or to receive notice as a stockholder in respect of any meetings of stockholders for the election of directors of the Company or any other matter, to receive dividends on Warrant Shares or any rights whatsoever as stockholders of the Company.

Reference is hereby made to the further provisions of this Warrant Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Warrant Certificate shall not be valid or obligatory for any purpose until authenticated by the Warrant Agent.

A-3

IN WITNESS WHEREOF, the Company has caused this Warrant Certificate to be duly executed.

Dated:_____

HAYES LEMMERZ INTERNATIONAL, INC

By:_____

Attest:

_____

Certificate of Authentication

This is one of the Warrant Certificates referred to in the within-mentioned Warrant Agreement.

_____
MELLON INVESTOR SERVICES LLC,
    As Warrant Agent

By:_____
    Authorized Signature

A-4

**[REVERSE] [FORM OF WARRANT CERTIFICATE]**
(Instructions for Exercise of Warrants)

To receive a certificate for the Warrant Shares representing any exercised Warrants evidenced hereby, the Holder of this Warrant Certificate must complete the information required below and present in person or mail by registered mail this Warrant Certificate to the Warrant Agent at the addresses set forth below.

**[FORM OF EXERCISE]**
(To be executed upon exercise of Warrants.)

The undersigned hereby submits _____ Warrants, represented by this Warrant Certificate, in order to receive _____ shares of Class A Common Stock, par value $0.01 per share (the "Warrant Shares") of Hayes Lemmerz International, Inc.

The undersigned requests the shares of common stock, par value $0.01 per share (the "Warrant Shares") of Hayes Lemmerz International, Inc. to which the Holder is entitled (the "Vested Warrant Shares") be in fully registered form, in the authorized denominations, registered in such names and delivered, all as specified in accordance with the instructions set forth below.

If the Vested Warrant Shares is less than the maximum number of Warrant Shares subject to this Warrant Certificate, the undersigned requests that a new Warrant Certificate or Warrants of like tenor representing the remaining balance of the Warrants evidenced hereby be issued and delivered to the undersigned unless otherwise specified in the instructions below.

Dated:_____

Name_____
(Please Print)

_____
(Insert Social Security or Other
Identifying Number of Holder)

Address _____

_____

Signature_____
(Signed exactly as name appears
on the other side of this Warrant
Certificate)

This Warrant may be exercised at the following addresses:
By hand at _____

_____

_____

A-5

A-6

By mail at      _____

                        _____

                        _____

                        _____

(Instructions as to form and delivery of Warrant Shares and/or Warrant Certificates):

**(NOTE:  The signature(s) must be medallion guaranteed by a commercial bank or trust company in the United States or by a member firm of the New York Stock Exchange)**

A-6

[FORM OF ASSIGNMENT]

(TO BE EXECUTED TO TRANSFER THE WARRANT CERTIFICATE)

FOR VALUE RECEIVED _____ hereby sells, assigns and transfers unto
Please insert social
security or other
identifying number)

_____

_____
(Please print name and address
including zip code)

__ the right represented by the within Warrant Certificate and does hereby irrevocably constitute and appoint _____, Attorney, to transfer said Warrant Certificate on the books of the Warrant Agent with full power of substitution.

Dated: _____

_____
Signature
(Signed exactly as name appears on the
other side of this Warrant Certificate)

Signature Guarantee:

_____
Participant in a recognized Signature
Guarantee Medallion Program (or other
signature guarantor program reasonably
acceptable to the Warrant Agent)

**(NOTE:  The signature(s) must be medallion guaranteed by a commercial bank or trust company in the United States or by a member firm of the New York Stock Exchange)**

A-7